UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10194-RCL |
| ) | |
| ANTHONY BUCCI ) | |

### Government's Opposition to Defendant's Second Motion to Amend Pretrial Conditions

The United States of America, by and through Assistant United States Attorney John T. McNeil, respectfully submits this opposition to defendant's second motion to amend his conditions of pretrial release (Docket No. 73). In sum, the defendant has failed to provide the Court with new, material information which permits the Court to reopen the defendant's terms of release. The new information cited by the defendant – a voice analysis of two telephone calls placed by the defendant – is not the type of evidence which gives rise to revisiting terms of pretrial release, nor is it material information. The defendant has failed to demonstrate how his proffered voice analysis relates to this case, and particularly how it justifies reopening and altering his terms of supervised release. The proffered information is also incomplete in that it fails to provide any evidence regarding the qualifications of the individual(s) who conducted the analysis. Moreover, the alleged analysis appears to be the product of unreliable and inadmissiable opinion, which does not pass muster under either Fed.R.Evid. 701 or 702, or the tests set forth in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-94 (1993). Finally, even if the analysis were reliable, the defendant fails to demonstrate how it is material, in light of all the other evidence regarding his culpability in this case.

**I.**

The new information proffered by the defendant does not have a material bearing on his risk of flight or his risk to the community and thus the Court should not reopen his bail hearing. Rather, the defendant appears to claim that this evidence undercuts the Court's finding of probable cause. The relevant section, 18 U.S.C. §3142(f), only permits the Court to reopen a bail hearing, "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required the safety of any person and the community." See 18 U.S.C. §3142(f); United States v. Cisneros, 328 F.3d 610, 614 (10th Cir. 2003)(party must present evidence which "constitu[es] new, material information . . . before a detention hearing can be reopened"); United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991)(upholding district court's determination not to reopen bail hearing when defendant failed to provide new, material evidence); United States v. Hare, 873 F.2d 796, 799 (5th Cir. 1989)(to reopen a bail hearing, judicial officer must find that "information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue"). Here, both this Court and a subsequent grand jury found probable cause to conclude that the defendant committed the charged offenses. Notably, the Court did not rely upon the telephone calls cited by the defendant in making its determination of probable cause. Section 3142(f) does not provide for reopening a hearing to challenge probable cause. Since this evidence was not a part of the Court's initial determination, and also has no bearing on the defendant's risk of flight or danger to the community, the Court should not reopen the terms of his release.

## II.

The defendant has failed to demonstrate that the new information offered to the Court is material. First, even if one accepts the dubious conclusion proffered by the defendant – that a voice on a recording on December 24, 2003, does not match the voice of a person on a recording on March 4, 2004 – the defendant does not explain how that conclusion is material to this case. On this basis alone, his motion should be summarily rejected.

Second, the defendant has failed to demonstrate that the proffered information is the product of a qualified expert. Without such information, this Court should summarily deny the defendant's motion. See, e.g. Fed.R.Evid. 702 (only witnesses "qualified as an expert by knowledge, skill, experience, training, or education" may give expert testimony).

Third, the Court must view with great skepticism any kind of analysis which attempts to fingerprint a person's voice, and should conclude that such evidence is unreliable and inadmissible. While Fed.R.Evid. 901(b)(5) permits in certain circumstances an individual who is familiar with another person's voice to identify that voice, courts, including the First Circuit, have regularly rejected the kind of "scientific" evidence proffered by the defendant. See e.g. United States v. Salimonu, 182 F.3d 63, 73 (1st Cir. 1999)(voice comparison not pass the Daubert tests); United States v. Patrick, 6 F.Supp.2d 51, 55-56 (D. Mass. 1998)(excluding voice identification expert testimony). At a minimum, the Court should require a written submission by the defendant which provides prima facie evidence that the proffered information passes the Daubert tests and is otherwise reliable. In the absence of such a submission, this Court should summarily reject the defendant's motion.

**III.**

Even if the Court were to accept the methodology underlying the analysis proffered by the defendant, the conclusion reached by the allege expert is inconsistent with the words on the recording and agents' observations of the defendant at the scene of the crime. The government has submitted under seal the rough transcript of the recording. The defendant is identified as "Gino" in the transcript, as this is the name he used in his dealings with CW 2.[1] In that transcript, it is plain that "Gino" was present at the location of the theft and that he was visible to CW2. The recording indicates that he was frisked or pulled over by Jordan in CW2's presence. It is also apparent that he was waiting to be handed the cocaine when Jordan pulled up and confronted CW2 in the Malden Medical Center parking lot.

The Court has heard testimony that Bucci is the only person observed in the Malden Medical Center parking consistent with the statements on the recording. Law enforcement officers present at the scene identified the defendant and his distinctive Black Mercedes as being present at the scene with CW2 when Jordan drove into the parking lot and confronted them. Moreover, at the detention hearing the Court heard testimony that two cooperating witnesses (CW1 and CW2), who were both identified at the hearing, who were both participants in the crime, and who were both present at the scene, identified the defendant as a participant and as being present when Jordan confronted CW2.[2] Thus, the defendant's newly proffered information is not credible in light of the more reliable first-hand observations of the officers and two

---

[1] The names of the cooperating witnesses are set forth in a sealed pleading accompanying this memorandum.

[2] While the government does not believe a hearing is necessary for the Court to deny the motion, if such a hearing is held, the government will offer evidence that the telephone call which was recorded on December 24, 2003, was placed from Bucci's telephone.

cooperating witnesses at the scene.  The Court should conclude that the expert opinion is therefore not material, as it conflicts with other more reliable evidence.

Finally, even if the Court were to assume, *arguendo*, that the voice on the December 24, 2003, recording is not that of the defendant, the new information is not material to the issue of detention.  While the defendant appears to claim that the sole source of inculpatory evidence against him is the testimony of CW1, that is far from the case.  While CW1 has provided detailed information regarding Bucci's participation in the crime, including the fact that Bucci was the individual who ultimately received the three kilograms of cocaine stolen from CW2, the Court has also heard testimony that CW2 identified Bucci as the intended customer for the cocaine, and that Bucci was a participant in the conspiracy.  Moreover, the Court has heard evidence that: agents observed Bucci's car parked at CW1's house on the morning of December 24, 2003; agents also observed CW1 and CW2 commencing the drug transaction at CW1's house just after the defendant's car left; agents observed the defendant's car in the parking lot of the Malden Medical Center and observed CW2 and CW1 pull up to that car to conduct the drug transaction next to the defendant's car; agents observed Bucci approach the men in the parking lot during the transaction; agents also observed Jordan meet with Bucci at the Malden Medical Center shortly after Jordan broke up the drug transaction and just after CW1 fled with the cocaine; telephone records link Bucci to the getaway driver, defendant Muolo, and to CW1 just prior to and just after the drug transaction/theft of the drugs; Jordan provided false statements to officers to protect Bucci after the drug transaction/theft; and during the tape recorded conversation between Minotti and Jordan on May 19, 2004, Jordan identifies Bucci as one of the participants.  In addition, when Bucci is arrested on May 20, 2004, officers found in his possession more than 90

grams of cocaine, more than $6,000 in cash, four mobile phones, and another six SIM cards (telephone equivalents) in his possession. Thus, the defendant's claim that the government's entire case rests on CW1 is inconsistent with the record in this case. Moreover, in light of this other evidence, the proffered "expert" analysis is not material.

    For the foregoing reasons, the Court should summarily deny the defendant's motion.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

Date: October 28, 2004                By: /s/ *John T. McNeil*
                                          JOHN T. MCNEIL
                                          Assistant U.S. Attorney