Return To:

New Century Mortgage
Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

Prepared By:

New Century Mortgage
Corporation
18400 Von Karman, Suite 1000
Irvine, CA 92612

——————————————[Space Above This Line For Recording Data]——————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 1, 2005
together with all Riders to this document.
(B) "Borrower" is ANTHONY J BUCCI and Melissa J. Bucci.

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

1001040974

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3022 1/01

VMP -6(MA) (0401).01
Page 1 of 16                    Initials: AJB, MJB
VMP Mortgage Solutions (800)521-7291

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated March 1, 2005
The Note states that Borrower owes Lender SIX HUNDRED FIFTY THOUSAND AND 00/100
                                                                                    Dollars
(U.S. $650,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than April 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

1001040974

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County                                          [Type of Recording Jurisdiction]
of Middlesex                                  [Name of Recording Jurisdiction]:
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: MAP 21-22-WS4                        which currently has the address of
26 UPLAND ROAD                                                           [Street]
Wakefield                        [City] , Massachusetts 01880            [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP -6(MA) (0401).01                    Page 3 of 16                    Initials: AJB.    MJB

1001040974

Form 3022   1/01

MAR-07-2005 MON 02:29 PM                          FAX NO. 0000000000000000000      P. 04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses:

_____          _____ (Seal)
                                            ANTHONY J BUCCI              -Borrower


                                            _____ (Seal)
_____          Melissa J. Bucci             -Borrower


_____ (Seal)            _____ (Seal)
                 -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                 -Borrower                                   -Borrower


_____ (Seal)            _____ (Seal)
                 -Borrower                                   -Borrower,


                                            1001040974

-6(MA) (0401).01                Page 14 of 15                Form 3022   1/01

COMMONWEALTH OF MASSACHUSETTS  )              *Middlesex* County ss:

On this _/st_ day of _March, 2005_, before me, the undersigned notary public, personally appeared _Anthony J. Bucci and Melissa J. Bucci_

proved to me through satisfactory evidence of identification, which was/were _Licenses_ to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires:
(Seal)

_____
Notary Public



PAUL J. RYDER
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires April 21, 2011

Law Offices of
ROSSI & ASSOCIATES
51 Broadway
Everett, MA 02149

MCDONOUGH & NOVAK, INC.
57 PROVIDENCE HIGHWAY, 2ND FLOOR, BOX 9
NORWOOD MA 02062 FAX NO. 781-440-6659

**REPORT**

Sheet#

ESTATE: _Lot 4 Upland Road, Wakefield_

OWNERS: _Anthony J. Bucci_ and    Book 1264 Page197  Cert: 226947
_Melissa J. Bucci_    T.B.E.    Deed _Doc. 1256073_  8
Dated _2/1/63_

DESCRIPTION: _Lot 4    Plan 29/44 B  Book 1257 Page 120_

**SAID ESTATE SUBJECT TO:**

Mortgages: _1) 2/26/04  Middlesex Federal Savings, FA  Doc. 1256674_  12
_450,000_

Easements, Takings, Restrictions, Covenants: _See Deed_
_10/16/84    Sewer Easement_    Doc. 669581  5
_4/28/04    Notice of Contract_    Doc. 1321815  15

Other:

Tax Liens:

NOTE-Bankruptcies no longer available at registries
REMARKS: _* Current Certificates not made up_

MY EXAMINATION BEGINS: _8/30/02_  AND ENDS: _1/19/05_    Initials: _TC_

start: 8/30/02                    end: 1/19/05

    Upland Estates LLC

                               746 - 20

    Grantee                    1257 - 128 Cert. 225470

8/30/02 Deed                       Doc. 1225786

6/30/02    Mid Fed S        MTG Doc. 1225787 $\begin{array}{l}\text{Rel}\\ \text{Doc}\\ 1256671\end{array}$
             700,000

10/16/8?    Easement        Doc. 669581 $\begin{array}{l}\text{DIS}\\ 1227271\end{array}$

4/26/04    Notice of Contract  Doc. 132815

                                            3

P ✓
D ✓          Anthony Bucci          Melissa Bucci
E ✓                    24. Upland Rd., Wakefield          lot 4
     Grantee                        Book 1264. Page 197  Cert 226947
2/28/03 Deed                             Doc. 1256673

2/28/03      Mid Fed. Sav    MTG    Doc. 1256674
                    450,000

4

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.
Wakefield, Mass.
October 16, 1984

BOARD OF PUBLIC WORKS OF THE TOWN OF WAKEFIELD

ORDER OF TAKING

The undersigned, the Board of Public Works of the Town of Wakefield, by virtue of the provisions of Chapter 79 of the General Laws, as amended, and all other provisions of law hereto enabling, hereby take for said Town of Wakefield, for public purposes, to-wit: a permanent easement for the construction, maintenance and repair of public sewers, the land or interest in lands hereinafter described:

SEWER EASEMENT - DILLAWAY STREET, SIDNEY STREET, UPLAND ROAD

Beginning at the point of intersection of the easterly street line of Green Street with the northwesterly street line of Dillaway Street, said point being the southerly lot corner of Lot H18; thence N 19° 09' 30 E, a distance of 404.09 feet, to a point; thence N 50° 46' 30" E, a distance of 107.98 feet, to a point; thence N 79° 14' 30" E, a distance of 92.99 feet, to a point; thence S 16° 35' 30" E, a distance of 380.50 feet, to a point; thence S 73° 24' 30" W, a distance of 40.00 feet, to a point; thence N 16° 35' 30" W, a distance of 345.00 feet, to a point; thence S 79° 14' 30" E, a distance of 36.72 feet, to a point; thence S 50° 46' 30" W, a distance of 86.50 feet, to a point; thence S 19° 09' 30" W, a distance of 304.75 feet, to a point; thence S 70° 50' 30" E, a distance of 320.00 feet, to a point; thence S 19° 09' 30" W, a distance of 40.00 feet, to a point; thence N 70° 50' 30" W, a distance of 420.00 feet, to a point; thence S 19° 09' 30" W, a distance of 95.00 feet, to the point of intersection of the easterly street line of Green Street with the southeasterly street line of Dillaway Street, thence N 21° 44' 30" W, a distance of 61.09 feet, to the point of beginning.

All land lies within the boundaries described and shown on a plan entitled "Dillaway Street/Sidney Street/Upland Road Sewer Easement" Town of Wakefield, Massachusetts, Department of Public Works, Engineering Department. Scale 1" = 40' dated June 11, 1984, to be recorded herewith.

NO DAMAGES ARE AWARDED FOR THIS TAKING.

BETTERMENTS (ARE) (~~ARE NOT~~) TO BE ASSESSED.

The following are the names of the persons whose property has been taken, or who may be otherwise entitled to damages on account of the aforesaid taking, so far as known to the Board of Public Works of the Town of Wakefield:

| OWNER | TITLE REFERENCE |
|---|---|
| Orr, Katherine A.<br>No Mortgage | Book 12360 Page 70 |
| Boyles, Abbot W. & Esther T., h/w<br>No mortgage | Book 9053 Page 186 |
| Stinson, Leonard E. Jr. & Barbara J.,<br>h/w<br>No Mortgage | Book 11396 Page 591 |
| Connell, Alburn J. & Evelyn E., h/w<br>No mortgage | Book 6622 Page 107 |
| Wood, Herbert T. & Callielee, h/w | Book 746 Page 20<br>Land Court CF/2J/70 |
| East Boston Savings Bank, mortgagee | Document #491898 |
| Connare, Robert S. & Elaine M., h/w<br>Stoneham Savings Bank, mortgagee | Book 10310 Page 567<br>Book 10310 Page 568 |
| Townsend, Wilson C. & Martha R., h/w<br>Home Savings Bank, mortgagee | Book 13332 Page 705<br>Book 13332 Page 706 |
| Ring, Andrew P. & Anne<br>No mortgage | Book 11925 Page 220 |
| Vouros, Helen (No mortgage) | Book 5639 Page 247 |
| Hickey, John S. & Florence M., h/w<br>Fellsway Cooperative Bank, mortgagee | Book 10130 Page 323<br>Book 10130 Page 324 |
| Clapp, Alan E. & Jessie M., h/w<br>No mortgage | Book 6893 Page 441 |
| Wood, Herbert T. & Callielee, h/w<br>(See Also Land Court) | Book 11293 Page 703<br>~~Book 746 Page 80~~ |

Continued....

| OWNER | TITLE REFERENCE |
|---|---|
| Thompson, William L.<br>No Mortgage | Book 12719 Page 714 |
| Drinkwater, John A. Jr. & Celia, G.,h/w<br>Wakefield Savings Bank, mortgagee | Book 14787 Page  62<br>Book 14787 Page  63 |
| Hickey Realty Trust<br>Murphy, Henry L. & Thomas & William,<br>Trustees | Book 10095 Page  83 |
| Gaw, David F. & Barbara A., h/w<br>No mortgage | Book 12236 Page 279 |
| Mitchell, Florella J.<br>No Mortgage                  and | Book 6526  Page 334<br>Book 6426  Page 304 |
| Ventura, Joseph V.<br>No mortgage | Book 11936 Page 609 |

It is ordered that this Instrument of Taking, together with the plan hereinbefore mentioned, be filed in Middlesex South District Registry of Deeds.

WITNESS our hands and seals this 16th day of October, 1984.

BOARD OF PUBLIC WORKS

_James M. Scott_

_Wayne M. Tarr_

- 3 -



# The Commonwealth of Massachusetts

## Secretary of the Commonwealth

### State House, Boston, Massachusetts 02133

William Francis Galvin
Secretary of the
Commonwealth

February 13, 2003

**1256673**

Page 1 of 5

TO WHOM IT MAY CONCERN:

I hereby certify that a certificate of registration of a Limited Liability Company was filed in this office by

### UPLAND ESTATES, LLC

in accordance with the provisions of Massachusetts General Laws Chapter 156C on May 23, 2002.

I further certify that said Limited Liability Company has filed all annual reports due and paid all fees with respect to such reports; that said Limited Liability Company has not filed a certificate of cancellation or withdrawal; and that, said Limited Liability Company is in good standing with this office.

I also certify that the names of all managers listed in the most recent filing are: ROBERT W. CASALETTO, SR., ANTHONY BUCCI, GRACE CASALETTO

I further certify, the names of all persons authorized to execute documents filed with this office and listed in the most recent filing are: ROBERT W. CASALETTO, SR., ANTHONY BUCCI

The names of all persons authorized to act with respect to real property listed in the most recent filing are: ROBERT W. CASALETTO, SR., ANTHONY BUCCI



In testimony of which,

I have hereunto affixed the

Great Seal of the Commonwealth

on the date first above written.

*William Francis Galvin*

Secretary of the Commonwealth

8

*Doc. 1256673*

# QUITCLAIM DEED

Upland Estates LLC, a limited liability company duly organized and existing under the laws of the Commonwealth of Massachusetts, and having its principal place of business at 4 McDonald Farm Road, Wakefield, Massachusetts,

for consideration of Two Hundred Twenty–Five Thousand ($225,000.00) Dollars,

grants to: Anthony J. Bucci and Melissa J. Bucci husband and wife as tenants by the entirety of 6 Maple Road N. Reading, Massachusetts

## WITH QUITCLAIM COVENANTS,

The land with the buildings thereon situated in Wakefield, in the County of Middlesex, and the Commonwealth of Massachusetts, shown as Lot 4 Upland Road on a plan entitled " Subdivision plan of Land in Wakefield Mass" prepared by Hayes Engineering Inc., dated August 22,2001, filed with Middlesex South District Land Registration Office as Plan 29144B.

So much of the above-described land as is included within the limits of said Upland Road is subject to the rights of all persons lawfully entitled thereto in and over the same; and to a water-pipe easement as set forth in a Taking by the Town of Wakefield, dated July 20, 1927, duly recorded in Book 4124, Page 143.

All of said boundaries are determined by the Court to be located as shown on the aforesaid plan, as modified and approved by the Court, filed in the Land Registration Office, a copy of a portion of which is filed in the Registry of Deeds for the Southern Registry District of Middlesex County, as Plan No. 29144B with Certificate of Title No. 225470.

So much of the above-described land as is included within the limits of Shady Avenue and said way twenty-five feet wide, is subject to the rights of all persons lawfully entitled thereto in and over the same and there is appurtenant to the above-described land the rights to use the whole of said Shady Avenue to said Upland Road, the right to use the whole of said Upland Road to Dillaway Street, and the right to use the whole of said way twenty-five wide, as shown on aid plan, in common with all other persons lawfully entitled thereto.

Subject to a 10 Foot Wide permanent Highway Easement as shown on Said Plan. Subject to an Order of taking by the Board of Public Works Town of Wakefield recorded with the Middlesex South District Registry of Deeds in Book 15835 Page 513 and Registered Land Division as Document No. 669581.

*Lot 7, Upland Road, Wakefield*

*9*

Being a portion of the land transferred to the grantor by deed dated August 9 2002, from
Callielse M. Woods to Upland Estates LLC recorded on August 30,2002 as instrument no
C+f 225470 Book 1257|120        Doc 1225786

IN WITNESS WHEREOF, the said Upland Estates LLC has caused its seal to be hereto
affixed and these presents to be signed, in its name and behalf by Robert W. Casaletto,
Sr, Grace Casaletto and Anthony Bucci, its Managers, this 12th day of February
_____, 2003.

Upland Estates LLC
By
_____
Robert W. Casaletto, Sr., Manager

_____
Grace Casaletto, Manager

_____
Anthony Bucci, Manager

COMMONWEALTH OF MASSACHUSETTS

Essex   ss.                                    2/11/, 2003

Then personally appeared the above-named Robert W. Casaletto, Sr., Manager as
aforesaid, and acknowledged the foregoing instrument to be the free act and deed of
Upland Estates LLC, before me,

_____
Notary Public   Stephen P. Maio
My commission expires:
8/5/06

COMMONWEALTH OF MASSACHUSETTS

Essex ss.                                    2|11|, 2003

Then personally appeared the above-named Grace Casaletto, Manager as
aforesaid, and acknowledged the foregoing instrument to be the free act and deed of
Upland Estates LLC, before me,

_____
Notary Public   Stephen P. Maio
My commission expires:
8/5/06

2

10

COMMONWEALTH OF MASSACHUSETTS

*Middlesex* ss.                                February 26 , 2003

Then personally appeared the above-named Anthony Bucci, Manager as aforesaid, and acknowledged the foregoing instrument to be the free act and deed of Upland Estates LLC, before me,

Notary Public   Robert A. Costello Jr.

My commission expires: Dec 1, 2006

3

Middlesex Federal Savings, F.A.
One College Avenue
Somerville, MA 02144

**1256674**
Page 1 of 20

File No: 03-50

——————— [Space Above This Line For Recording Data] ———————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20, and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated February 26, 2003, together with all Riders to this document.

(B) "Borrower" is Anthony J. Bucci and Melissa J. Bucci. Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is Middlesex Federal Savings, F.A.. Lender is a corporation, organized and existing under the laws of The United States of America. Lender's address is One College Avenue, Somerville, Massachusetts 02144. Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated February 26, 2003. The Note states that Borrower owes Lender Four Hundred Fifty Thousand and 00/100 Dollars Dollars (U.S. $450,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 26, 2033.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] EXHIBIT "A" |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
©1986-2003 Standard Solutions, Inc 781-324-0258

Form 3022 1/01 (page 1 of 16 pages)
FNMtgMA

20

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witness _____

_____
Anthony J. Bucci

_____
Melissa J. Bucci

———————— [Space Below This Line For Acknowledgment] ————————

## Commonwealth of Massachusetts

Middlesex, ss:

On this 26th day of February, 2003, before me personally appeared Anthony J. Bucci and Melissa J. Bucci, to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

_____
Robert A. Costello, Jr.
Notary Public
My Commission Expires: December 1, 2006

MASSACHUSETTS—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT　　　Form 3422 1/01 (page 16 of 16 pages)
©1994-2003 Standard Solutions, Inc 781-324-0800　　　　　　　　　　　　　　　　PNMtgMA

*13*

## Exhibit A - Property Description

Closing date:       February 26, 2003

Borrower(s):        Anthony J. Bucci and Melissa J. Bucci

Property            Lot 4 Upland Road, Wakefield, Massachusetts 01880
Address:

The land with the buildings thereon situated in Wakefield, County of Middlesex and Commonwealth of Massachusetts, being shown as Lot 4 Upland Road on a plan entitled, "Subdivision Plan of Land in Wakefield, Mass." prepared by Hayes Engineering, Inc., dated August 22, 2001, filed with Middlesex South District Land Registration Office as Plan 29144B. *1257 P/20*

So much of the above-described land, as is included within the limits of said Upland Road, is subject to the rights of all persons lawfully entitled thereto in and over the same; and to a water pipe easement as set forth in a Taking by the Town of Wakefield, dated July 20, 1927, duly recorded in Book 4124, Page 143.

So much of the above-described land, as is included within the limits of Shady Avenue and said way 25 feet wide, is subject to the rights of all persons lawfully entitled thereto in and over the same and there is appurtenant to the above-described land the rights to use the whole of said Shady Avenue to said Upland Road, the right to use the whole of the said Upland Road to Dillaway Street, and the right to use the whole of said way 25-feet wide as shown on the said plans, in common with all other persons lawfully entitled thereto.

Subject to and with the benefit of easements of record insofar as now in force and applicable.

For title see deed of Upland Estates, LLC recorded herewith.

Order of Taking by Board of Public Works, Town of Wakefield, recorded with Middlesex South Registry of Deeds Book 15855, Page 513 and with the Registered Land Division as Document No. 669581.

*title see CTF 265770*
*226947*

©1996-2003 Standard Solutions, Inc 781-324-0550



Bk: 1257 Pg: 120    Ctrl#: 225470
Doc: NOT    04/28/2004 01:01 PM

**BOTH WAYS**

### NOTICE OF CONTRACT
M.G.L. C. 254, §4

Notice is hereby given that by virtue of a written contract dated October 9, 2003 between Northshore Custom Homes and Developers LLC, contractor, and G. V. Moore Lumber Co., Inc., subcontractor, said subcontractor is to furnish or has furnished labor or material, or both labor and material, or is to furnish or has furnished rental equipment, appliances or tools in the erection, alteration, repair or removal of a building, structure or other improvement of real property by Northshore Custom Homes and Developers LLC, contractor, for Upland Estates, LLC, owner, on a lot of land or other interest in real property described as follows:

Registered Lot 4 and Recorded Lot 7 of the Upland Estates at 12-16 Upland Road in Wakefield, as described in land Court Plan 29144B and in a deed recorded in Book 36282, Page 580 of the Middlesex South Registry of Deeds and as Document No. 1225786 with Certificate of Title No. 225470 in Book 1257, Page 120 of the Middlesex South Registry District of the Land Court.

As of the date of this notice, an account of said contract is as follows:

| | | |
|---|---|---|
| 1. | Contract Price: | $131,376.44 |
| 2. | Agreed Change Orders: | $    0.00 |
| 3. | Pending Change Orders: | $    0.00 |
| 4. | Disputed Claims: | $    0.00 |
| 5. | Payments Received: | $ 9,093.61 |

April 23, 2004

*Peter C. Patno*

G. V. Moore Lumber Co., Inc.
Contractor, By Peter C. Patno
Its Director of Credit
22 West Main Street
Ayer, MA 01432
978-784-4245

*Return To:*

PERKINS & ANCTIL, PC
73 Princeton Street, Suite 306
N. Chelmsford, MA 01863-1558

225470-1257-120

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

On this 23 day of Apr .1 , 2004, before me, the undersigned notary public, personally appeared Peter C. Patno, proved to me through satisfactory evidence of identification, which were a driver's license, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Notary Public
My commission expires:

[Affix Notary Seal]

ROBERT W. ANCTIL
NOTARY PUBLIC
My Commission Expires May 8, 2009

Perry Appraisal Services

File No. wake731main92304.stf Page #1

# INVOICE

| FROM: |
| Maureen Perry |
| Perry Appraisal Services |
| 158 Old Groveland Rd |
| Bradford, MA 01835 |

Telephone Number: 978-374-7266    Fax Number: 978-945-8810

| INVOICE NUMBER |
| Wak26upl021505.smp |

| DATE |
| 2/18/2005 |

| TO: |
| Boston Mortgage Group |
| Baldwin Green Common #207 |
| Woburn, MA 01801 |

Telephone Number: 781-938-0890    Fax Number: 781-938-0661
Alternate Number:                           E-Mail:

| REFERENCE | |
|---|---|
| Internal Order #: | Wak26upl021505.smp |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | wake731main92304.stf |
| Other File # on form: | wake731main92304.stf |
| Federal Tax ID: | |
| Employer ID: | |

## DESCRIPTION

Lender: Boston Mortgage Group                Client: Boston Mortgage Group
Purchaser/Borrower: Bucci
Property Address: 26 Upland Rd
City: Wakefield
County: Middlesex                State: MA                Zip: 01880
Legal Description: Book 1264 Pg 197

| FEES | AMOUNT |
|---|---|
| | 500.00 |
| SUBTOTAL | 500.00 |

| PAYMENTS | | AMOUNT |
|---|---|---|
| Check #: | Date: | Description: |
| Check #: | Date: | Description: |
| Check #: | Date: | Description: |
| | SUBTOTAL | 0.00 |
| | TOTAL DUE | $   500.00 |

---

Please Return This Portion With Your Payment

| FROM: |
| Boston Mortgage Group |
| Baldwin Green Common #207 |
| Woburn, MA 01801 |

Telephone Number: 781-938-0890    Fax Number: 781-938-0661
Alternate Number:                           E-Mail:

| AMOUNT DUE: | $ | 500.00 |
| AMOUNT ENCLOSED: | $ | |

| INVOICE NUMBER |
| Wak26upl021505.smp |

| DATE |
| 2/18/2005 |

| TO: |
| Maureen Perry |
| Perry Appraisal Services |
| 158 Old Groveland Rd |
| Bradford, MA 01835 |

| REFERENCE | |
|---|---|
| Internal Order #: | Wak26upl021505.smp |
| Lender Case #: | |
| Client File #: | |
| Main File # on form: | wake731main92304.stf |
| Other File # on form: | wake731main92304.stf |
| Federal Tax ID: | |
| Employer ID: | |

Perry Appraisal Services

File No. wake731main92304.sti Page #2
wake731main92304.si

# UNIFORM RESIDENTIAL APPRAISAL REPORT

File No. wake731main92304.si

**Property Description**

| | | | |
|---|---|---|---|
| Property Address 26 Upland Rd | City Wakefield | State MA | Zip Code 01880 |
| Legal Description Book 1264 Pg 197 | | County Middlesex | |
| Assessor's Parcel No. Map 21-22-WS4 | Tax Year 2005 | R.E. Taxes $ 4,367.63 | Special Assessments $ 0.00 |

| | | | |
|---|---|---|---|
| Borrower Bucci | Current Owner Bucci | Occupant: ☒ Owner ☐ Tenant ☐ Vacant | |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☐ PUD ☐ Condominium (HUD/VA only) | HOA $ N/A | /Mo. |
| Neighborhood or Project Name N/A | Map Reference Map 21-22-WS4 | Census Tract 3353.00 | |
| Sale Price $ Refi Date of Sale N/A | Description and $ amount of loan charges/concessions to be paid by seller: N/A | | |
| Lender/Client Boston Mortgage Group | Address Baldwin Green Common #207, Woburn, MA 01801 | | |
| Appraiser Maureen Perry | Address 158 Old Groveland Rd, Bradford, MA 01835 | | |

| Location | ☐ Urban ☒ Suburban ☐ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|---|
| Built up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE AGE $(000) (YRS) | One family 85 | ☒ Not likely ☐ Likely |
| Growth rate | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | 300 Low New | 2-4 family | ☐ In process |
| Property values | ☐ Increasing ☒ Stable ☐ Declining | ☐ Tenant | 1,200 High 200 | Multi-family | To: |
| Demand/supply | ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (0-5%) | Predominant | Commercial | |
| Marketing time | ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos. | ☐ Vac.(over 5%) | 840 50 | Land 15 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: Subj neighborhood is bounded to the north by Round Park, east by Holland Rd, south by Oak St, and west by Main St.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): Subject is located in a new neighborhood of similar size and style homes with easy access to shopping, schools, employment and mass transportation. Employment is stable and appeal to the market is good.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): Market conditions in the neighborhood are currently stable with supply and demand evidencing balance. Appropriately priced dwellings in average or better repair are exhibiting a marketing time of approximately one to three months. Concessions are minimal but may occasionally consist of sellers paying closing costs.

Project Information for PUDs (If applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)?    ☐ Yes ☐ No

Approximate total number of units in the subject project ___    Approximate total number of units for sale in the subject project ___

Describe common elements and recreational facilities: ___

| | | | |
|---|---|---|---|
| Dimensions See Deed | | Topography Level to Steeply Sloping | |
| Site area 1.3 Acres | Corner Lot ☐ Yes ☒ No | Size 1.3 Acres | |
| Specific zoning classification and description SR/12,000 SF min lot/100 FF | | Shape Irregular | |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Drainage Appears Adequate | |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View Woods/Neigh/Good | |

| Utilities | Public | Other | Off-site improvements | Type | Public | Private | Landscaping | Graded only |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Paved Asphalt | ☒ | | Driveway Surface Asphalt | |
| Gas | | Oil | Curb/gutter | Granite | ☒ | | Apparent easements None apparent | |
| Water | ☒ | | Sidewalk | None | | | FEMA Special Flood Hazard Area ☐ Yes ☒ No | |
| Sanitary sewer | ☒ | | Street lights | Incandescent | ☒ | | FEMA Zone C    Map Date 9/2/1988 | |
| Storm sewer | ☒ | | Alley | None | | | FEMA Map No. 25022100056 | |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): No adverse easements or encroachments were noted or reported as of the date of this inspection.

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units 1 | Foundation Concrete | Slab None | Area Sq. Ft. 1,968 | Roof |
| No. of Stories 2 | Exterior Walls Vinyl | Crawl Space None | % Finished Unfinished | Ceiling ☐ |
| Type (Det./Att.) Det | Roof Surface Asphalt Shingle | Basement Full | Ceiling Drywall | Walls ☐ |
| Design (Style) Colonial | Gutters & Dwnspts. Alum/Alum | Sump Pump None noted | Walls Drywall | Floor ☐ |
| Existing/Proposed Exist | Window Type Doublehung | Dampness None noted | Floor WW/Tile | None ☐ |
| Age (Yrs.) New | Storm/Screens Thermo | Settlement None noted | Outside Entry * | Unknown * ☒ |
| Effective Age (Yrs.) New | Manufactured Home N/A | Infestation None noted | * Walkout Daylight | * Concealed |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | 1 | 1 | | | 1,968 |
| Level 1 | 1 | 1 | 1 | 1 | | 1 | | | .5 | X | | 1,968 |
| Level 2 | | | | | | | | 5 | 2 | | | 2,091 |

Finished area above grade contains: 9 Rooms; 5 Bedroom(s); 2.5 Bath(s); 4,059 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | KITCHEN EQUIP. | ATTIC | AMENITIES | CAR STORAGE |
|---|---|---|---|---|---|---|
| Floors | WW/Hdwd/New | Type FHW | Refrigerator ☒ | None | Fireplace(s) # 1 FP ☒ | None |
| Walls | Plaster/Good | Fuel Oil | Range/Oven ☒ | Stairs | Patio | Garage # of cars |
| Trim/Finish | Pine/Good | Condition New | Disposal ☒ | Drop Stair | Deck Wood ☒ | Attached 2 |
| Bath Floor | Marble/Good | COOLING | Dishwasher ☒ | Scuttle ☒ | Porch | Detached |
| Bath Wainscot | Fbrgls/Tile/Good | Central Yes | Fan/Hood ☒ | Floor | Fence | Built-In |
| Doors | Panel/Good | Other None | Microwave ☒ | Heated | Pool | Carport |
| | | Condition New | Washer/Dryer ☒ | Finished | Balcony ☒ | Driveway Asphalt |

Additional features (special energy efficient items, etc.): The subject has standard items for a home in this price range.

Condition of the improvements, depreciation (physical, functional, and external), repairs needed, quality of construction, remodeling/additions, etc.: Subject is new construction and in excellent condition.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property.: See attached addendum regarding environmental issues.

Freddie Mac Form 70 6/93

PAGE 1 OF 2

Fannie Mae Form :004 6/93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Fno. No. wake731main92304.stl Page #3
wake731main92304.st
File No.   wake731main92304.st

# UNIFORM RESIDENTIAL APPRAISAL REPORT

**Valuation Section**

| | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 275,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS: | | |
| Dwelling   4,059 Sq. Ft.@$   130.00   = $ | 527,670 | |
| 1,968 Sq. Ft.@$   45.00   = | 88,560 | |
| Appliances/Deck/Balcony/Fireplaces   = | 35,000 | |
| Garage/Carport   576   Sq. Ft. @$   35.00   = | 20,160 | |
| Total Estimated Cost New   = $ | 671,390 | |
| Less   Physical   functional   External | = $ | |
| Depreciation | = $ | 671,390 |
| Depreciated Value of Improvements | = $ | 5,000 |
| "As-is" Value of Site Improvements | = $ | 951,390 |
| INDICATED VALUE BY COST APPROACH | = $ | |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property):  The Cost Approach was derived by using the "Marshall and Swift Residential Cost Handbook". No functional or external obsolescence noted. No Physical depreciation calculated due to being new construction. Remaining Economic Life: 60 Yrs.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 26 Upland Rd   Wakefield | 22 Upland Rd   Wakefield | | 100 Harrison Ave   Wakefield | | 65 Andrews Rd   Wakefield | |
| Proximity to Subject | | 0.00 miles | | 0.98 miles | | 1.42 miles | |
| Sales Price | $   Refi | $   833,000 | | $   844,000 | | $   908,000 | |
| Price/Gross Living Area | $   Refi | $   205.78 | | $   235.36 | | $   245.01 | |
| Data and/or | Inspection | MLS | | MLS | | MLS | |
| Verification Source | Assessor | Assessor | | Assessor | | Assessor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust | DESCRIPTION | +(−)$ Adjust | DESCRIPTION | +(−)$ Adjust |
| Sales or Financing | | None noted | | None noted | | None noted | |
| Concessions | | Conv fin. | | Conv fin. | | Conv fin. | |
| Date of Sale/Time | | 07/24/04 | | 11/12/04 | | 11/12/04 | |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 1.3 Acres | .51 Acres | +30,000 | .27 Acres | +30,000 | .36 Acres | +30,000 |
| View | Panoramic/Good | Neigh/Good | | Neigh/Good | | Neigh/Good | |
| Design and Appeal | Colonial | Col/Avg | | Col/Avg | | Col/Avg | |
| Quality of Construction | Good | Good | | Good | | Good | +20,000 |
| Age | New | New | | 4 yrs | +10,000 | 9 yrs | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total :Bdrms : Baths | Total :Bdrms : Baths | | Total :Bdrms : Baths | | Total :Bdrms : Baths | |
| Room Count | 9 : 5 : 2.5 | 8 : 4 : 2.5 | | 10 : 4 : 2.5 | +30,700 | 7 : 4 : 3 | −5,000 |
| Gross Living Area | 4,059 Sq. Ft. | 4,048 Sq. Ft. | 0 | 3,586 Sq. Ft. | | 3,706 Sq. Ft. | +22,900 |
| Basement & Finished | Full | Full | | Full | | Full | |
| Rooms Below Grade | Au Pair Suite | Unfinished | +30,000 | Family Room | +25,000 | Unfinished | +30,000 |
| Functional Utility | Good | Good | | Good | | Average | |
| Heating/Cooling | FHW/CAC | FHW/CAC | | FHA/CAC | | FHA/CAC | |
| Energy Efficient Items | Standard | Standard | | Standard | | Standard | |
| Garage/Carport | 2 Attached | 2 Attached | | 2 Builtin | +5,000 | 2 Attached | +4,000 |
| Porch, Patio, Deck, | Deck/Balcony | 2 Decks | | Deck/Patio | +1,000 | None | −3,500 |
| Fireplace(s), etc. | 1 FP | 1 FP | | 2 FP | −3,500 | 2 FP | |
| Fence, Pool, etc. | None | None | | Sprk/CVac/Fence | −4,000 | None | |
| Landscaping | None | Typical | −5,000 | Typical | −5,000 | Typical | −5,000 |
| Net Adj. (total) | | □+  □−  $   55,000 | | ☒+  □−  $   89,200 | | □+  □−  $   93,400 | |
| Adjusted Sales Price | | Net  6.6 % | | Net  10.6 % | | Net  10.3 % | |
| of Comparable | | Gross  7.8 %|$   888,000 | | Gross  13.5 %|$   933,200 | | Gross  13.3 %|$  1,001,400 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.):  Comps are adjusted for differences in GLA over 100 SF at $60  SF rounded, bedrooms included,half  baths at $5000. Subject has 1.3 acres of land but approximately .75 acres of it is usable. The adjacent property has .5 acres and it appears to have approximately .25 acre of usable and all other comps have more or less complete use, and have been adjusted accordingly, as has the lack of landscaping which can't be done til spring, along the painting the trim around the front door. (Dumpster is to be removed shortly.) Weighted towards the more recent sales.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | None noted | None noted | None noted | None noted |
| Source, for prior sales | in B & T | in B & T | in B & T | in B & T |
| within year of appraisal | past 36 mos | past 36 mos | past 36 mos | past 36 mos |

Analysis of any current agreement of sale, option, or listing of subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:   Subject is new construction landscaping to be done, can not be done until weather is warmer, cost to cure $5000 as indicated in grid.

| | | $ | |
|---|---|---|---|
| INDICATED VALUE BY SALES COMPARISON APPROACH | | | 935,000 |
| INDICATED VALUE BY INCOME APPROACH (if Applicable)   Estimated Market Rent  $   N/A   /Mo. x Gross Rent Multiplier   N/A   = $ | | | |

This appraisal is made ☒ "as is"  □ subject to the repairs, alterations, inspections or conditions listed below  □ subject to completion per plans & specifications.

Conditions of Appraisal:   This appraisal is made "as is". All sales were confirmed closed. All sales are considered reliable market indicators for the subject.

Final Reconciliation:   The Sales Comparison Analysis is considered the most reliable method of estimating value. Less weight is given to the Cost App due to subj's age. The Income Appr. was considered but not utilized due to a lack of rental data.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/FNMA form 1004B (Revised   10/94  ).

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF   02/18/05
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE   $   935,000

| APPRAISER: | SUPERVISORY APPRAISER (ONLY IF REQUIRED): | |
|---|---|---|
| Signature | Signature | □ Did   □ Did Not Inspect Property |
| Name  Maureen | Name | |
| Date Report Signed  02/31/05 | State Report Signed | |
| State Certification #  MACR 4030   State MA | State Certification # | State |
| Or State License #  MACR 4030   State MA | Or State License # | State |

PAGE 2 OF 2

Freddie Mac Form 70  6/93

Form UA2 — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

Fannie Mae Form 1004 6-93

File No. wake731main92304.stf Page #4

# UNIFORM RESIDENTIAL APPRAISAL REPORT
## MARKET DATA ANALYSIS

These recent sales of properties are most similar and proximate to subject and have been considered in the market analysis. The description includes a dollar adjustment, reflecting market reaction to those items of significant variation between the subject and comparable properties. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject. If a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject.

| ITEM | SUBJECT | COMPARABLE NO. 4 | +(-)$ Adjust | COMPARABLE NO. 5 | +(-)$ Adjust | COMPARABLE NO. 6 | +(-)$ Adjust |
|------|---------|------------------|--------------|------------------|--------------|------------------|--------------|
| Address | 26 Upland Rd / Wakefield | 129 Chestnut St / Wakefield | | 58 Andrews Rd / Wakefield | | | |
| Proximity to Subject | | 1.27 miles | | 1.43 miles | | | |
| Sales Price | Refi | $ 1,195,000 | | $ 1,249,000 | | $ | |
| Price/Gross Living Area | $ | $ 337.00 | | $ 223.84 | | $ | |
| Data and/or Verification Sources | Inspection Assessor | MLS Assessor | | MLS Assessor | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjust | DESCRIPTION | +(-)$ Adjust | DESCRIPTION | +(-)$ Adjust |
| Sales or Financing Concessions | | N/A | | N/A | | | |
| Date of Sale/Time | | Listing | -100,000 | Listing | -100,000 | | |
| Location | Good | Good | | Good | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 1.3 Acres | .24 Acres | | .39 Acres | +30,000 | | |
| View | Panoramic/Good | Neigh/Good | | Neigh/Good | | | |
| Design and Appeal | Colonial | Col/Avg | | Col/Avg | | | |
| Quality of Construction | Good | Good | | Superior | -50,000 | | |
| Age | New | | | 9 yrs | +20,000 | | |
| Condition | Good | Good | | Good | | | |
| Above Grade Room Count | Total 9 Bdrms 5 Baths 2.5 | Total 8 Bdrms 4 Baths 3.5 | -10,000 | Total 11 Bdrms 5 Baths 2.5 | | Total Bdrms Baths | |
| Gross Living Area | 4,059 Sq. Ft. | 3,546 Sq. Ft. | +33,300 | 5,580 Sq. Ft. | -96,900 | Sq. Ft. | 0 |
| Basement & Finished Rooms Below Grade | Full Au Pair Suite | Full Au Pair Suite | | Full Au Pair Suite | | | |
| Functional Utility | Good | Good | | Average | | | |
| Heating/Cooling | FHW/CAC | FHW/CAC | | FHA/CAC | | | |
| Energy Efficient Items | Standard | Standard | | Standard | | | |
| Garage/Carport | 2 Attached | 3 Attached | -10,000 | 2 Attached | +2,000 | | |
| Porch, Patio, Deck, etc. | Deck/Balcony | Deck/Patio | +1,000 | Deck | -7,000 | | |
| Fireplace(s), etc. | 1 FP | 3 FP | -7,000 | 3 FP | -10,000 | | |
| Fence, Pool, etc. | None | Sprinkler/Fence | -3,000 | IG Pool | -10,000 | | |
| Landscaping | None | Typical | -5,000 | Extensive | -10,000 | | |
| Net Adj. (total) | | [X] + - $ | 90,700 | [X] + - $ | 223,900 | + - $ | |
| Adjusted Sales Price of Comparable | | Net 7.6% Gross 15.0% $ | 1,104,300 | Net 17.9% Gross 26.3% $ | 1,025,100 | Net % Gross % $ | |
| Date, Price and Data Source for prior sales within year of appraisal | None noted in B & T past 36 mos | None noted in B & T past 36 mos | | None noted in B & T past 36 mos | | | |

Comments: Comps 4 and 5 are utilized to show values over $900,000 in Wakefield. Comp 5 is adjusted for quality due to being brick frame.

Market Data Analysis 6-93

Form MDA (AC) — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. wake731main92304.srt | Page #5

**Supplemental Addendum**

File No.  wake731main92304.srt

| | | | |
|---|---|---|---|
| Borrower/Client  Bucci | | | |
| Property Address  26 Upland Rd | | | |
| City  Wakefield | County  Middlesex | State  MA | Zip Code  01880 |
| Lender  Boston Mortgage Group | | | |

APPRAISAL DEVELOPMENT AND REPORTING PROCESS
This is a summary Appraisal Report which is intended to comply with the reporting requirements set forth under Standard Rule2-2b of the Uniform Standards of Professional Practice (USPAP) for a Summary Appraisal Report. As such, it presents only summary discussions of the data, reasoning and analysis which were applied in the development of the appraisal process and my opinion of value. In addition to the information contained within the report, supporting documentation relative to data collection and analysis has been retained within the work file.
The depth & discussion contained within this report is specific to the needs of the client ( BMG) and their intended use of the report (mortgage lending purposes). I am not responsible for any unauthorized use of this report. In order to develop an opinion of value, I have performed a Complete Appraisal process as defined by USPAP (i.e. no departures from Standard Rule 1 were invoked).

COMMENTS REGARDING MARKET CONDITIONS
Market appears stabilized /gradual modest appreciation. Local and regional economic recovery and expansion continue with low unemployment, consist demand for housing and diminishing inventory. Local agents reported shortened marketing periods for competitively priced properties. Appropriately priced improvements in average or better condition, are exhibiting marketing times  three to six months.

ENVIRONMENTAL 21E
At the time of inspection, this appraiser did not observe any apparent environmental deficiencies. Although the appraiser is not knowledgeable in environmental or 21E laws, a general observation was made, and none were apparent. Environmental items such as radon gas, UFFI foam insulation, lead paint, soil contamination, etc., are not determinable from this appraiser's inspection and would be identified through a qualified-licensed person engaged in said business.

OIL TANK
Oil tank is located above grade in the basement  No seepage or odor present at the time of inspection.

SALES GREATER THAN 1 MILE
The Appraiser had researched the market for comparables within a one mile radius of the subject. Due to the ongoing market conditions, there were a limited number of sales of comparable properties with the preferred one mile radius and therefore, it was necessary to utilize sales greater than 1 mile away. The comparables that were utilized were carefully selected as they best represented competing harmonious neighborhoods comprised of properties offering similar attributes. The typical purchaser would not limit their search to a 1 mile area particulary when competing areas offer like amenities.

COMPARABLE SALES OVER 6 MONTHS
Due to the current economic conditions there were a limited number of sales of similar properties available to the appraiser. After researching MLS, Banker & Tradesman, etc. It is not considered to be unreasonable in instances of a lack of more recent sales to utilize comparables which sold over the preferred 6 month time frame.

TAXES
The subject property's annual taxes are considered reasonable as compared to other similar improvements in this community based on size, style and location of the subject.  No significant change in the tax base is anticipated in the near future.

PREVIOUS SALES HISTORY OF SUBJECT AND COMPARABLES
The appraiser has researched the 3 year sales history of the subject. There has no sale of the subject in the past year. Per MLS and Assessors records there have been no previous sales of the comparables in the past 3 years other than the sales dates utilized in this report.

PERSONAL PROPERTY
No personal property was taken into consideration in the preparation of this report.

RECONCILIATION
The first step in the appraisal process is the reconciliation  of the available market data. In reconciling this data, the appraiser takes into account the type of property being appraised and the adequacy of the data gathered. The appraiser does not obtain his final estimation of value by averaging the three individual indicators of value. The appraiser instead , takes the three preliminary values and examines the spread between the minimum and maximum figures. The appraisers places the most emphasis on the approach which appears to be the most reliable as in an indication of the answer to the specific appraisal problem. The appraiser then tempers this value in accordance with his judgement and general experience as a real estate appraiser to arrive at his final estimation of value for the subject property.
The subject's value has been estimated by placing the most emphasis on the Sales Comparison Approach. When valuing income properties the Income Approach is given secondary emphasis and supports the estimated value as a result of the Sales Comparison Approach. The Cost Approach is utilized to support the Sales Comparison Approach when the subject is at the beginning of its physical life cycle. Less emphasis is given this approach when when the subject property is older due to the subjectivity of estimating depreciation.

APPRAISERS SIGNATURE
The appraiser(s) utilizes a digital signature for the purposes of EDI transmission of the appraisal to the lender. The digital signature will effectively replace any handwritten signatures. The digital signature is protected by a password.

File No. wake731main92304.stf, Page #6

## Building Sketch (Page - 1)

| | | | | |
|---|---|---|---|---|
| Borrower/Client | Bucci | | | |
| Property Address | 26 Upland Rd | | | |
| City | Wakefield | County | Middlesex | State MA | Zip Code 01880 |
| Lender | Boston Mortgage Group | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 1968.00 | 1968.00 |
| GLA2 | Second Floor | 2090.90 | 2090.90 |
| | | | |
| TOTAL LIVABLE | (rounded) | | 4059 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| | 16.0 x 28.0 | 448.00 |
| | 2.0 x 16.0 | 32.00 |
| | 9.0 x 32.0 | 288.00 |
| | 2.0 x 7.0 | 14.00 |
| 0.5 x | 1.0 x 2.0 | 1.00 |
| 0.5 x | 1.0 x 2.0 | 1.00 |
| | 2.0 x 32.0 | 64.00 |
| | 32.0 x 35.0 | 1120.00 |
| Second Floor | | |
| | 2.0 x 46.0 | 92.00 |
| 0.5 x | 0.2 x 28.0 | 2.88 |
| 0.5 x | 0.2 x 18.0 | 1.85 |
| | 14.0 x 46.0 | 641.82 |
| | 15.0 x 16.0 | 240.00 |
| | 15.0 x 16.0 | 240.00 |
| | 18.0 x 24.0 | 430.86 |
| | 15.8 x 28.0 | 441.48 |
| 16 Calculations Total (rounded) | | 4059 |

File No. wake731main92304.stf Page #7

## Subject Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client  Bucc | | | | |
| Property Address  26 Upland Rd | | | | |
| City  Wakefield | County  Middlesex | State  MA | | Zip Code  01880 |
| Lender  Boston Mortgage Group | | | | |

### Subject Front



| 26 Upland Rd | |
|---|---|
| Sales Price | Refi |
| Gross Living Area | 4,059 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Panoramic/Good |
| Site | 1.3 Acres |
| Quality | Good |
| Age | New |

### Subject Rear



### Subject Street



File No. wake731main92304.stfl Page #8

### Subject Interior Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client: Bucci | | | |
| Property Address: 26 Upland Rd | | | |
| City: Wakefield | County: Middlesex | State: MA | Zip Code: 01880 |
| Lender: Boston Mortgage Group | | | |



**Subject Interior**

| | |
|---|---|
| 26 Upland Rd | |
| Sales Price | Refi |
| Gross Living Area | 4,059 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Panoramic/Good |
| Site | 1.3 Acres |
| Quality | Good |
| Age | New |



**Subject Interior**



**Subject Interior**

File No. wake731mam92304.stl Page #9

## Subject Interior Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client Bucci | | | |
| Property Address 26 Upland Rd | | | |
| City Wakefield | County Middlesex | State MA | Zip Code 01880 |
| Lender Boston Mortgage Group | | | |



**Subject Interior**

26 Upland Rd
Sales Price              Refi
Gross Living Area        4,059
Total Rooms              9
Total Bedrooms           5
Total Bathrooms          2.5
Location                 Good
View                     Panoramic/Good
Site                     1.3 Acres
Quality                  Good
Age                      New



**Subject Interior**



**Subject Interior**

File No. wake731main92304.stfi Page #10

## Subject Interior Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client  Bucc | | | | | |
| Property Address  26 Upland Rd | | | | | |
| City  Wakefield | County  Middlesex | | State  MA | Zip Code  01880 | |
| Lender  Boston Mortgage Group | | | | | |



**Subject Interior**

26 Upland Rd
Sales Price          Ref.
Gross Living Area    4,059
Total Rooms          9
Total Bedrooms       5
Total Bathrooms      2.5
Location             Good
View                 Panoramic/Good
Site                 1.3 Acres
Quality              Good
Age                  New



**Subject Interior**



**Subject Interior**

File No. wake731/main92304 stl: Page #11:

## Comparable Photo Page

| | | | | |
|---|---|---|---|---|
| Borrower/Client  Bucci | | | | |
| Property Address  26 Upland Rd | | | | |
| City  Wakefield | County  Middlesex | | State  MA | Zip Code  01880 |
| Lender  Boston Mortgage Group | | | | |



### Comparable 1

| | |
|---|---|
| 22 Upland Rd | |
| Prox. to Subject | 0.00 miles |
| Sale Price | 833,000 |
| Gross Living Area | 4,048 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Neigh/Good |
| Site | .51 Acres |
| Quality | Good |
| Age | New |



### Comparable 2

| | |
|---|---|
| 100 Harrison Ave | |
| Prox. to Subject | 0.98 miles |
| Sale Price | 844,000 |
| Gross Living Area | 3,586 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Neigh/Good |
| Site | .27 Acres |
| Quality | Good |
| Age | 4 yrs |



### Comparable 3

| | |
|---|---|
| 65 Andrews Rd | |
| Prox. to Subject | 1.42 miles |
| Sale Price | 908,000 |
| Gross Living Area | 3,706 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Good |
| View | Neigh/Good |
| Site | .36 Acres |
| Quality | Good |
| Age | 9 yrs |

File No. wake731main92304.stil Page #12

## Comparable Photo Page

| Borrower/Client | Bucci |
| Property Address | 28 Upland Rd |
| City Wakefield | County Middlesex | State MA | Zip Code 01880 |
| Lender Boston Mortgage Group |



### Comparable 4

| | |
|---|---|
| 129 Chestnut St | |
| Prox. to Subject | 1.27 miles |
| Sale Price | 1,195,000 |
| Gross Living Area | 3,546 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.5 |
| Location | Good |
| View | Neigh/Good |
| Site | .24 Acres |
| Quality | Good |
| Age | 6 yrs |



### Comparable 5

| | |
|---|---|
| 58 Andrews Rd | |
| Prox. to Subject | 1.43 miles |
| Sale Price | 1,249,000 |
| Gross Living Area | 5,580 |
| Total Rooms | 11 |
| Total Bedrooms | 5 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Neigh/Good |
| Site | .39 Acres |
| Quality | Superior |
| Age | 9 yrs |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

File No. wake731main92304.stf] Page #13

## Location Map

| Borrower/Client  Bucci | | | |
|---|---|---|---|
| Property Address  26 Upland Rd | | | |
| City  Wakefield | County  Middlesex | State  MA | Zip Code  01880 |
| Lender  Boston Mortgage Group | | | |



File No. wake731man92304.stf, Page #14

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Perry Appraisal Services
Form ACR  DEFD    *TOTAL for Windows* appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. wake731main92304.stfl Page #15

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 26 Upland Rd. Wakefield, MA 01880

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: Maureen ___ | Name: |
| Date Signed: 02/21/05 | Date Signed: |
| State Certification #: MACR 4030 | State Certification #: |
| or State License #: MACR 4030 | or State License #: |
| State: MA | State: |
| Expiration Date of Certification or License: 11/21/2007 | Expiration Date of Certification or License: |
|  | ☐ Did    ☐ Did Not Inspect Property |

File No. wake731main92304.stf] Page #16]

File No. wake731main92304.stf

Borrower Bucci
Property Address 26 Upland Rd
City Wakefield                    County Middlesex                    State MA    Zip Code 01880
Lender Boston Mortgage Group

## APPRAISAL AND REPORT IDENTIFICATION

This appraisal conforms to one of the following definitions:

☐ Complete Appraisal    (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☐ Limited Appraisal    (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

This report is one of the following types:

☐ Self Contained    (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Summary    (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Restricted    (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1, restricted to the stated intended use by the specified client or intended use.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief.

The statements of fact contained in this report are true and correct.
The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.
I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.
I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
My engagement in this assignment was not contingent upon developing or reporting predetermined results.
My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
I have (or have not) made a personal inspection of the property that is the subject of this report.
No one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)

### Comments on Appraisal and Report Identification
Note any departures from Standards Rules 1-3 and 1-4, plus any USPAP-related issues requiring disclosure:

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature: | Signature: |
| Name: Maureen Perry | Name: |
| Date Signed: 02/21/05 | Date Signed: |
| State Certification #: MACR 4030 | State Certification #: |
| or State License #: MACR 4030 | or State License # |
| State: MA | State: |
| Expiration Date of Certification or License: 11/21/2007 | Expiration Date of Certification or License: |
|  | ☐ Did  ☐ Did Not  Inspect Property |

Fax No. wake731main92304.stf Page #17

COMMONWEALTH OF MASSACHUSETTS

DIVISION OF PROFESSIONAL LICENSURE

OF REAL ESTATE APPRAISER
CERT RES. REAL ESTATE APPRAISER
ISSUES THIS LICENSE TO

MAUREEN L PERRY

158 OLD GROVELAND RD

BRADFORD          MA 01835-8242

4030      11/21/07      063099

LICENSE NO.    EXPIRATION DATE    SERIAL NO.

Fold, Then Detach Along All Perforations

Form SCA — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE