UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v.         ) | No. 04-cr-10194-RCL |
| ) | |
| ANTHONY BUCCI ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO SUPPRESS EVIDENCE ILLEGALLY SEIZED**

**Statement of the Case**

The defendant, Anthony Bucci, is charged in the above-referenced indictment, together with David Jordan and Francis Muolo, with conspiracy to distribute and to possess with intent to distribute cocaine, possession of cocaine with intent to distribute, and using or carrying a firearm during and in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime. The offenses arose out of an alleged plot to steal three kilograms from one Carlos Ruiz on December 24, 2003. The defendant, Bucci, has filed a <u>Motion to Suppress Evidence Illegally Seized</u>, seeking to suppress the fruits of a post-arrest search of his automobile and alleged statements attributed to him following his arrest on May 20, 2004.

**Facts**

On May 20, 2004, Anthony Bucci was arrested pursuant to a warrant issued by the United States District Court for the District of Massachusetts. He was charged in a subsequent indictment with drug and weapons offenses that were alleged to have occurred on or about December 24, 2003, some four and one-half months prior to his arrest.

At the time of his arrest, Bucci was the owner of Hollywood Tanning located at

1

1006 Eastern Avenue, Malden, Massachusetts. On May 20, 2004 he arrived at the tanning salon at approximately 5:00 o'clock in the afternoon in his black Mercedes Benz automobile which he parked in front of the salon. At about 5:20 o'clock in the afternoon he was outside, in front of the salon, with his two-year-old son. His wife, Melissa Bucci, was inside the salon. Without warning he was set upon by as many as eight men who wrestled him to the ground and hit him in the back of the neck with what he believed was the butt of a handgun. As he fell to the ground he lost possession of the key to his car, which also ended up on the ground. He was held face-down on the ground, and was handcuffed behind his back.

Seeing what was transpiring outside the tanning salon, Bucci's wife came running out of the salon, grabbed their son, brought him back into the salon, and ran back out to see what was happening to her husband. Mrs. Bucci told the officers who arrested her husband that she was his wife, that she would take responsibility for his car, and she demanded the car keys from them. The officers refused to give her the keys to the car, but, instead, unlocked the car with the key they took from Bucci, drove it off, and searched it.

After Bucci was arrested, he was transported to a federal building in Boston, where was advised of his rights pursuant to *Miranda v. Arizona.* He immediately invoked his rights to remain silent and to speak to an attorney.

**Argument**

**A. The Seizure and Search of Bucci's Automobile**

The seizure and search of Bucci's car was not conducted pursuant to a warrant. It was not a stop and search pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It was not based upon probable cause coupled with exigent

circumstances. And it was not conducted pursuant to a lawful arrest. The only way the seizure and search may be justified, if at all, is as an inventory search.

The case at bar is controlled by the decision of Judge Woodlock in *United States v. Goodrich,* 183 F.Supp.2d 135 (D. Mass. 2001). In *Goodrich*, the defendant was arrested pursuant to outstanding warrants for armed robbery. 183 F.Supp.2d at 137. After Goodrich was taken into custody and transported to the police station, one of the officers at the scene of the arrest obtained keys to the car Goodrich had been driving prior to, but not at the moment of, his arrest, and began to search the car. Goodrich's wife was present at the scene and could have lawfully taken possession of the car. *Id.* at 138. As a result of the search of the car, a duffel bag was retrieved by the police, inside of which they found a handgun. *Id.*

These facts are remarkably similar to the case at bar. Bucci was arrested pursuant to a warrant for an offense alleged to have been committed over four months earlier. After he was taken into custody, one of the agents at the scene obtained the key to the car Bucci had been driving prior to, but not at the moment of, his arrest. Bucci's wife was present at the scene of the arrest, and acting more assertively than Goodrich's wife, told the agents that she would take responsibility for the car, and demanded the key from them. Instead, one of the agents drove off with the car, which was searched at a later time at a different location.

On the facts presented in *Goodrich,* Judge Woodlock held that one of the limited exceptions to the warrant requirement "allows police to conduct an "inventory" of the contents of a car when they validly impound the vehicle. *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S. Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 367-68, 49 L.Ed.2d 1000 (1976). So long as the inventory is not a pretext to disguise an

impermissible evidentiary search and is conducted pursuant to reasonable standard procedures designed to serve some interest other than collecting evidence of criminal wrongdoing, it is permitted.  *See Bertine,* 479 U.S. at 375, 107 S.Ct. 738; *United States v. Ramos-Morales,* 981 F.2d 625, 626 (1st Cir.1992)."  183 F.Supp.2d at 139.  He noted that "the precise question is not whether an inventory search may be conducted when the police seize a car, but the antecedent question under what circumstances the police may seize the car in the first place.  *See United States v. Duguay*, 93 F.3d 346, 351 (7th Cir.1996)("the decision to impound (the 'seizure') is properly analyzed as distinct from the decision to inventory (the 'search')")."  *Id.*

In the case at bar, as in *Goodrich,* Bucci contends that the police had no legitimate non-investigatory purpose for removing his car because it was legally parked, and his wife could have driven it away or arranged to have it removed.  In *Goodrich,*  Judge Woodlock found that, "[a] review of the caselaw supports the view that what distinguishes a permissible from an impermissible seizure of a legally parked car is whether the police had reason to believe that someone was available who could be entrusted with the car."  He then went on to rely upon *United States v. Pappas*, 735 F.2d 1232, 1234 (10th Cir.1984), where "the Tenth Circuit held that it was proper to suppress the fruits of the inventory search of a car towed when it was legally parked and when there was present "a young lady friend ... who, if asked, might well have been able to take the car ...."  "  *Id.*  Judge Woodlock distinguished *United States v. Zapata,* 18 F.3d 971 (1st Cir.1994), on the ground that the First Circuit in that case found that ""all the relevant criteria are satisfied" when the car would have to be impounded because it was unregistered and uninsured and so could not be lawfully driven by anyone."  *Id.* at 140.

Judge Woodlock took note of *United States v. Duguay,* 93 F.3d 346 (7th Cir.1996),

an opinion in which Judge Skinner of this Court sitting by designation, held that ""impoundment based solely on an arrestee's status as a driver, owner, or passenger is irrational and inconsistent with 'caretaking' functions [because it ignores] whether another person could have removed the car and readily eliminated any traffic congestion, parking violation, or road hazard."" *Id.*

Based upon his review of the relevant cases, Judge Woodlock ruled that "whether an appropriate person is available to move the car is central to an evaluation of the reasonableness of any decision to seize a vehicle." *Id.* at 141. And he concluded that the only ways in which an inventory search may be justified are if it is 1) "made pursuant to a consistent and reasonable policy or practice that cabins the officer's discretion in such a way that non-investigatory community caretaking functions are furthered," or 2) if "even in the absence of a consistent policy or practice, the particular decision of an officer . . . was a reasonable effort to fulfill non-investigatory community caretaking functions." *Id.*

Thus, central to the determination of the motion to suppress in the instant case is whether an "appropriate person" was available to move Bucci's vehicle at the time it was seized. There is no question that such an "appropriate person" was immediately available to move Bucci's car. Bucci's affidavit in support of the motion to suppress at paragraphs 10 and 11 relates that his wife was present at the time of his arrest, identified herself to the agents present as his wife, told them she would take responsibility for the car, and demanded that they give her the keys. These assertions are supported by the testimony of government witness Trooper Kevin O'Neil at the detention hearing in the instant case held on May 28, 2004. At pages 13 and 14 of the transcript of that hearing, the following interchange took place between the attorney for

5

the government and Trooper O'Neil:

> Q    Now, Mr. Bucci, was he arrested on the 20th also?
>
> A    Yes, he was.
>
> Q    And could you briefly describe the circumstances of that arrest?
>
> A    He was located at the tanning salon on Eastern Avenue in Malden. He came out of the tanning salon carrying his child accompanied by his wife. He was placed under arrest right next to his black Mercedes that was previously seen at the Malden Hospital and he was taken into custody.
>
> Q    Was there an effort on the part of someone who could claim ownership of the black Mercedes?
>
> A    Yes. His wife asked agents several times for the keys to the Mercedes stating that it was her vehicle.

Thus, it is clear that Bucci's wife, an "appropriate person" to the same extent as the wife in *Goodrich*, was available to take lawful possession of Bucci's vehicle, and there was no need or justification for it to be seized by the government agents.

Notwithstanding Mrs. Bucci's availability to take possession of his vehicle, the government has not demonstrated and cannot prove that the seizure of the vehicle was either made pursuant to a consistent and reasonable policy or practice that restricted the agent's discretion in such a way that non-investigatory community caretaking functions were furthered, or was a reasonable effort to fulfill non-investigatory community caretaking functions. *Goodrich,* at 141. The government has not produced in discovery any written policy promulgated by the Drug Enforcement Administration setting forth procedures to be followed by its agents in seizing vehicles of arrestees. Nor can any reasonable "non-investigatory community caretaking function" be

6

envisaged that could possibly justify the seizure of Bucci's vehicle on the facts of the instant case, especially where his wife was present, had made repeated demands for the keys to the vehicle (according to the government's own witness), and could have readily taken lawful possession of the vehicle.

It is clear that Bucci's car was seized and "inventoried" solely for investigative purposes. Looking again for guidance from *Goodrich,* Bucci was not arrested in his car, but outside his tanning salon in the presence of his wife, who immediately made herself known to the arresting agents. His car was parked legally. There was no non-investigatory need for the agents to seize the car and drive it away because they could simple have permitted Bucci's wife, who had demanded the keys from them, to take immediate responsibility for it. See *Goodrich,* at 143. The agents' decision to seize the car and drive it off rather than give possession of it to Mrs. Bucci or leave it legally parked violated Bucci's Fourth Amendment right to be free from unreasonable search and seizure. There was no strong non-investigatory reason for seizing the vehicle and there was no co-existence of both an investigative and a caretaking function. The decision to seize the car was completely unrelated to any possible justification relating to the community caretaking function of the agents. The seizure of the vehicle and subsequent "inventory" search justification was a mere pretext for a warrantless investigation in violation of the Fourth Amendment. Accordingly, the motion to suppress the search of Bucci's vehicle conducted pursuant to its unreasonable seizure ought to be allowed in all respects.

The defendant respectfully reserves his right to file a supplemental memorandum of law in light of evidence that may be presented at the hearing on the motion to suppress.

**B. Bucci's Alleged Post-Arrest Statements**

The government alleges that after his arrest, and after having been advised of his *Miranda* rights, Bucci made incriminating statements. Specifically, evidence adduced at his detention hearing on May 28, 2004 from Trooper O'Neil was that after his arrest, Bucci stated that he was approached to participate in the theft of the cocaine, that he did not participate, but he had someone else take his place at the scene of the theft. Bucci has moved to suppress those statements as the "fruit of the poisonous tree" pursuant to *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Under the *Wong Sun* doctrine, when a self-incriminating statement of a defendant is made following an illegal act by the police, the making of that statement must be purged of the taint of the earlier act. See *United States v. Navedo-Colon*, 996 F.2d 1337, 1338 (1st Cir. 1993). Under the *Wong Sun* "attenuation" exception to the exclusionary rule, evidence that is the product of illegal police conduct may be admitted if it has become so distanced from the underlying illegal conduct as to dissipate the taint of the illegal search or seizure. 371 U.S. at 488. "[T]he attenuation doctrine allows introduction of evidence where the causal connection has been weakened by the passage of time or by the intervention of other factors." *United States v. Goodrich, supra* at 145.

In *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), the Supreme Court delineated three factors to be applied in determining whether the taint had been sufficiently diminished: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct are all relevant." *Id.* at 603-04. And, the burden is on the government to prove that the connection between the illegality and the confession has been broken. *Id.* at 604.

The temporal proximity of the underlying illegality and Bucci's post-arrest statement is relevant to the strength of the connection between the two.  See *United States v. Goodrich, supra* at 147.  The illegal seizure of Bucci's vehicle and his statement were close in time.  Bucci was brought to the federal building within an hour of his arrest in Malden.  Thus, the close proximity of the illegality and his statement weighs heavily in favor of exclusion of the statement.

There were no intervening circumstance between the time of the seizure of his car and his statement.  He was arrested and transported in custody to Boston where his incriminating statement was obtained.  The fact that he was advised of his *Miranda* rights is not sufficient to break the chain of causation begun with the unreasonable seizure of his vehicle.  See *Goodrich, supra* (citing *United States v. McSwain,* 29 F.3d 558, 562 (10th Cir. 1994).

As in *Goodrich,* here the decision to seize Bucci's car was clearly motivated by the desire on the part of the agents to find evidence in the absence of a warrant, probable cause, or any other constitutionally reasonable justification.  The seizure of Bucci's car was not conducted pursuant to a warrant.  It was not a *Terry*-type stop and search.  It was not based upon probable cause coupled with exigent circumstances.  And it was not conducted pursuant to a lawful arrest.  Finally, as has been demonstrated above, it cannot be justified as a lawful inventory search.  Simply put, the agents purposefully acted to gather evidence in a manner designed to circumvent restrictions imposed by the Fourth Amendment.

All three *Brown* factors clearly weigh against a finding of attenuation.  Therefore, Bucci's self-incriminating post-arrest statement was not sufficiently purged of the taint of the Fourth Amendment violation.  Thus, that statement ought to be suppressed.

**Conclusion**

For all the foregoing reasons, Bucci's <u>Motion to Suppress Evidence Illegally Seized</u> ought to be allowed in all respects.

Respectfully submitted,
Anthony Bucci
By his attorney,

/s/Michael F. Natola
_____

May 6, 2005

MICHAEL F. NATOLA
BBO No. 367580
63 Atlantic Avenue
Boston, Massachusetts 02110
Tel. (617) 367-1199
Fax (617) 227-3384
E-mail <u>MFNatola@aol.com</u>

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing memorandum of law has been served the above date, electronically, upon Assistant U.S. Attorney John T. McNeil.

/s/ Michael F. Natola
_____