[Home] [Contents] [Search] [What's New] [Help] [Feedback]
[Previous Section] [Next Section]

## **6651 AUTHORITY TO SEARCH

A. This subchapter establishes program requirements to be followed in the search of property by DEA personnel. The law of search and seizure is continually changing and frequently differs from one Federal district to another. Certain search and seizure principles have become established constitutional standards that DEA personnel may not intentionally violate. Detailed interpretation concerning the information summarized herein should be obtained in advance from the Office of Chief Counsel (CC) or the U.S. Attorney's Office (USAO) in any instance in which the constitutionality of a proposed search or seizure may be in question.

B. There are three means by which law enforcement personnel may gain legal access to property, conduct a search, and make a seizure subsequent to the search: See below.

    1. Search Warrant. (Legal access may be gained in a similar manner through the use of an Administrative Inspection Warrant. See 5231.6 of the Diversion Investigators Manual for details concerning the use of an Administrative Inspection Warrant).

    2. Consent searches generally or consent to inspect a registrant's controlled premises pursuant to a notice of inspection (21 C.F.R. Sections 1316.06, 1316.07(a) and 1316.08).

    3. Search incident to arrest or other warrantless searches.

C. In order to conduct a lawful search, a DEA Agent must have a search warrant or an applicable exception to the search warrant requirement. Effective drug law enforcement often requires the search of persons or property under circumstances in which it is impractical or unnecessary to obtain a search warrant.

---

## CONTENTS

6651.1 SEARCH WARRANTS

6651.11 Obtaining the Warrant

6651.12 Service and Return of the Warrant

6651.13 Sealed Warrants

6651.14 Nighttime Service

6651.15 Anticipatory Search Warrants

6651.2 CONSENT SEARCHES

6651.3 SEARCH OF PREMISES

6651.4 SEARCH OF PERSONS

6651.5 SEARCH OF CONVEYANCES

6651.6 INVENTORY SEARCHES

---

**6651.1 SEARCH WARRANTS**

**6651.11 Obtaining the Warrant**

A. The agent or law enforcement officer most familiar with the investigation will usually be the individual designated to consult with the prosecutor with regard to obtaining a search warrant. Federal warrants usually will be issued by a U.S. District Court Judge or U.S. Magistrate.

B. The agent must be prepared to complete an Application and Affidavit setting forth the following points:

> 1. A particular or precise description of the place to be searched. Vague descriptions are insufficient. Limitations must be established on the place to be searched.
>
> Example: The two story red brick dwelling located on the property belonging to John Smith located at 1234 Main Street, Annville, Pennsylvania.
>
> If the property is an apartment, then the apartment number should be included. If the property is a vehicle, then a full description of the vehicle should be set forth, including the license plate number, name of owner, etc. If necessary, photographs or diagrams may be attached to the affidavit.
>
> 2. A clear statement that particularly details the evidence that is believed to be on the property. Agents must give careful consideration to the wording of this statement. The statement should be precise enough to meet legal requirements, but general enough to provide sufficient flexibility to the agents. The requirement of "particularity" relates the area of search to the items believed to be on the property.
>
> 3. A complete and accurate statement of why the agent believes that probable cause exists to search the property. Pursuant to controlling decisions by the U.S. Supreme Court, probable cause requires that an experienced and reasonably cautious law enforcement officer would take action based upon the facts and circumstances of the case, which indicate a "fair probability that contraband or evidence of a crime will be located in a particular case." Probable cause has been defined as an amount of proof greater than reasonable suspicion but less than a preponderance of the evidence. Accordingly, probable cause does not mean that the outcome is more likely than not to occur, only that the likelihood of occurrence is sufficient to prompt a reasonably cautious law enforcement officer to take action.

4. Probable cause may be based upon first hand knowledge or hearsay. The test that is currently applied by the courts in deciding whether or not to issue a search warrant is the "totality of circumstance" test. The credibility of the source and the basis of the source's knowledge must be clearly established. It is permissible to have reliable hearsay within hearsay. Each level of hearsay, however, must pass the legally established test of reliability. A weakness in either element may be buttressed by corroboration.

### 6651.12 Service and Return of the Warrant

The following policies apply to the service of search warrants:

A. Search warrants must be served within 10 days of issuance.

B. Prior to serving a search warrant, the case agent will prepare a written operational plan and conduct a briefing in accordance with the procedures set forth in 6653. After the premises have been properly secured, the detailed search for the items listed in the warrant will commence.

C. The search, inventory, and subsequent reports will be prepared as detailed in 6653.

D. The search warrant must be returned to the issuing court within 10 days of service. The return consists of the affiant appearing before the court, presenting a copy of the inventory, and declaring under oath or affirmation that the items seized are a complete and true listing of the items seized pursuant to the service of the warrant.

### 6651.13 Sealed Warrants

Limited situations may require that the copy of the warrant and related documents not be served at the time of search. For example, there may exist compelling circumstances where facts must be promptly verified or developed by entering a private area without alerting the subjects of the search or seizure. The affidavit for this specialized warrant must specifically detail the facts and circumstances relied upon to justify the sealing and delay of notice. The judicial officer authorizing the warrant must sign a separate document sealing the warrant and related documents for a specified period of time. The use of this type of specialized warrant may be a sensitive investigative activity requiring the approval of the Sensitive Activities Review Committee (SARC). Agents should review Subchapter 660 to determine whether SARC approval is necessary based upon the facts and circumstances of their case.

### 6651.14 Nighttime Service

The Controlled Substances Act (CSA) provides that a "search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States Magistrate issuing the warrant is satisfied to believe that probable cause exists for the warrant and for its service at such time." If the affiant believes that service between the hours of 10:00 p.m. - 6:00 a.m. local time is necessary, the U.S. Attorney or state/local prosecutor should be requested to petition the court for authorization to search during these hours.

### 6651.15 Anticipatory Search Warrants

A. When a court issues an "anticipatory" search warrant involving a controlled delivery or a reverse undercover operation, the court intends to authorize the execution of the warrant only after the controlled substances or other contraband has actually been delivered to the location that is the subject

of the warrant. It frequently will be necessary for agents to obtain a search warrant before the drugs or other contraband are delivered pursuant to a controlled delivery or reverse undercover operation in circumstances where it is anticipated that it will be necessary to enter an area in which a reasonable expectation of privacy exists to recover the contraband and make arrests. The explicit statement of the caveat or condition in the warrant is of critical importance to the validity of the warrant. It is strongly recommended that such language be incorporated on the face of the warrant itself, and not only in the affidavit and application.

B. The language included on the face of an anticipatory search warrant must clearly indicate the following points:

    1. With respect to the controlled delivery or reverse undercover operation, the execution of the warrant is conditioned upon receipt of the drugs by the subject(s).

    2. The execution of the warrant is subject to the receipt of the drugs at the location that is targeted in the search warrant.

    3. DEA agents must make certain that anticipatory search warrants include clear and precise conditional language, which specifies on the face of the warrant that the drugs or other evidence must be delivered to the target at the subject location before the warrant may be executed.

Example: This warrant will not be effective and may not be executed until after delivery to and receipt by John Doe, at his below address, of a Federal Express package addressed to him at Apartment A-1, Dwelling House Apartments, 100 Front Street, New York, NY, with a return address of 50 Smith Lane, Dallas, Texas, and bearing a shipping date of August 12, 2000, on the label that is attached to the package, which contains a 500 gram mixture of cocaine, and, in addition, this warrant may not be executed later than 10 days from the date of its issuance.

**6651.2 CONSENT SEARCHES**

**See DEA Teletype 05817 dated 03/30/05, Subject: Implementation of DEA Form 88A (Consent to Search - Spanish Version).**

A. Consent searches must be voluntary. It is not necessary that the person having possessory rights over the property to be searched know that he/she has the right to refuse consent, but knowledge of that right is part of the equation that a court will use in determining, under totality of the circumstances, that a consent search was voluntary (Schneckloth vs. Bustamonte, 412 U.S. 218, {1973}).

B. The burden of proof that a consent search was voluntary rests with the Government. The consent must be established by a preponderance of the evidence (i.e., it is more likely than not that the subject gave consent for his/her property to be searched).

C. A third party can give consent to search an area to which he/she has common authority with the suspect. A third party may also give a consent to search an area even if he/she does not have authority over the area, provided that a reasonable law enforcement officer in similar circumstances would have believed (and the law enforcement officer in fact believed), that the third party had authority to give consent to search the area (Illinois vs. Rodriguez, 497 U.S. 177, 110 S. Ct. 2793, {1990}).

D. The person giving consent may limit the terms of consent or withdraw consent at any time. If the

person giving consent does not limit the terms of the consent, then the courts will examine whether the conduct of the agents was reasonable during the execution of the search.

E. The agents who are requesting authority to conduct a consent search should request that the person who is giving consent read and sign a DEA-88, Consent to Search. If the subject grants consent, but refuses to sign a DEA-88 or lacks the literacy skills to read and understand the form, then his/her oral waiver should be witnessed by two agents.

F. Consent searches must be reported on a DEA-6 within five working days of the search. Any items seized as a result of the search must be processed in accordance with the provisions set forth in 6654, 6662, 6681, and 6682.

## 6651.3 SEARCH OF PREMISES

A. Agents may search premises pursuant to any of the following circumstances:

    1. Search Warrant. See 6651.

    2. Consent to Search. See 6651.2.

    3. Exigent Circumstances. Agents may search an area in which a reasonable expectation of privacy exists without a warrant provided they have probable cause to believe that evidence of a crime is present and any of the following factors exist:

    a. To prevent destruction of evidence - Agents may search an area without a warrant if they reasonably believe that evidence at that location may be imminently destroyed (U.S. vs. Santana 427 U.S. 38, {1976}).

    b. Pursuant to hot pursuit - Agents may search an area without a warrant if they are in hot pursuit of a suspect whom they reasonably believe is in the area to be searched.

    c. To prevent escape - Courts permit law enforcement officers to make warrantless entries to arrest suspects when the officers have reason to believe that the suspect is in the area to be entered and that the suspect will escape if the officers do not immediately enter (Minnesota vs. Olson, 495 U.S. 91 {1990}).

    d. To render immediate aid - Agents may make a warrantless entry into an area if there is an immediate need to enter the area to render aid to someone they believe has suffered physical injury.

    e. To prevent harm to the public or police - Courts permit law enforcement officers to make warrantless entries to arrest suspects when the officers have reason to believe that the person to be arrested is in the area to be entered and poses a danger to the officers or others (Hancock vs. Dodson, 958 F. 2d 1367, 1375, {6th Cir. 1992}).

    f. Protective Sweep - Agents may conduct a limited warrantless search (a protective sweep) of the immediately adjoining rooms of the area to be searched without probable cause or suspicion incident to a lawful arrest (to include arrests made pursuant to exigent circumstances entries). Agents may also conduct a protective sweep of other areas if they have a reasonable suspicion that those areas harbor a person who could launch an attack

upon the agents. "Such a protective sweep is not a full search of the premises, but may extend only to a cursory sweep of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises" (Maryland vs. Buie, 494 U.S. 324, 326, 110 S. Ct. 1093, 1094 (1990)).

B. Curtilage is defined as "that area harboring intimate activities associated with the sanctity of the home and the privacies of life." Courts determine whether an area is within the curtilage of the home by examining the following factors (U.S. vs. Dunn, 480 U.S. 294, {1987}):

   1. The proximity of the area to the home.

   2. Whether the area is within the same enclosure as the home.

   3. The nature of the use to which the area is put.

   4. The steps taken by the resident to protect the area from passers by.

C. Generally, a search warrant, consents to search, or exigent circumstances are necessary to search the curtilage of private property. However, the courts have defined some clearly established exceptions to this rule to include:

   1. Public View - There is no exception of privacy when the area of curtilage is open to public view.

   2. Aerial Surveillance - Law enforcement may fly over property, even if protected by a fence, and anything that can be seen from the aircraft is not protected by the Fourth Amendment (California vs. Ciraolo, 476 U.S. 207, {1986}).

   3. Trash Searches - Law enforcement officers may search trash left for collection in an area accessible to the public. This does not apply to trash that is stored in an area not accessible to the public.

## 6651.4 SEARCH OF PERSONS

A. DEA Agents may conduct a search of a person under the following circumstances:

   1. Search Warrant. See 6651.1.

   2. Incident to Arrest. See 6641.

   3. Consent to Search. See 6651.2.

   4. Temporary Detention. See 6641.

B. The search of a person incident to arrest includes the area within the immediate control of the arrestee.

## 6651.5 SEARCH OF CONVEYANCES

A conveyance may be searched under any of the following circumstances:

1. Pursuant to a search warrant.

2. If probable cause exists to believe that evidence or contraband is located in a conveyance, it is not necessary to obtain a warrant to search the conveyance. This exception to the warrant requirement applies to motor vehicles, trucks, trailers, boats, aircraft, trains, buses, and, in certain circumstances, motor homes.

3. Incident to the lawful arrest of the driver or an occupant. Generally, the searches include the entire passenger compartment of the vehicle and any container, locked or unlocked, located therein (U.S. vs. Valiant, 873 F.2d205,206, {8th Cir. 1989}).

4. Pursuant to the seizure of a conveyance for forfeiture proceedings.

5. Pursuant to an inventory of a conveyance seized for safekeeping. Agents may conduct a complete search of a conveyance, without a warrant or probable cause, when necessary to inventory property for safekeeping. DEA policy requires that an inventory of all conveyances seized for forfeiture or safekeeping be conducted as detailed in 6654.

6. Consensual searches.

### 6651.6 INVENTORY SEARCHES

A complete inventory shall be made of all property that is taken into custody by DEA for safekeeping, regardless of whether probable cause exists to search the property. Inventory searches are made to identify items of value in order to protect DEA personnel from claims of theft or loss of property that enters DEA custody. Inventory searches need not be made contemporaneous with the arrest of any person or at the time of seizure, but must be made as soon as practical after the property to be searched has been transported to a DEA or other law enforcement facility. Inventory searches shall be made of all containers, whether locked or unlocked, that are lawfully seized for safekeeping. All items shall be inventoried on a DEA-12 and the details of the inventory shall be reported in the DEA-6 that reports the related enforcement activity.

** Addition

**DEA SENSITIVE**
This manual is the property of the Drug Enforcement Administration. Neither it nor its contents may be disseminated outside the DEA without the express permission of the Office of Chief Counsel.

SF-120.

3. The completed SF-120 must be mailed to GSA, Federal Supply Service (FSS), at 470 L'Enfant Plaza E, SW, Room 8100, Washington, DC 20407, or faxed to (202) 619-8985. DEA personnel may call (202) 619-8975 in case of any questions.

4. If GSA does not authorize use of the drug paraphernalia for law enforcement or educational purposes by federal, state, or local authorities, it may authorize its destruction, at which time, a DEA-48a will be submitted to the appropriate custodian to authorize the destruction of the exhibits.

**NOTE**: Absent criminal proceedings under Section 863, paraphernalia must be processed for summary or administrative forfeiture. Under any of these alternative methods of forfeiture, an SSF must be submitted.*

D. Property that is being utilized in the operation of a clandestine laboratory, or is otherwise unlawful to possess (i.e., explosives, automatic weapons, etc.), must be processed as outlined in 6662.2 and 6681.2.

E. The seizure of controlled substances from a DEA registrant will be coordinated in advance with the Office of Diversion Control, Registration Unit (ODRR). All pharmaceutical controlled substances seized from a DEA registrant will be processed as nondrug evidence exhibits outlined in 6681.2. Upon arriving at the location of a firm, pharmacy, physician's office, or similar establishment for the purpose of seizing pharmaceutical controlled substances, the GS or the Diversion Investigator (DI) will notify the person(s) from whom the pharmaceutical controlled substances are seized as follows:

1. The search/inspection is being conducted pursuant to the CSA;

2. Identify the property to be seized; and

3. Advise what recourse is available to the registrant.

### 6654.62 Conveyances

**Exhibit 2/6654 is a notification letter completed by DEA personnel sent to a registered owner when releasing a conveyance or other asset to a lien holder rather than the registered owner.**

A. 21 USC Section 881 (a)(4) provides that any conveyance (aircraft, vehicle, vessel, etc.) is subject to forfeiture if it is used, or intended to be used, to transport or facilitate the transportation, sale, receipt, possession, or concealment of controlled drugs, raw materials, or equipment in violation of the CSA. The law thus provides DEA with latitude to seize conveyances under a broad range of circumstances. It is DEA policy that, in any circumstance where probable cause exists to believe that a conveyance was used or intended to be used in a manner meeting the criteria of 21 USC Section 881 (a)(4), the conveyance will be seized.

B. Exceptions to this seizure policy are as follows:

1. If the value of or the amount of equity held in a conveyance other than aircraft or vessel is less than $5,000, unless the conveyance was modified for the purpose of transporting controlled substances (e.g., hidden compartments, etc.,); or

2. If the value of or the amount of equity held in an aircraft or vessel is less than $10,000, unless the aircraft or vessel was modified to facilitate the transportation of controlled substance; or

3. If the conveyance is inoperable to the point where it cannot reasonably be used; or

4. If the conveyance is in a repair shop, and the cost of the repair(s) is substantial versus the value or equity held in the conveyance; or

5. A conveyance rented/leased from a reputable rental/leasing agency, where there is no reason to suspect collusion between the violator(s) and the rental/leasing agency officials, that is taken into custody for safekeeping, i.e., seized incident to arrest, should be released to the rental/leasing agency pursuant to the execution of a DEA-292, by an authorized representative of the agency.

6. If the ownership of the conveyance that was used in a violation has been transferred to an innocent third party between the time of illicit use and the time of seizure.

> **NOTE:** If a conveyance is located in a repair shop and the cost of repair is not prohibitive in comparison to the value of the asset, a GS should request that the shop complete the necessary repairs and release the conveyance with a petition to recover the charges. If the repair shop declines to do this, the repair bill should be paid from operational funds and charged as a cost of seizure.
> **EXAMPLES:**
>
> i) If a reputable lienor has repossessed the conveyance for reasons other than knowledge that the conveyance was utilized in violation of the CSA, the conveyance will not be seized. Conversely, if there is evidence amounting to probable cause that the repossession was made to defeat an anticipated asset seizure, the conveyance will be seized.
>
> ii) If, prior to seizure, a conveyance is sold to an innocent purchaser, the conveyance will not be seized. Conversely, if there is evidence amounting to probable cause that the sale was initiated to defeat the seizure with the knowledge of the purchaser, the seizure should be made.

7. If the seizure was made solely on the use of the conveyance to transport a personal use quantity of controlled substances. Personal use quantities of drugs are those amounts that would *not* make the person in possession liable to felony drug charges pursuant to the federal CSA.

8. If the conveyance was stolen and was in that status during the violation.

9. If the conveyance is a common carrier, except as provided for by law.

10. If the conveyance was seized by a state/local agency without DEA participation in the investigation, DEA will not adopt the seizure unless a substantial amount of drugs are involved. A "substantial amount" of drugs is a quantity sufficient to warrant federal prosecution in the district where the seizure was made.

11. If there is not a substantial connection between the conveyance to be seized and a federal felony drug offense. A "substantial connection" is defined as a situation in which the conveyance was:

    a. purchased with proceeds traceable to a drug transaction or series of drug transactions; or

    b. used to transport a quantity of controlled substances sufficient to support felony charges pursuant to the CSA; or

    c. used to facilitate a federal drug felony violation of the CSA.

C. *Once it is determined that there is sufficient* probable cause that a conveyance has been used in violation of the CSA, the conveyance will be seized by authorized DEA personnel. The following procedures apply to the seizure of conveyances:

    1. The conveyance will be transported to a secure location as soon as possible and a thorough inventory search will be conducted. All containers in the vehicle (whether locked or unlocked) will be opened and searched. A search warrant is not necessary to conduct an inventory search and it is not necessary that this search be conducted contemporaneous with the seizure or arrest. Drug or nondrug evidence exhibits located as the result of this search will be processed as appropriate per 6662.2 or 6681.2, respectively. Other assets subject to forfeiture will be processed according to the provisions of 6654.43. Personal property located in the vehicle that is not needed as evidence or subject to forfeiture will be inventoried on a DEA-12 and placed in safekeeping for return to the owner. Accessories, jacks, and standard maintenance tools are considered to be part of the conveyance. Similarly, installed radios, tape and compact disc (CD) players are also part of the conveyance. Tapes or CDs inside the player are considered part of the conveyance, while loose tapes/CDs are not. The details of this inventory will be recorded on a DEA-6, filed to the appropriate criminal case number entitled "Inventory Search of (Identify Conveyance)."

REDACTED