UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | |
| v. | ) | No. 04-cr-10194-RCL |
| | ) | |
| ANTHONY BUCCI | ) | **HEARING REQUESTED** |
| | ) | |

**DEFENDANT'S MOTION TO DISMISS OR FOR APPROPRIATE
RELIEF BASED ON OUTRAGEOUS GOVERNMENT
MISCONDUCT WITH INCORPORATED MEMORANDUM**

Now comes the defendant, in the above-entitled matter, and moves this Honorable Court to dismiss the indictments against him, or for relief, based on the prosecutor's and case Agent's pattern of outrageous government misconduct, which included but was not limited to, interference with the defendant's right to court access and his relationship with defense counsel through coercive, false and knowingly or willfully unlawful threats, contravening the First n.1/, Fifth and Sixth Amendments to the United States Constitution.

The affidavit of trial counsel as well as exhibits are filed in support hereof and permit findings by this Court concerning AUSA's threats impeding the fundamental Constitutional right to meaningful access to the Court as well as supporting this Court's inferences and findings in the area of obstruction of justice

-1-

n.1/ Hernandez-Tirado V. Artau, 874 F2d 866, 869 (1st Cir 1989)(In a First Amendment violation context the Supreme Court "requires conduct that is 'outrageous', either because of a person's 'evil motive' or because of 'reckless indifference' to the rights of others.")

contravening 18 USC 1503(a)18 USC 1512(b)(1) and 18 USC 1512(b)(2)(A), <u>United States V. Roth</u>, 777 F2d 1200,1206 (7th Cir 1985)(A court must make findings that "describe that conduct as perjury or as the suborning of perjury or as some other sort of outrageous or intentional misconduct that would justify ordering the indictment dismissed and the conviction overturned.") following full development of the record at an evidentiary hearing, <u>United States V. Simpson</u>, 813 F2d 1462, 1464-1466 (9th Cir 1987)(eight day evidentiary hearing on outrageous government misconduct" involving tragic use of prostitute as informant and granting suppression but reversing lower court's dismissal of indictment).

        The affidavit of counsel is filed with exhibits in support hereof detailing the factual basis for this motion. Such affidavit and exhibits outlines the defendant's primary grounds which include, but are not limited to, threats to enhance his sentence if he truthfully averred and signed an affidavit supporting his motion to reconsider suppression of his arrest statement and the government's claim deliberately misrepresenting that the defendant did not sign a Miranda form because no such DEA form exists [contrast attached exhibit forms signed by codefendants Muolo and Minotti]. As set out in his affidavit, during his booking the defendant, Anthony Bucci, recalls signing a Miranda form at the time he indicated he unequivocally invoked his right to counsel and to remain silent. On two occasions, one as recent as mid-February 2006, counsel for the defendant orally requested AUSA John McNeil to provide him with a copy of the Miranda advisement of rights form which his client signed. AUSA McNeil not only told defense counsel that the DEA did not use such a form and that no such form

-2-

existed, but McNeil also threatened to seek enhancement of the defendant's sentence if the defendant signed the electronically filed affidavit supporting the motion for reconsideration of suppression of claimed booking statements. McNeil specifically told defense counsel that he had checked with the DEA agents involved in this case, and they advised McNeil that the DEA does not use any Miranda advisement of rights form. Upon defense counsel reminding AUSA McNeil that discovery in this case included two DEA Miranda forms signed by Jon Minotti and Francis Muolo, McNeil replied that those were not DEA forms, but that they were likely "local police department forms" [Contrast exhibit DEA 6 report on Muolo's signing Miranda form on the same May 20, 2004 date and during the approximate booking time as defendant Bucci in the same DEA New England Field Division Headquarters Office]. The form signed by codefendant Muolo in the DEA Headquarters is the identical form signed on May 19, 2004 signed by Minotti at his home in Stoneham. The computer disc exhibit [at two minutes and thirty seconds into the tape], filed herewith, also corroborates the defendant's truthful averments concerning his signing a Miranda form during booking at the time he invoked his right to counsel and made no statements. These Middleton holding facility calls took place prior to the detention hearing and the defendant could not possibly have foreseen at the time he made the calls that more than a year and a half later such tape might be filed with this Court to support this motion. It is also noteworthy that the government had knowledge of these taped calls but chose to omit them in its opposition filings while denying the existence of the form.

-3-

The DEA 6 report prepared by DEA Special Agent Damian Farley on May 24, 2004 regarding "Post Arrest Statements of Anthony Bucci on May 20, 2004" states in pertinent part, "Bucci was read his Miranda warnings and transported to the DEA Boston Field Division for processing," the same place to which Muolo was brought upon his arrest. The report also states, "During processing, Bucci was read his rights again and said he understood them." Thus, it is reasonable to infer that: (1) the appended forms are not local police department forms; (2) that the DEA does in fact utilize Miranda advisement forms; (3) that the DEA used such forms with the other two civilians arrested in connection with this case; and (4) that DEA used such a form with the only other civilian arrestee, Anthony Bucci, as Bucci has averred in his affidavit referred to above.

Pages 114 through 116 of the transcript of the motion to suppress hearing conducted by the Court on October 18, 2005 reflect that the Court, in a "musing," expressed to the attorney for the government its concern that the evidence it heard from two government witnesses was at total variance with facts set forth in the government's brief in opposition to the motion to suppress. This musing was a clear expression of the Court's doubt about the veracity of the government's written representations of fact in the opposition it filed to Bucci's motion to suppress. There is a substantial and material variance between the representations of the attorney for the government to Bucci's attorney concerning the DEA's use of *Miranda* advisement forms and the averments and exhibits set forth in the affidavit of Bucci's attorney in support of the instant motion. That variance casts significant and reasonable doubt on those

Case 1:04-cr-10194-RCL    Document 202    Filed 03/07/2006    Page 5 of 9

-4-

representations of the government warranting sanctions by the Court. The threat of an enhanced sentence and willful omission of the corroborating evidence in the government's files, or the government's destruction of the Miranda form [which likely had the section on the right to counsel circled or checked], support the more extreme sanction of dismissal because, "to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort", Bordenkircher V. Hayes, 434 U.S. 357, 363 (1978).   For a prosecutor "to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional'." Bordenkircher V. Hayes, 434 U.S. 357, 363 (1978) quoting' United States V. Jackson, 390 U.S. 570, 581(1968). "The very threat inherent in the existence of such a punitive policy would…serve to 'chill the exercise of basic Constitutional rights'." North Carolina V. Pearce, 395 U.S. 711, 724 (1969) citing Johnson V. Avery, 393 U.S. 483 (1968) and Griffin V. California, 380 U.S. 609 (1965).

Only "in the rarest and most outrageous circumstances" government conduct might violate " 'that fundamental fairness, shocking to the universal sense of justice mandated by the due process clause of the fifth amendment.' " United States V. Tobias, 662 F2d 381, 386-387 (5th Cir 1981) quoting United States V. Russell, 411 U.S. 423,431-432 (1973)(case might arise where government's conduct was so "outrageous" as to violate due process); Hampton V. United States, 425 U.S.484 (1976)(majority of court, composed of three dissenting Justices and two concurring Justices, accept viability of due process defense distinct from entrapment defense, based on outrageous government misconduct).  The requisite level of outrageousness, the

-5-

Supreme Court has indicated, is not established merely upon a showing of obnoxious behavior or even flagrant misconduct on the part of the police; the broad "fundamental fairness" guarantee, it appears from High Court decisions, is not transgressed absent "coercion to the person", United States V. Kelly, 707 F2d 1460, 1476 D.C. Cir 1983) citing Irvine V. California, 347 U.S. 128, 132-133 (1954). The case at bar, which involves false and coercive threats from Assistant United States Attorney McNeil and a pattern of case Agent's ignoring assertions of the Sixth Amendment right to counsel which shall be fully developed at the evidentiary hearing on reconsideration of suppression presents the rare circumstances envisioned by the panel in United States V. Santana, 6 F3d 1, 12 (1st Cir 1993)( "the outrageous misconduct doctrine, no matter how cramped its confines, is not entirely mummified. Should the occasion and the necessity arise, we continue to believe that the law will prove itself adequate to the task of preventing the government from going too far. In the war on crime, as in conventional warfare, some tactics simply cannot be tolerated by a civilized society.") n.2/.Also see: In Re: United States, 286 F2d 556, 562 n. 5(1st Cir 1961)("Conceivably, although we have no occasion to decide and do not decide, a judgment of acquittal might be warranted in the event that deliberate misconduct of Government counsel is so outrageous as not

-6-

---

n.2/ The facts of this case are more egregious than other prevailing outrageous government misconduct decisions in United States v. Twigg, 588 F.2d 373 (3rd Cir.1978) (government informer contacted defendant about manufacturing narcotics; government supplied chemicals, glassware, and farmhouse used for manufacturing; informer did lion's share of the manufacturing while defendant's involvement was minimal); United States v. Archer, 486 F.2d 670 (2nd Cir.1973) (federal agents deceived court and grand jury by staging sham crime to investigate corruption in state prosecutor's office); Greene v. United States, 454 F.2d 783 (9th Cir.1971) (government agent initiated contact with

defendants and used veiled threats over extended period of time to convince them to produce illegal whiskey; supplied ingredients and was only customer of defendants). only to render the trial in progress unfair but also to make a fair trial in the future impossible.") and United States V. Hastings, 847 F2d 920, 930 (1st Cir 1988)(Breyer,J. dissenting)("Where governmental misconduct is serious, courts sometimes dismiss indictments even though the defendant fails to show the misconduct prejudiced him in particular. United States v. Ballivian, 819 F.2d 266, 267 (11th Cir.1987) (observing that "a pattern of widespread and continuous misconduct" might warrant a dismissal of an indictment with prejudice for governmental misconduct even if defendant fails to show such misconduct seriously prejudiced him). Kyle V. United States, 297 F2d 507, 514 (2nd Cir 1961)(Friendly, J.). Here, the misconduct is not as serious as in the cited cases, but neither does dismissal here rest on the misconduct alone; rather, what is at stake is the district court's authority to take the misconduct into account as one of several relevant factors, when deciding whether to dismiss with or without prejudice") n.3/.

    Where, as here, AUSA McNeil manipulated defense counsel to unlawfully threaten his client not to sign a true affidavit, in violation of 18 USC 1503(a), 18 USC 1512(b)(1) and 18 USC 1512(b)(2)(A) , this Court may find prejudice resulting from such "other actions designed to give the prosecution an unfair advantage at trial," United States V. Marshank, 777 F. Supp. 1507,1521(N.D. Cal 1991). The First Circuit holding that "a criminal lawyer has no license to act as a lawyer-criminal.", United States V. Cintolo, 818 F2d 980,  (1st Cir 1987), also applies to Asistant

-7-

---

n.3/ Outrageous government misconduct is also recognized as grounds for departure below a mandatory minimum sentence or below the applicable sentencing guideline range, United States V. Fontes, 415 F3d 174, 176-183 (1st Cir 2005).

United States Attorneys, United States V. Kojayan, 8 F3d 1315, (9th Cir 1993) (Remanding for the lower Court to consider dismissal of the indictment with prejudice as appropriate sanction for Assistant United States Attorneys' false misrepresentations and the AUSA's supervisors' failure to take corrective action and own up for the misconduct) Contrast United States V. Batres-Santolino, 521 F. Supp 744 (N.D. Cal 1981)(DEA outrageous conduct) with United States V. Talbot, 51 F3d 183, (9th Cir 1994)(Lesser sanction of exclusion of witness testimony for government misconduct) n.4/.

## CONCLUSION

For all the foregoing reasons set forth herein, the defendant respectfully requests that the Court take the following remedial steps: Hold a hearing at which the government shall have the burden of proving beyond a reasonable doubt that it has committed no misconduct as alleged in the instant motion and showing by clear and convincing evidence that AUSA McNeil's potentially felonious threats did not violate 18 USC 1503(a), 18 USC 1512(b)(1) and 18 USC 1512(b)(2)(A); Enter an order dismissing the instant indictment for outrageous governmental misconduct in the exercise of the Court's supervisory powers for the purpose of deterring similar misconduct in the District of Massachusetts, or in the alternative allow reconsideration, allow filing of a post-hearing memorandum of law and issue an order suppressing all the evidence obtained by the government on May 20, 2004 during and after the arrest of the defendant

---

n.4/ As reflected in the Suppression hearing transcripts (page136) this Court has already cautioned AUSA McNeil concerning misleading arguments when Judge Lindsay stated he "was a little concerned about how that episode was described in

your papers on the basis of what I heard from not, but both of these Officers, but particularly Agent Hersey who said I knew who she was", id.

### REQUEST FOR HEARING

The defendant respectfully requests a hearing on the instant motion to be conducted on the same day, or days, as an evidentiary hearing on the issue of suppressing the booking statements the government claims were made. The defendant requests further that the Court enter on the record findings of fact and rulings of law with respect to its determination of the instant motion and the intrinsically related motion to suppress.

Anthony Bucci
By his attorney,

/s/Michael F. Natola
_____

March 7, 2006

MICHAEL F. NATOLA
BBO No. 367580
63 Atlantic Avenue
Boston, Massachusetts 02110
Tel. (617) 367-1199
Fax (617) 227-3384
E-mail MFNatola@aol.com

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing affidavit has been served the above date, electronically, upon Assistant U.S. Attorney John T. McNeil.

/s/ Michael F. Natola
_____
MICHAEL F. NATOLA