## REPORT OF INVESTIGATION

Page 1 of 2

| | |
|---|---|
| 1. Program Code | 2. Cross File / Related Files  3. File No. ███  4. G-DEP Identifier ███ |
| 5. By: SA Damian P. Farley<br>At: Boston, MA | 6. File Title ███ |
| 7. ☐ Closed ☐ Requested Action Completed<br>☐ Action Requested By: | 8. Date Prepared<br>05/21/04 |
| 9. Other Officers: SA Jean Drouin, TFA Picardi | |
| 10. Report Re: Post Arrest Statements of Anthony Bucci on May 20, 2004 | |

### DETAILS

1. On May 20, 2004, Anthony **Bucci** was arrested by DEA for conspiracy to distribute cocaine. **Bucci** was read his Miranda warnings and transported to the DEA Boston Field Division for processing.

2. During processing, **Bucci** was read his rights again and said he understood them. **Bucci** agreed to speak with SA Drouin and SA Farley regarding the charges he was arrested on. **Bucci** stated he did not know why he was arrested. **Bucci** said he was a user of cocaine and had recently been on a 3 day binge using cocaine and oxycontins. **Bucci** said he was fully aware of what was going on and he not under the influence at this time.

3. SA Drouin explained to **Bucci** on December 24, 2003, at the Malden Hospital parking lot, DEA surveillance observed Bucci steal 3 kilograms of cocaine from Carlos **Ruiz**. **Bucci** denied that he stole the cocaine. **Bucci** said he was asked by some one to participate in the rip off but he did not do it, instead he arranged a third party to help the person who asked him. **Bucci** said he did not rip off anyone. **Bucci** was asked who the person was that asked him to rip off the Ruiz but he declined to answer that question. **Bucci** was asked who the third party was he told about the rip off and **Bucci** declined to answer.

| 11. Distribution:<br>Division<br>District<br>Other | 12. Signature (Agent) *DP Farley* | 13. Date 5-24-04 |
| | 14. Approved (Name and Title)<br>Robert H. Robertson, Jr.<br>Group Supervisor | 15. Date 5-24-04 |

DEA Form - 6
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

1 - Prosecutor

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

0000000609

EXHIBIT C

| | |
|---|---|
| REPORT OF INVESTIGATION<br>(Continuation) | 1. File No. ██████  2. G-DEP Identifier ██████ |
| | 3. File Title ██████ |
| 4. Page 2 of 2 | |
| 5. Program Code | 6. Date Prepared 05/21/04 |

4. **Bucci** stated that he was innocent and would go to trial on the charges.

## INDEXING

1. Bucci, Anthony ██████

2. ██████



DEA Form - 6a
(Jul. 1996)

**DEA SENSITIVE**
Drug Enforcement Administration

This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.

Previous edition dated 8/94 may be used.

1 - Prosecutor

0000000610

bucci day 1 101805F

9   those motions, having concentrated on the motion before me
10  today. And so I'll promptly get back to you.
11          Are there any speedy trial problems here?
12          MR. McNEIL: Because there are motions still
13  pending, and if the Court were to hold a hearing on the motions
14  for severance, there's not an issue.
15          THE COURT: Okay. All right. Let me get back to
16  you promptly.
17          MR. McNEIL: Thank you.
18          THE COURT: Thank you.
19          MR. NATOLA: Thank you, your Honor.
20          (Discussion off the record.)
21          THE COURT: There is one other thing before you all
22  leave. There is one other thing I intended to say.
23          Mr. McNeil, it's to you. I have a musing. Because
24  what -- I saw your brief having to do with the caretaking
25  function. Your argument about the caretaking function was that

                                                            136

1   the officers, when they showed up to arrest Mr. Bucci and
2   Mrs. Bucci came out, they weren't -- they had doubts in their
3   mind -- they had some question about whether that person who
4   identified herself as Mrs. Bucci was, in fact, Mrs. Bucci and
5   that they would have to take some time to figure out who she
6   was. That's what you say to me in your paper; isn't that
7   right?
8           MR. McNEIL: The government essentially says, your
9   Honor, that -- it's actually the inverse. It says the officers
10  were not obligated under the particular circumstances that they
11  were presented with at that situation to ensure that, in fact,
12  this was Mrs. Bucci and to ensure that, in fact, she had
13  authority to take the car. They -- that was essentially the

EXHIBIT D

bucci day 1 101805F

14  government's argument; there was no obligation to do that.
15       THE COURT: My musing on that, the evidence I heard
16  was that there was no doubt as to who that woman was; that they
17  had previously seen her photograph, her driver's license and a
18  picture, knew who she was, and not only knew who she was, knew
19  what car she drove, the white Hyundai, I believe it was.
20       So I was a little concerned about how that episode
21  was described in your papers on the basis of what I heard from
22  not one, but both of these officers, but particularly Agent
23  Hersey, who said I knew who she was, I handed her the baby.
24  Just a musing.
25       Anything you want to say about that?

137

1        MR. MCNEIL: I say two things, your Honor.
2        The first -- I do this in all my motions, I put a
3   footnote during the beginning, the evidence during the hearing
4   is sometimes different from the evidence you gather when you're
5   writing a motion, which happens in this case five months
6   before. So this was written sometime ago. You learn things
7   when you're preparing witnesses before the hearing, give you
8   greater detail, greater confidence in what exactly the evidence
9   is. So the government says I relied primarily on the evidence
10  that's elicited at the hearing and not what's summarized in the
11  motion.
12       When you have --
13       THE COURT: If I had relied on that, I would have
14  had a totally different version of the facts.
15       MR. MCNEIL: The reason why I put that footnote in
16  there, because if we're going to have an evidentiary hearing,
17  you can't rely on the statement of facts. That's simply
18  provided so that the Court has some information prior to the

Page 115

bucci day 1 101805F

19  hearing.
20         Information -- there was some sense from Mr. Hersey
21  that I learned in the last week or so that he had a pretty good
22  idea that this was Mrs. Bucci; but that still, I don't think,
23  undercuts necessarily the government's argument.
24         In this case you have a fast-moving situation with
25  four arrests in a single day. They were very concerned that

                                                                    138

1   they wanted to get the car and the person out of that location
2   and it was not -- there is no obligation on the part of those
3   officers to take the time and make sure that this was the right
4   person and she had proper authority --
5          THE COURT: Let me just say this. When the officer
6   said he was prepared -- the agent said he was prepared to give
7   this woman the baby, you know, it seemed to me there's no doubt
8   that he knew who she was. He was going to give her a baby. I
9   just wanted to point that out. It's a little -- I just have a
10  little concern about that, because they seemed to have no doubt
11  of who that person was.
12         That's all I want to say.
13         Thank you.
14         MR. MCNEIL: Thank you, your Honor.
15         (Court adjourned at 1:19 p.m.)
16                - - - - - - -
17                CERTIFICATION
18         I certify that the foregoing is a correct
19  transcript of the record of proceedings in the above-entitled
20  matter to the best of my skill and ability.
21
22
23  _____    _____