UNITED STATE DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| V | ) | No. 04-cr-10194-RCL |
| | ) | |
| ANTHONY BUCCI | ) | |

**VERIFIED MOTION OF PAUL A. DeCOLOGERO FOR RELEASE OF JON MINOTTI'S LIMITED DEA-6 STATEMENTS RELATED TO THE GOVRNMENTS PATTERN OF CONCEALMENT OF EXCULPATORY EVIDENCE AUSA'S McNEIL AND MERRITT PARTICIPATED IN WITH ATF AGENT MERCER AND AUSA'S IN UNITED STATES V. DeCOLOGERO**

Now comes the wrongfully convicted defendant, Paul A.

DeCologero, and, pursuant to Hon. Judge Rya Zobel's suggestion to ask Judge Lindsay to

release Jon Minotti's statements (which conflict burdened former Attorney Jon Salsberg

refused to move this Court for during the past ten days), without regard to the lack of

credibility of Jon Minotti's stories (which still are material and exculpatory and were

concealed by the prosecution team including AUSA's McNeil and Merritt), moves

Honorable Judge Reginald C. Lindsay to release:

1) Jon Minotti's (albeit possibly contrived) interview statement naming Anthony Bucci as telling Minotti he was the person who provided a bunch of guns to (WITSEC cooperator) Steven DiCenso which were subsequently seized by ATF Agent John Mercer ( only the page listing that and "ATF Murder Investigation);

2) First page of the above listed DEA-6 report which named Atty Michael Schneider (Salsberg & Schneider)as being present during,or setting up, that DEA interview ;

3) Any other excerpt pages of Jon Minotti's statements which mention Aislin Silva, including but not limited to a subsequent DEA-6 report naming Anthony DeCologero (not Paul A.) as being the person responsible and clarifying the guns mentioned in the first report were linked to the Aislin Silva investigation and her apartment, not as formerly limited to Dicenso's apartment;

4) Any DEA 6's first page in the above-numbered case naming ATF Agent John Mercer on the cover page (otherwise redactable) because the record before Judge Zobel shows multiple denials by AUSA's and Mercer with DEA involvement.

-1 of 2-

As verification the attached sworn affidavit of William Mahoney concerning Jon Minotti's involvement as a suspected perpetrator in one of the Hobbs Act robberies in the DeCologero case, multiple filings (the undersigned avers were all handed to Judge Zobel's clerk but some undocketed ones are being located for docketing), are submitted to show AUSA's Feeley, DiNisco and Bator       in the DeCologero case were aided by AUSA's McNeil and Merritt in this case, concealing the highly exculpatory DEA 6 reports by using the ruse of having Judge Lindsay order they not be disseminated, until ethical Attorney Michael Natola properly presented the general nature of the reports to Judge Zobel and all counsel when Anthony Bucci was called as a defense witness but his testimony could not be presented due to this Court's orders, thereby resulting in per se reversible error described in the other attached motions. In addition, out of appreciation for Attorney Natola having the courage to expose a pattern of government misconduct in my case (see sidebar transcript being prepared) and because death penalty negotiation details of cooperator Dicenso were concealed from Derek Capozzi and denial of subpoenaed records of lawyers is now expected to reverse his conviction, attached hereto are copies of the usual WITSEC lawyer subpoena's that produce all notes (see affidavit of Attorney Robinson agreeing to respond to subpoena) for in camera review, and appellate record sealing [for which AUSA subpoenas are also necessary to avoid   motions to quash by way of AUSA's violating Brady duty under United States V. Sudikoff, 36 F. Supp 1196 (CD Cal 1999) as presented in  attached Attorney Gormley motion to quash], hopefully preventing reversible error in this case.

March 24, 2006, copies served on
AUSA's McNeil & Merriit, and
Defense Attys Natola and Dreschler          -2 of 2-

RESPECTFULLY REQUESTED BY,

Paul A. DeCologero

DE#1787

*Exhibit*

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

USA V Bucci

04-CR-10194-RCL

```
                              )
UNITED STATES                 )
                              )
V.                            )     No. 01-cr-10373-RWZ
                              )
PAUL A. DeCOLOGERO            )
                              )
```

### AFFIDAVIT OF WILLIAM MAHONEY IN SUPPORT OF THE DEFENDANT'S MOTIONS RAISING CONFLICTS OF INTEREST RELATED TO JON MINOTTI AND NON-DISCLOSURE OF EXCULPATORY EVIDENCE

I, William Mahoney, hereby depose and state of my own personal knowledge, under pain and penalty of perjury, that:

1) I am a lifelong resident of Stoneham Massachusetts with the exception of approximately September 2002 thru March 2003 when Jon Minotti paid for my house in Fullerton California rented from Ange Realty, and paid for its furnishings.

2) In December 20, 2002 I was arrested with $175,000.00 of Minotti's money and three ounces of high quality marijuana. On October 19, 2003 I was arrested with 322 pounds of Minotti's marijuana in LaSelle County Illinois

3) I have known Steven DiCenso for approximately seventeen years since junior high school.

4) I have known Jon Minotti for approximately fifteen years since high school.

-1-

5) During the approximate 1995-1996 time period I observed Jon Minotti and Steven Dicenso together on many occasions.

6) Jon Minotti hooked DiCenso up with marijuana (approximately 50 pound loads) and because DiCenso used to hang around Paul McCarthy's apartment a lot I observed them there several times.

7) I was interviewed by Paul A. DeCologero's investigator and his lawyer John Salberg at the Salsberg & Schneider Office. Attorney Salsberg appeared to be reluctant to interview me and during that interview on a list of subjects concerned Jon Minotti asking me to help him rob a drug dealer in 1996 he referred to as Slim Stevens with Steven DiCenso and Thomas Regan (both of whom I had seen at Paul McCarthy's house in Stoneham). Investigator Gretchen Bennett was present when I told these facts to Attorney Salsberg, and she can verify the fact that did not ask me any questions on this matter and did not prepare me to testify about this. Subsequently, Jon Minotti told me that I had missed out on a good deal because they had gotten two shopping bags of drugs and money from Stevens. Minotti also told me that it was easy, the bags were right on the floor of a closet This was one of four areas Minotti discussed with me concerning rip offs in 1992, 1995, 1996 and 2002 when he repeatedly asked me to do rip offs. Minotti told me that he had guns and that we could use them for robberies. The 1992 incident involved Minotti threatening to beat someone up because that person had told the drug dealer he had robbed where Minotti was. In 2002 Minotti

-2-

also asked me to help him rip off Bill Gauthier. The 1996 matter should be in both the investigator's notes and a list in Attorney Salsberg's files [my memory seems to associate the 1996 incident with #10 on the list] but I do not specifically recall going into the pattern of 1992, 1995 and 2002 matters during that pre-trial interview and paragraph seven of my affidavit is just a rough approximation of facts which I am available to expand on at any retrial or evidentiary hearing in <u>United States V. DeCologero</u>, et. al., 01-10373-RWZ.

8) I have an excellent memory and I may have more information which I can provide to any lawyer in this case who wants to fully interview me.

March 11, 2006

William Mahoney

-3-

DE#1784

Exhibit

USA v Bucci

04-cr-10194-Rcl

UNITED STATE DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

UNITED STATES      )
                     )
V                   )    No. 01-cr-10373-RWZ
                     )
PAUL A. DeCOLOGERO   )   **(HEARING REQUESTED)**
                     )

**MOTION FOR AUTOMATIC DISQUALIFICATION OF ATTORNEYS
JOHN SALSBERG, SUSAN CHURCH AND SALSBERG & SCHNEIDER
LAW FIRM BASED ON MULTIPLE CONFLICTS OF INTEREST
AND THE DEFENDANT'S TIMELY NOTICE OF PAUL A. DeCOLOGERO
NOW BEING REQUIRED TO DO CLOSING ARGUMENT BY HIMSELF**

                            Now comes the defendant, Paul A. DeCologero, in the

above-entitled matter, and moves this Court, Honorable Rya Zobel, to automatically

disqualify Attoneys John Salsberg, Susan Church and the law firm of Salsberg &

Schneider, based on multiple  conflicts of interest, with the defendant giving timely

notice that Paul A. DeCologero is now required to do closing arguments by himself

because he is the only person having knowledge of the defenses and trial proceedings.

                            In support of this motion and the required finding of

Multiple conflicts of interest, the defendant notes his prior filings on the first day of

empanelment with a copy of DeCologero V. Salsberg, 2006-101-F (legal malpractice

and breach of professional contract conflict of interest based January 9, 2006 filing fee

waiver approved January 11, 2006 verified complaint for monetary damages) supporting

his substitution of counsel motion, the March 8, 2006 affidavit of Paul A. DeCologero

and the affidavit of William Mahoney filed herewith.United States V. Tracy, 81 F3d 147,

-1-

149 (1st Cir 1996)("Courts have recognized that a conflict of interest may result when pursuit of a client's interest would lead to evidence of attorney malpractice.United States V. Ellison, 798 F2d 1102, 1106-1108 (7th Cir 1986) cert. denied, 479 U.S. 1038 (1987)(defendant had accused attorney of malpractice); Mathis V. Hood, 937 F2d 790, 795 (2nd Cir 1991)(defendant had filed grievance with disciplinary committee).A showing of an actual conflict of interest obviates the need to demonstrate prejudice and constitutes a per se violation of the Sixth Amendment.").

                    The facts which have been before this Court for more than two months, as recently supplemented with the Jon Minotti DEA 6 report conflict and affidavit of William Manohey certainly show that the defendant has met the standards set forth in Mickens V. Taylor, 535 U.S. 162, 172 n.5 (2002) with respect to the "conflict of interest" resulting from the Salsberg & Schneider Law Firm having "a division of loyalties that affected counsel's performance", Glasser V. United States, 315 U.S. 60, 75 (1942). The combination of John Salsberg and his investigator not interviewing Minotti, and not seeking Minotti's DEA 6 statements concerning Anthony Bucci owning the guns given to DiCenso to store at Aislin Silva's apartment (creating the same motive for Bucci) or related to David DeCologero's father Anthony DeCologero (not Paul A.) being involved, and not presenting the testimony of William Mahoney related to cooperating Salsberg & Schneider client witness Jon Minotti's Hobbs act robbery of Slim Stevens with Dicenso and Thomas Regan (which had potential adverse consequence for Minotti), prove adverse affect on defendant Paul A. DeCologero's defense. Contrast Reyes-Vejerano V. United States, 276 F3d 94, 100 (1st Cir 2001)("For example, one client may

-2-

stand to gain through negotiations with prosecutors that will injure another, raising concerns of loyalty; or information obtained in the representation of one client may be potentially useful to another, raising concerns of confidentiality -- **particularly if the first client is a possible witness at the second client's trial**.") with Brien V. United States, 695 F2d 10, 15 (1st Cir 1982)( "In order to establish an actual conflict of interest, the petitioner ordinarily must prove two elements. First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. Foxworth V. Wainwright, 516 F2d 1072, 1079 (5th Cir 1975).He need not show that the defense would necessarily have been successful if it had been used, but merely that it possessed sufficient substance to be a viable alternative. Id. Second, he must establish that the alternative defense was inherently in conflict with the attorney's other loyalties or interests") ."). The case at bar has demonstrable prejudice, unlike United States V. Familia, 30 F3d 127 (1st Cir 1994)("Familia also offers no sound reasons to believe that Bonifacio (who was paying counsel) would have confessed to being the true owner of the cocaine"in relation to the defendant's claim concerning defense counsel "failing to file a motion to compel a confidential informant, who participated in three drug buys before Familia's arrest and provided the Providence police with information which lead them to suspect that persons occupying Familia's apartment were selling cocaine, to testify and identify the real drug pushers (i.e.,Bonifacio and Kris)"), because Jon Minotto was and is the other suspect in at least one of the Hobbs Act robberies and Attorney Salsberg's Law Firm conflict prevented him from presenting Minotii's testimony concerning Anthony Bucci being the owner of the bunch of guns seized from Aislin Silva, and

-3-

both Minotti's admissions to Mahoney and Bucci's admissions to Minotti were

admissible evidence had Attorney Salsberg not had a genuine conflict, Sanders

V. Ratelle, 21 F3d 1446, 1452-1456 (9th Cir 1994)(other suspect conflict); Avila V.

Galaza, 297 F3d 911, 915-924 (9th Cir 2002)(other suspect conflict); Perillo V. Johnson,

205 F3d 775, 801 (5th Cir 2000)("" Actual conflict may exist and the Constitution is

implicated when an Attorney places himself or herself in a situation inherently

conductive of divided loyalties"); Rubin V. Gee, 292 F3d 396, 405 (4th Cir

2002)("Adverse effect can be shown from an Attorney's failure to take actions that are

clearly suggested from the circumstances"). When the failure to interview and call

Vincent Marino and other defense witnesses (see subpoena exhibits attached to the

March 8, 2006 DeCologero affidavit and objections to Jon Minotti not testifying) are

added to the conflict of interest from DeCologero V. Salsberg legal malprace, .United

States V. Ellison, 798 F2d 1102, 1106-1108 (7th Cir 1986) cert. denied, 479 U.S. 1038

(1987)(defendant had accused attorney of malpractice); Mathis V. Hood, 937 F2d 790,

795 (2nd Cir 1991), this Court has an affirmative duty to automatically disqualify the

Law Firm of Salsberg & Schneider and obtain the exculpatory fifteen page DEA 6 report

and other Statements of Jon Minotti from the government on the morning of March 13,

2006, allowing Paul A. DeCologero to present his own closing arguments and then

assigning CJA counsel to prepare the motion for mistrial and for a new trial during the

expected extended jury deliberations this week.

RESPECTFULLY SUBMITTED,

March 13, 2006 8:00 a.m.                          _____
Copy served on AUSA's in hand and Board of       Paul A. DeCologero pro se
Overseers and CJA Administrator Charles Rankin

-4-

*Exhibit*

UNITED STATE DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

*USA V Bucci*

*04-cr-10194-Rcl*

| | | |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| V | ) | No. 01-cr-10373-RWZ |
| | ) | |
| PAUL A. DeCOLOGERO | ) | |

## DEFENDANT DeCOLOGERO'S OBJECTIONS TO JUDGE ZOBEL'S CLEARLY ERRONEOUS AND FACTUALLY UNSUPPORTED DEN IAL OF MATERIALWITNESS JON MINOTTI AND OTHERS, WITH MOTION REQUEST TO OBTAIN, REVIEW <u>IN CAMERA</u> AND SEAL IN THE FIRST CIRCUIT RECORD ALL INTERVIEW STATEMENTS OF MINOTTI THAT <u>CONCERN GUNS, AISLIN SILVA AND THE STONEHAM OVERDOSES</u>

Because of the <u>United States V. Jon Minotti,</u> 04-cr-

10325-GAO **"actual conflict of interest"** "with the interests of another of (the Salsbeg &

Schneider) firm's clients" [docket entry #41 Michael Schneider Motion To Withdraw]

that "counsel has conferred with both the defendant (Minotti) and the prosecuting

Attorney John McNeil and believes that his withdrawl is in the interest of his client (Jon

Minotti) and is or will at some point be required by the Mass. Rules of Professional

Conduct",id, which precluded defense Attorney John Salsberg from acting with loyalty

only to defendant Paul A. DeCologero throughout the trial, and which "Counsel is

prepared to reveal the particulars of his concerns to the Court, either ex parte or in the

presence of the prosecuting Attorney [DE #41 paragraph 5], not having the undivided

loyalties of any assigned CJA Attorney, now comes Paul A. DeCologero and states his

objections to Judge Zobel's March 9, 2006 clearly erroneous and factually unsupported

denial **(misstatement in open Court that Minotti had no admissible testimony)** of

-1-

material defense witness Jon Minotti and all other proposed defense witnesses. Because

the testimony of William Mahoney which conflict burdened Attorney Salsberg could not

elicit concerning Jon Minotti's drug dealing partnership with Steven DiCenso and close

relationship to, as well as personal knowledge of the details of, at least one of the dead

persons found with Dicenso, defendant DeCologero also moves Hon. Judge Zobel to

obtain, then review **in camera**, and seal in the appellate First Circuit Court of Appeals

record, all of the ATF and DEA, or other AUSA debriefing and proffer statements of

Jon Minotti concerning the bunch of guns Anthony Bucci admitted he gave DiCenso

which were seized by the police (inferably in DiCenso's girlfriend's apartment),

concerning Aislin Silva **(who Minotti named the killers of in his DEA statement**

**in relation to the ATF murder investigation)** and concerning the Stoneham overdoses,

United States V. Acevedo-Ramos, 755 F2d 203, 209 (1st Cir 1985)("independent, though

in camera, review of the underlying evidence at defendant's request offers the defendant

greater protection than no independent check at all. Cf. Fed.R.Crim.P. 16(d)(1)"); United

States V. Conley, 249 F3d 38, 43 (1st Cir 2001) ("After oral argument on Conley's motion

for a new trial, the district court ordered the government to produce, in camera, all of the

IAD files in its possession related to this case"); United States V. Martorano, 663 F2d

1113, 1115 (1st Cir 1981)("The prosecutor in charge of this case had a positive duty to

review the files himself or have them checked by someone thoroughly familiar with the

case. Nor do we think that Agurs is avoided because the Detroit grand jury testimony of

Ciulla was turned over to the court during the trial for an in camera inspection. The Brady

motions were made prior to trial and the judge should have been apprised of the existence

-2-

of the testimony before trial so he could have examined it, if he wished. Although it probably made no difference in this case, **there may be cases in which a pretrial in camera inspection of alleged Brady material would expedite matters considerably"**); United States V. Brillmyer, 57 F3d 31,33 (1st Cir 1995)( "The district court found that Josleyn had made the threshold showing required under United States V. LaRouche Campagne, 841 F2d 1176 (1st Cir 1988),to warrant in camera review of the documents in the Cameron file"). Here, defendant Paul A. DeCologero, has met his burden for the in camera review of Minotti's statements because they contain several conversations with other suspected perpetrator Anthony Bucci containing admissions against Bucci's penal interests, and Minotti's long term drug dealing partnership or association with Steven DiCenso, United States V. Nixon, 418 U.S. 683, 700 (1973); United States V. LaRouche Campagne, 841 F2d 1176, 1179 (1st Cir 1988)("Reviewing the record before it, the Nixon Court concluded that although the contents of the tapes could not, at the stage of in camera review, be described fully by the Special Prosecutor, "there was a sufficient likelihood that each of the tapes contain[ed] **conversations relevant to the offenses charged in the indictment."** 418 U.S. at 700, 94 S.Ct. at 3103 (emphasis added). It also concluded that there was a "sufficient preliminary showing that ... the subpoenaed tapes contain[ed] evidence admissible with respect to the offenses charged in the indictment." Id. (emphasis added). In the case before us, the following facts were before the court: (1) Fick was not only a scheduled prosecution witness but it was uncontroverted that he would be a key witness, indeed one of the two most crucial government witnesses; (2) **he had been professionally associated with several of the defendants** in their "security

-3-

and intelligence" work for most of the period charged in the indictment").

        This Court was precluded as a matter of law from merely relying on conflict burdened Attorney Salsberg to make the Minotti offer of proof, not just because of his inability to offer his firm's client's inculpatory statements, but because Salsberg must be found to have rendered ineffective assistance for failing to even interview Minotti or investigate Minoti's connections to Steven DiCenso or the other suspected perpetrator Anthony Bucci source of Aislin Silva guns admissions against Bucci's penal interests which Salsberg had a duty to introduce for the defense, Avila V. Galaza, 297 F3d 911, 915-924 (9th Cir 2002)(Successor Attorney Yamamoto held ineffective because, "Despite Yamamoto's belief that Ernesto was the shooter, **he conducted no investigation to substantiate this belief and never instructed his investigator, Kazuo Sakamoto ("Sakamoto"), to seek out evidence implicating Ernesto"** which prior Attorney Denny was aware of because"shortly after the shooting, Ernesto met with Denny and Lynn and confessed that he, not Jesus, was the shooter. Attorney Denny withdrew from Jesus's case because he believed that Ernesto's confession created a conflict of interest"); Towns V. Smith, 395 F3d 251 (6th Cir 2005)(Counsel's conduct was objectively unreasonable because "counsel could not have evaluated or weighed the risks and benefits of calling (the uninterviewed person) as a defense witness without so much as asking [him] what he would say if called. Prejudice was found because, if counsel had investigated, the (uncalled witness) would have testified that the defendant had nothing to do with the crimes); United States V. Moore, 554 F2d 1086, 1093 (DC Cir 1976)("Counsel's anticipation of what a potential witness would say does

-4-

not excuse the failure to find out"); US EX REL Hampton V. Leibach, 347 F3d 219, 252

(7th Cir 2003)(Defense "counsel cannot assess credibility and demeanor of a prospective

witness without looking him in the eye and hearing him tell his story"); Anderson V.

Johnson, 338 F3d 382, 385, 388-394(5th Cir 2003); Pavel V. Hollins, 261 F3d 210, 219-

229 (2nd Cir 2001). Attorney Salsberg's conflict extends to his investigator who he did

not send to interview Jon Minotti and the conflict burdened limited request which was

denied on March 9, 2006 was insufficient for proper evaluation of the potential

materiality of Jon Minotti's defense testimony. Only full **in camera** review of all of

the ATF and DEA and AUSA's copies of Jon Minotti's statements concerning the Bucci

source guns, Aislin Silva and the Stoneham overdoses with Minotti's connections to

Steven DiCenso can support a proper decision as to whether Jon Minotti should now be

presented as a defense witness (noting that Paul A. DeCologero did not agree to resting

the defense without Minotti's testimony).

## CONCLUSION

Paul A. DeCologero's objections should result in this

Court reconsidering its denial and reopening the defense for Jon Minotti and all other

related defense witnesses to testify after this Court orders production of all of that

material wintess' statements for its review and sealing in the First Circuit appellate

record because the trial has turned into a farce and mockery of justice due to the

patently unconstitutional restrictions on the defense and conflict burdened counsel

amounting to no counsel at all. New CJA assigned counsel is necessary and the

March 9, 2006 motion to dismiss or for a mistrial should also be granted. At the

-5-

necessary retrial of this case, the unduly restrictive and blanket restrictions on the

defendant's testimony should not occur, <u>Rock V. Arkansas</u>, 483 U.S. 44 (1987)(and

its' progeny);

RESPECTFULLY SUBMITTED,

March 10, 2006

Paul A. DeCologero
27 Back Bay Court
N. Reading, MA. 01887

Copy served on AUSA's in hand upon filing in court on 3/10/06

-6-

DF# 1786

*Exhibit*

*USA V Bucci*

UNITED STATE DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

*04-cR-10194-Rcl*

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| V | ) | No. 01-cr-10373-RWZ |
| | ) | |
| PAUL A. DeCOLOGERO | ) | **(HEARING REQUESTED)** |
| | ) | |

**DEFENDANT PAUL A. DeCOLOGERO'S VERIFIED OMNIBUS MOTION FOR ASSIGNMENT OF CONFLICT FREE COUNSEL TO INTERVIEW AND PRESENT TESTIMONY FROM MATERIAL WITNESSES, OR TO COMPEL ATTORNEY SALSBERG AND GRANT A SHORT CONTINUENCE AS WELL AS SANCTION THE GOVERNMENT FOR ITS' PATTERN OF NON-DISCLOSURE, OR TO DISMISS THE INDICTMENTS OR GRANT A MISTRIAL**

Now comes the defendant and moves this Honorable

Court to assigned conflict free counsel, pursuant to the CJA act, for the purpose of

interviewing Salsberg & Schneider law firm counsel's former clients Jon Minotti and

Vincent Marino, with several witnesses related thereto (see subpoena copies attached

to March 8, 2006 DeCologero affidavit and four more March 9, 2006 subpoena requests)

with a hearing held forthwith on this motion, United States V. Eaton, 416 F2d 22, 23 (9th

Cir 1969)(Evidentiary hearing required when counsel's loyalty or competence is called

into question by his untimely failure to subpoena a defense witness), or to compel

Attorney John Salsberg to interview both Marino and Minotti and file or make an oral

offer of proof as to the relevance and materiality of their testimony, or for this Court to

otherwise facilitate the defendant's Sixth Amendment Compulsory Process Clause rights

Washington V. Texas, 388 U.S. 14, 16-23 (1967); United States V. Valezuela-Bernal,

458 U.S. 858, 867 (1982) because "the right to offer the testimony of witnesses, and to

-1-

compel their attendance, if necessary, is in plain terms the right to present a defense, the

right to present the defendant's version of the facts as well as the prosecution's to the jury

so it may decide where the truth lies. Just as an accused has the right to confront the

prosecution's witnesses for the purpose of challenging their testimony, he has the right to

present his own witnesses to establish a defense. This right is a fundamental element of

due process of law," PetttiJohn V. Hall, 599 F2d 476, 480 (1st Cir 1979) and grant a short

continuance for the these purposes because this is not a case like United States V.

Tajaddini, 945 F2d 458, 465-466 (1st Cir 1991) where assigned counsel's failure to

follow his clients directions in a timely manner to subpoena California witnesses was due

to the defendant failing to sufficiently provide counsel with names,id. Also see United

States V. Fountain, 768 F2d 790, 806-807 (7th Cir 1985).

        For the first time, on March 8, 2006, the government's

continuing pattern of non-disclosure  and false denials n.1/, was exposed by United

States V. Bucci, 04-cr-10194-RCL defense Attorney Michael Natola showing Judge Rya

-2-

n.1/Attached hereto are the following July 22, 2004 transcript excerpt exhibits:

> "MR. PAUL A. DeCOLOGERO: **Is there any more ? Where is it ?
> Where is the exculpatory evidence, your Honor ? They keep
> on holding evidence back.**"
> (page 22)

> "THE COURT: And I am simply asking you whether the Government
> has, you know, **what the level of comfort is on the part of  Government
> counsel that there isn't something else out there ?**
>
> MR. FEELEY: Well, its as high as it can be, your Honor, without
> having a crystal ball and without knowing for sure. But **the
> Government certainly knows of no possibility of reliable
> information inconsistent with its theory of the case here.**"
> (page 26)

Zobel and all defense counsel in this case a concealed DEA 6 report which has on its'

first page Attorney Michael Schneider's name, and on a subsequent page includes the

words **(ATF murder investigation)** and the statement of a Salsberg and Schneider Law

Firm client cooperating government informant: **"Minotti stated that Bucci had a bunch**

**of guns that were stored at Steve DiCenso's house that were found by the police"**

which is an obvious refernce to the bunch of guns DiCenso's girlfriend Aislin Silva had

seized by ATF Agent John Mercer (who shall be shown to have been part of Minotti

debriefing or interview team and have had personal knowledge of Minotti naming Bucci

as the other suspected perpetrator with a similar motive to kill Silva due to the loss of

Bucci's guns). Defense witness William Mahoney will also need to be recalled to

corroborate Jon Minotti and Steven DiCenso's drug dealing partnership and Jon Minotti's

best friend dying in the Stoneham overdoses at a location Minotti often

frequented and is expected to have vast exculpatory knowledge of circumstances and

poison heroin sources. These facts were known or available to Attorney John Salsberg,

but Salsberg chose not to explore his firm's client having an intimate relationship with

main government witness DiCenso and reasonably foreseeable culpability. Protecting

the penal interests of Salsberg & Schneider client Jon Minotti was and is in direct

conflict with preparing and presenting the best available defense for their firm client

Paul A. DeCologero, and such ongoing genuine conflict of interests is the only reason for

defense counsel not interviewing and calling Minotti as a trial defense witness.

Attorney John Salsberg's refusal to help serve a subpoena

Of Jon Minotti on March 8, 2006 with a subpoena for the DEA 6 requires new CJA

-3-

counsel assignment forthwith, and strongly supports granting a mistrial.

                                    The sanction of dismissal of the indictment or this Court

granting a mistrial is warranted after an assigned CJA lawyer interviews Jon Minotti,

prepares him to testify and presents him as a defense witness with copies of ATF Agent

John Mercer's notes, all DEA interview reports, and Attorney Schneider's law office

records concerning the DEA 6 report in question, his motion to withdraw due to the

genuine conflict of interest with another firm client (i.e. Paul A. DeCologero). See

supplemental memorandum on dismissal issue to be filed based on this most recent

instance in the pattern of non-disclosure of exculpatory evidence and the late disclosure

of the DEA 6 on March 8, 2006 causing prejudicial loss of defense witness Anthony

Bucci's testimony,id. Testimony from AUSA's in this case, in Minotti's case and both

ATF and DEA Agents is necessary to fully develop the record on this issue and for the

jury on the outrageous government misconduct defense, United States V. Santana, 6 F3d

1, 12 (1st Cir 1993)( "the outrageous misconduct doctrine, no matter how  cramped

its confines, is not entirely mummified. Should the occasion and the necessity

arise, we continue to believe that the law will prove itself adequate to the task of

preventing the government from going too far. In the war on crime, as in conventional

warfare, some tactics simply cannot be tolerated by a civilized society."); In Re: United

States, 286 F2d 556, 562 n. 5(1st Cir 1961)("Conceivably, although we have no occasion

to decide and do not decide, a judgment of acquittal might be warranted in the event that

deliberate misconduct of Government counsel is so outrageous as not only to render the

trial in progress unfair but also to make a fair trial in the future impossible.") and United

-4-

States V. Hastings, 847 F2d 920, 930 (1st Cir 1988)(Breyer,J. dissenting)("Where

governmental misconduct is serious, courts sometimes dismiss indictments even though

the defendant fails to show the misconduct prejudiced him in particular. United States V.

Ballivian, 819 F2d 266, 267 (11th Cir 1987)(observing that "a pattern of widespread and

continuous misconduct" might warrant a dismissal of an indictment with prejudice for

governmental misconduct even if defendant fails to show such misconduct seriously

prejudiced him). Kyle V. United States, 297 F2d 507, 514 (2nd 1961)(Friendly,J). This

Court may find prejudice resulting from such "other actions designed to give the

prosecution an unfair advantage at trial," United States V. Marshank, 777 F. Supp.

1507,1521(N.D. Cal 1991); United States V. Kojayan, 8 F3d 1315, (9th Cir 1993)

(Remanding for the lower Court to consider dismissal of the indictment with prejudice as

appropriate sanction for Assistant United States Attorneys' false misrepresentations and

the AUSA's supervisors' failure to take corrective action and own up for the misconduct)

Contrast United States V. Batres-Santolino, 521 F. Supp 744 (N.D. Cal 1981)(DEA

outrageous conduct) with United States V. Talbot, 51 F3d 183, (9th Cir 1994)(Lesser

sanction of exclusion of witness testimony for government misconduct).

                               With respect to Salsberg & Schneider associate Attorney

Ryan Schiff's former client, Vincent Marino, new CJA counsel is also needed to

interview this vital defense witness and present a proper full offer of proof (not just the

limited offer conflict burdened Attorney Salsberg filed) adding the other suspected

perpetrator aspects, the involvement of Robert Nogueira in the disappearance and death

of Aislin Silva (recognizing Attorney Salsberg previously received other source data on

Ms. Silva being seen in the company of these individuals and giving Nogueira a bag of gloves from her place of employment, MVP Sports, which defense counsel refused to conduct any investigation into). Also see Boston Herald newspaper reporter's that Attorney Salsberg refused to subpoena as listed in attachments to March 8, 2006 DeCologero affidavit and note the other documents sought that the law firm of Salsberg and Schneider refused to subpoena create a huge issue for the First Circuit while combining the Minotti conflict of interests issue amounts to "structural error" and complete denial of counsel voiding the results of this trial.

Defendant Paul A. DeCologero  also suggests the ongoing obstruction of transportation of Vincent Marino due to possible overtime hours or U.S. Marshall's service extra costs, is pennywise and pound foolish where, as here, the denial of the Compulsory process Clause right to present Marino's testimony most likely will result in a First Circuit retrial order if the government's fatally flawed case somehow results in convictions. A court abuses its discretion when it denies a subpoena request for a witness who would give relevant testimony, United States V. Sims, 637 F2d 625, 627-629 (9th Cir 1980). Accord, United States V. Cruz-Jiminez, 977 F2d 95, 102-105 n. 5(3rd Cir 1992)(lower court abused its discretion by refusing to issue writ of habeas corpus ad testifcandum to the custodian of an incarcerated witness, where the witness' testimony may have been  material which would have been a jury question, not up to the government and its theory of what the testimony may have been); United States V. Moudy, 462 F2d 698, 699 (5th Cir 1972)(fact that court knew relevance of testimony and available procedure to bring witness to court would not have delayed the

-6-

trial supported finding that lower court abused its' discretion). Because a court must grant

a defendant his Compulsory Process Clause rights when the proferred testimony is

relevant and material, Holden V. United States, 393 F2d 276, 278 (1st Cir 1968)("If the

court is satisfied that the proposed testimony of the witness would be material to the case

it **shall** vacate the judgment and verdict and grant a new trial"), this Court should order

the U.S. Marshall's service to bring Vincent Marino to Massachusetts to testify on

Friday March 10, 2006. n.2/

### CONCLUSION

This Court should assign conflict free CJA counsel, or

grant other relief stated herein, including but not limited to, facilitating defense witness

testimony and dismissing the indictments or granting a mistrial

RESPECTFULLY SUBMITTED,

March 9, 2006

Paul A. DeCologero
27 Back Bay Court
N. Reading, MA. 01887

-7-

n.2/ It should also be noted that everyone in the Courtroom understood the proffer as
to the witnesses who had not appeared on March 8, 2006 and this Court's denial of the
request for bench warrants also amounted to prejudicial reversible error, United States
V. Simpson, 992 F2d 1224, 1229-1230 (D.C. Cir 1993)

*Exhibit*

*Needs to be docketed in DF #1786*

*USA v Bucci*

UNITED STATE DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

*04-cr-10194-Rcl*

)
UNITED STATES                      )
                                   )
V                                  )       No. 01-cr-10373-RWZ
                                   )
PAUL A. DeCOLOGERO                 )
_____)

**AFFIDAVIT OF PAUL A. DeCOLOGERO IN SUPPORT OF
RENEWED REQUEST FOR FAIR OPPORTUNITY TO PRESENT
A FULL DEFENSE AND FOR COMPULSORY PROCESS
OR MY ALTERNATIVE REQUESTS FOR A MISTRIAL OR TO
COMPEL ATTORNEY SALSBERG TO PRESENT FULL DEFENSE**

I, Paul A. DeCologero, hereby depose and state under pain and penalty of perjury, that:

1) I requested my Attorney, John Salsberg, to present the defense testimony

    of Vincent Marino in a proper and timely manner verbally on several

    occasions prior to trial, during the beginning of trial when the witness list

    was filed, and only when Attorney Salsberg failed to exercise my Sixth

    Amendment Compulsory Process Clause rights for the first month of trial

    did I give him a motion to file to bring Marino to Massachusetts which he

    edited and filed on February 28, 2006. This was followed by Judge Zobel

    allowing the motion in open court last week.

2) I also requested Attorney Salsberg to fully present my other suspected

    perpetrator defense in a timely manner prior to trial, during the beginning

    of trial when additional witnesses were given to him in a handwritten list

    during the first day of jury empanelment, and more recently I gave him a

-1-

set of document and witness subpoenas (copy attached hereto) which was consistent with my requests during meetings in his office during the summer of 2005, my verbal pretrial Compulsory Process requests, and my requests during jury empanelment. I now request the Court to have subpoenas served forthwith.

3) In addition, as early as last summer during our meetings in his office, I had made requests for investigation of Steven DeCenso's drug dealing partner and potential defense witness Jon Minotti, which were consistent with my first day of trial "Motion For Recusal Of Judge Zobel, Or In The Alternative, Motion For Fair Opportunity To Present A Full defense, With Double Jeopardy Appeal, Or Assignment Of Substitute Counsel" and its attached "Verified Complaint" exhibit affidavit averments.

4) I have not in any way been responsible for delays in the interviewing and calling of any proposed defense witnesses and I have not waived my Sixth Amendment Compulsory Process Clause rights with respect to Vincent Marino, Jon Minotti and the witnesses and documents listed in the attached subpoena copies, nor do I know whether Salsberg and Schneider's representation of Jon Minotti and their associate Attorney Ryan Schiff's prior representation of Vincent Marino when he was a client of the lawyer Ryan worked for, Robert Sheketoff, has played any part in John Salsberg's reluctance to subpoena documents and call witnesses for my defense in a more timely manner, but I would like this Court to allow me an opportunity to fully develop the record of prejudice I am suffering. I do not have any personal knowledge as to why Attorney Salsberg did not have Vincent

-2-