UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 APR 13  A 9:28

U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES          )
                       )
                       )
                       )
v.                     )          No. 04-cr-10194-RCL
                       )
ANTHONY BUCCI          )
                       )

## DEFENDANT BUCCI'S MOTION TO CONTINUE BAIL PENDING SENTENCING AND APPEAL AND FOR ASSIGNMENT OF CJA COUNSEL

Now comes the pro se defendant, Anthony Bucci,

and moves this Court to assign a CJA list Attorney for his sentencing and direct

appeal, pursuant to 18 USC 3006A, and to continue his bail pending sentencing,

pending a decision on his new trial motion which shall be filed within seven

days of the verdict, pending any appeal therefrom, and pending his direct

appeal pursuant to 18 USC 3143(b) and 18 USC 3148, Fed. Crim. P. Rule 38,

and Fed. App. P. Rule 9(b).

18 USC 3143(B)(1)(2)(3)(4) create an entitlement to

bail when the defendant/appellant can show:

(1) that the defendant is not likely to flee or pose a danger to the safety of any
    other person or the community if released;
(2) that the appeal is not for purpose of delay;
(3) **that the appeal raises a substantial question of law or fact; and**
(4) **that if that substantial question is determined favorably to defendant
    on appeal, that decision is likely to result in reversal or an order for a
    new trial of all counts on which imprisonment has been imposed.**

-1-

Where, as here, the defendant/appellant can make a showing that he has a plethora of meritorious appeal and new trial motion issues, as described infra, decisional law shows that he is entitled to continue his present bail release conditions [which he also requests modified to allow him to work pending the appeal],United States V. Perdermo, 765 F2d 942, 944 (9th Cir 1985)(bail pending appeal was continued following conviction for two counts of possession with intent to distribute cocaine and one count of conspiracy to distribute cocaine); United States V. Higgs, 731 F2d 167 (3rd Cir 1984)(bail pending sentencing following conviction for conspiracy to possess and distribute heroin); United States V. Maher, 10 F. Supp2d 594 (W.D. Va 1998)(thirteen month sentencing issue presented a close question warranting bail pending appeal); United States V. Antico, 123 F. Supp 285 (E.D. Penn 2000)(bail pending appeal granted on RICO and Hobbs Act conviction sentence of sixty-three months); United States V. Hart, 906 F. Supp 102 (N.D. NY 1995)(bail pending appeal granted based on substantial Fed.Evid. Rule 404(b) question presented for appeal);United States V. DiSoma, 769 F. Supp 575, 576-577 (S.D. NY 1991) (novel legal issue  presented a substantial question supporting grant of bail pending appeal following Hobbs Act jewelry store robbery conspiracy conviction) bail pending appeal release affirmed 951 F2d 494 (2nd Cir 1991); United States V. Nissenbaum, WL#_____, ___ F. Supp.2d ___(E.D. Penn 2003)

(Failure to give requested jury instruction presented substantial question

supporting grant of bail pending appeal);United States V. Messerlian, 793 F2d 94,

97 (3rd Cir 1086)(nondisclosure of exculpatory testimony presented substantial

question supporting granting bail pending appeal following imposition of ten

year sentence for obstruction of justice and beating person to death in violation

of his civil rights);United States V. Ducharme, 193 F3d 559 (2nd Cir 1999)

 (Noting bail pending granted appeal where suppression issue presented

substantial question for review);United States V. Berrios, 791 F2d 211, 211-215 (1st

Cir 1986)(Torruella,C.J. dissenting that even when facing a twelve year

obstruction of justice sentence that does not present an insurmountable obstacle

to a grant of bail pending appeal and noting insufficient findings made by the

District Court);Truong Dinh Hung V. United States, 439 U.S. 1236, 1229-1230

(1978)(Mr. Justice Brennan continuing $250,000.00 bail pending appeal of

convictions and fifteen year sentence for espionage, conspiracy to commit

espionage and conversion of government property and classified information

where the defendant faithfully complied with terms of pretrial release conditions

and affirmed at his sentencing his belief that he would be vindicated in his

appeal);United States V, Powell, 761 F2d 1227, 1236-1237 (8th Cir 1985)(bail

pending appeal granted for co-appellant Risken on convictions for four counts of

conspiracy to have a grand jury witness murdered and influencing another

-3-

witness' testimony, where defendant's appellate issue related to the testimony of

a key government witness and if he won on his point reversal or a new trial

would be likely);Chambers V. Missippi, 405 U.S. 1205, 1206 (1972)(Mr. Justice

Powell granting $15,000.00 murder appeal bail based on challenge to use of

hearsay rule to exclude defense witness testimony);Bowen V. Maynard, 799 F2

593, 613-614 (10th Cir 1086)($100,000.00 bail pending triple murder appeal). The

following summaries of argument shall be followed by a fully briefed Fed. Crim.

P. Rule 33 motion for a new trial being filed on or before Tuesday April 19, 2006.


## SUBSTANTIAL GROUNDS SUPPORTING CONTINUED BAIL

I.    **WHERE BOTH ATTORNEYS NATOLA AND ROSSI FAILED
      TO CROSS-EXAMINE CO-DEFENDANT DAVID JORDAN,
      THE CUMULATIVE PREJUDICIAL ERRORS SURROUNDING
      THE MAY 19th, 2004 MINOTTI-JORDAN BODY WIRE TAPE
      WHICH WAS REPEATEDLY PLAYED, AS THE LAST THING
      THE JURY HEARD, WITHOUT LIMITING INSTRUCTIONS,
      ENTITLES DEFENDANT BUCCI TO BAIL PENDING APPEAL**

                    With respect to the May 19th, 2004 Minotti-Jordan

body wire recorded conversation , on March 29, 2006 Judge Hon. Reginald C.

Lindsay stated that, "the question of the admissibility of this tape against Mr.

Bucci has concerned me since the beginning of this case. I didn't sever the case,

so I'm faced with the consequences" n.1/. Judge Lindsay went on to state,

-4-

n.1/ The quotations used in this motion and in the new trial motion come from
the notes that were accurately taken during portions of the trial. The Fed. Crim.
P. Rule 33 new trial motion shall be filed on or before Tuesday April 18, 2006.

"to the extent this statement relates to the concealment from law enforcement",

"I am not able to find on the evidence that the May 19th statements were made in

furtherance of a conspiracy at that time", id. These findings totally precluded

admission of the tape under Fed. Evid. Rule 801(d)(2)(E), , United States V.

Rascon, 8 F3d 1537, 1538-1541 (10th Cir 1993); United States V. Petrozziello, 548

F2d 20, 23 (1st Cir 1977). Furthermore, Judge Lindsay precluded admission of

the body wire tape as a statement against David Jordan's penal interests under

Fed. Evid. Rule 804(b)(3) when he made the finding that "the statements in this

tape are not, in my view, on their own, are not inculpatory in the way 804(b)

requires", id.

Finally, Judge Lindsay noted the application of the

Confrontation Clause of the Sixth Amendment should the Minotti-Jordan

May 19th, 2004  taped statements be admitted "against" the defendant for their

full probative value as substantive evidence because then "there would be some

question in my mind about the confrontation rights of Mr. Bucci", id, followed

by Exhibit N-24A being played at  a volume level where the name "Bucci"

was in a high pitch with related inculpatory identification statements, in contrast

to Judge Lindsay's low  monotone voice limiting instruction:

> "What you hear is admitted as far as it may have any relevance to
> Mr. Jordan, but you are not to consider what you hear on the tape
> as bearing on the **issue** concerning Mr. Bucci"

-5-

Defense counsel had no strategic reason for failing to object to the weak limiting instruction which did not use the correct terms "shall not" or "must not" and "against" and **which used the vague word "issue" without defining the issue for the jury**. The draft 404(b) motions in limine the defendant gave counsel included ten items, but counsel redacted his clients position seeking exclusion of only nine items of evidence. The tenth was the Minotti-Jordan body wire tape and raised a Confrontation Clause as well as Fed. Evid. rule 404(b) objections and shall be filed with other draft motions and two jury instruction requests, as exhibits in support of the Motion for a New trial specifying Attorney Natola's non-strategic omissions. Affidavits shall also be filed verifying Attorney Anthony Rossi and Natola refused to object to the government's focusing on the body-wire tape in its opening statement, just as they failed to object to its overkill on the last day of evidence.

Because Attorney Drechsler stated in open court that he was not making any defense presentation decisions during the government's case in chief, the record clearly shows David Jordan was not subject to cross-examination the first time exhibit N-24A was played to the jury with its identification of Anthony Bucci, its contextual linkage and its powerfully incriminating conspiracy statements "against" the defendant, this Court must find that such playing contravened the Sixth Amendment's Confrontation Clause Crawford V. Washington, 541 U.S. 36 (2004); United States V. Nelson, 165 F. 3d

-6-

1180, 1184 (8th Cir 1999)(discussing fact-intensive analysis of different transactions involving cocaine on different dates between a co-conspirator turned government agent, because "it is well settled that there can be no indictable conspiracy involving only the defendant and government agents and informers."); Morrison V. California, 291 U.S. 82, 91 (1934)(and its' progeny)(Supreme Court holding that "It is impossible in the nature of things for a man to conspire with himself."); United States V. Castellini, 392 F3d 35, 54-55 n.11 (1st Cir 2004)("The agreement between Agent Dowling and Gonet cannot be a conspiracy because there can be no conspiracy as a matter of law solely between a defendant and a government agent"); United States V. Barboa, 777 F2d 1420, 1422-1423(10th Cir 1985)(" A conspiracy is an agreement between two or more people to commit an unlawful act, and there is no real agreement when one "conspires" to break the law only with government agents or informants." "We therefore reverse the dismissal of the district court and remand for an immediate evidentiary hearing to determine whether Robert Edwards was a government agent or informant when he purportedly conspired with Barboa. If he was, the district court must vacate Barboa's conspiracy conviction and sentence."). The record showing Jon Minotti merely repeated the questions of Officer Quinn while taping the target, David Jordan, makes this case analogus to Crawford V. Washington and presents a substantial novel question for appeal, United States V. DiSoma, 769 F. Supp 575, 576-577 (S.D. NY 1991). Where, as here, there were no limiting instructions on

April 6, 2006 when the jury repeatedly heard at high volume the N-24A tape

prejudicial references to Anthony Bucci's participation and bad acts, the

government's closing argument focus on the taped statements as substantive

evidence must be found to undo any earlier limiting instructions and amount

to prejudicial error, United States V. Vega-Molina, 407 F3d 511, 522 (1st Cir 2005);

Richardson V. Marsh, 481 U.S. 200, 208-211 (1987) grant of writ affirmed after

remand, Marsh V. Richardson, 873 F2d 129 (2nd Cir 1989); United States V.

Rodriguez-Marrero, 390 F3d 1 (1st Cir 2004)(Crawford plain and prejudicial error

even in absence of objection to government argument focusing on statement

naming the defendant which was made one week after the murder and may have

influenced the jury to convict him of conspiracy).

                         In relation thereto, the present trial record verifies

defense counsel's non-strategic failure to request the Court to give a limiting

instruction prior to, contemporaneously during, and following the hour of

April 6, 2006 exhibit N-24A body wire tape playing, which in and of itself

supports a new trial based on ineffective assistance of counsel,White V. McAninch,

235 F3d 988, 996-998 (6th Cir 2000); Crotts V. Smith, 73 F3d 861, 867 (9th Cir 1995);

Commonwealth V. Baker, 440 Mass519, 530-532 n.12, n. 13  (2003), particularly

where the repeated playing of the tape was prejudicial overkill which could

have been stopped by objection; hence defense counsel's "failure to object was

based on simple incompetence and not sound strategy", Washington V.

Hofbauer, 228 F3d 689, 707 (6th Cir 2000), as was counsel's failure to

request the limiting instruction the Court gave a week prior to the overkill

and defense counsel's failure to secure the necessary limiting instruction

during the final jury instructions, White V. McAninch, 235 F3d 988, 996-998 (6th

Cir 2000); Crotts V. Smith,73 F3d 861, 867 (9th Cir 1995) which allowed jurors to

consider the following evidence for its full probative value substantively, as

urged by the prosecutor in unchecked closing argument:

["MINOTTI: **I think Bucci**"]

["MINOTTI: **Is Bucci locked up ?**"]

"JORDAN: You Fucking (voices overlap) I can't believe this shit.

**And you introduce me** to this fucking rat Skeeter and **fucking**

**Bucci**, and Oh <u>they're</u> cool. **They're gonna throw me under the**

**Fucking bus to save** <u>them</u>. What the fuck kid. I trust you like

that and **you bring shitheads** like that."

"JORDAN: **Did he say Bucci's saying anything**"

. . . .

"JORDAN: I ain't gonna fucking run <u>**him**</u> and …"(and Bucci reference)

. . . .

-9-

["MINOTTI: (voices overlap) **That's why I'm asking you** if Bucci

 **got arrested or something."**]

[MINOTTI: **He's** the only one who knew"]

"JORDAN: Where's **Bucci** live?"

. . . .

["MINOTTI: I'll call **them**"]

"JORDAN: You fucking introduce me to **two**  shitheads"

[MINOTTI: I will call **them**"]

. . . .

[MINOTTI: Voices overlap) **That;s what I, that's why I'm asking you**

 **about Bucci."**]

"JORDAN: You gotta find **him** ."

[MINNOTI: (voices overlap) …**Bucci**…"]

. . . .

[MINOTTI: I will get ahold of **them** and call you."]

"JORDAN: And those **guys**"

 "JORDAN: You better tell **them** ."

"JORDAN: If its **Bucci, he's** trying to save **his own** ass and

 **he's** a fucking liar"

 [MINOTTI: **He's** a piece of shit, I know."

-10-

Defense Attorney Natola also failed to argue to the jury that the week old limiting instruction must be followed and they had been instructed that they could not consider the May 19th, 2004 body wire tape against Anthony Bucci. Counsel's complete abandonment of his client on this critical issue is suggested to be the most meritorious issue in this case. This issue must be considered in light of the following intrinsically related substantial question concerning defense counsel's complete failure to ask David Jordan any questions about the May 19th, 2004 body wire tape.

As set out in the Affidavit of Anthony Bucci filed in support of this motion and his motion for a new trial, he directed and asked his defense counsel to question David Jordan, bringing out favorable facts to explain parts of the tape, and again directed and asked them to recross-examine Jordan after the prosecutor made him a witness against the defendant by having Jordan give an unqualified law enforcement opinion, Cooper V. Sowders, 837 F2d 284, 286 (6th Cir 1988)(Writ granted based on Officer being allowed to give opinion on critical issue in the trial without being qualified as an expert), to which Attorneys Natola and Rossi insisted Judge Lindsay would not let them ask Jordan any questions after Attorney Natola passed on his first opportunity (albeit against the defendant's directions), United States V. Jones,982 F2d 380, 380 (1992)("**Because new matters were brought out** during redirect, such a blanket prohibition violated Jones' right of confrontation." citing United States V. Riggi,

-11-

951 F2d 1369 (3rd Cir 1991) for its holding that, "In the case before us, by reason of the district court's policy forbidding recross-examination, new information elicited on redirect examination was not subjected to recross-examination by defense counsel. **When material new matters are brought out on redirect examination, the Confrontation Clause of the Sixth Amendment mandates that the opposing party be given the right of recross-examination on those new matters.**"). The new matters the prosecutor brought out during Jordan's questioning gave the defendant an absolute right to recross-examine him and defense counsel's refusal to do so, combined with counsel's failure to ask Jordan any questions mitigating or favorably explaining the body wire tape initially resulted in a blanket denial of Anthony Bucci's right to confrontation which shall be presented under an ineffective assistance of counsel argument in his new trial motion and direct appeal briefs, <u>Dixon V. Snyder</u>,266 F.3d 693, 701-705 (7th Cir. 2001)(defense counsel's failure to cross-examine indicated a "startling ignorance of the law" which prejudiced his client and required habeas corpus relief be granted); <u>Clemmons V. Delo</u>, 124 F3d 944, 949=956 (8th Cir 1996). This certainly supports bail pending appeal and meets the requirements of 18 USC 3143(b)(3)(4) by raising a substantial question of law and fact, <u>United States V. Hart</u>, 906 F. Supp 102 (N.D. NY 1995).

-12-

**II.    THE ERRONEOUS EXLUSION OF THE TESTIMONY OF
ROSS MINOTTI COMBINED WITH DEFENSE COUNSEL'S
FAILURE OR REFUSAL TO PRESENT TESTIMONY FROM
NINE DEFENSE WITNESSES, AND CAUSING DENIAL OF
MOTIONS BASED ON HIS LATE FILING VIOLATED THE
DEFENDANT'S COMPULSORY PROCESS AND COUNSEL
CLAUSE  RIGHTS  AND  SUPPORTS  CONTINUING  BAIL**

Because Judge Lindsay has the most recent winning

ineffective assistance of trial counsel decision, United States  V. Theodore, 354

F3d 1,7-9 (1st Cir 2003) the defendant suggests the following cumulative counsel

error grounds also meet 18 USC 3143(b) requirements for continuing bail and

files both  his affidavit and the affidavit of Ross Minotti in support hereof.

The affidavit of Ross Minotti, as well as the open

court offer of proof, alone meets the requirements of section 3143(b)(1)(2),

Washington V. Texas, 388 U.S. 14, 19-23 (1967)(and its progeny) because it was

not up to Judge Lindsay to decide that Jon Minotti's credibility had already

been sufficiently impeached and the Court committed plain error misapplying

the hearsay rule to exclude Ross Minotti's testimony set out in paragraph 3 of

his affidavit which colorably proved Anthony Bucci was and is actually innocent,

Chia V. Cambra, ___ F3d ____ (9th Cir 2004)(writ granted relying on Chambers V.

Missippi form of due process violation for court to apply hearsay rule to exclude

exculpatory statements explaining defendant was not part of drug robbery plan

where testimony was crucial because of his proximity to the scene at time of

robbery and ambush murder of DEA Agent). Continued bail pending sentencing

-13-

and appeal must be granted even if this issue was standing alone, Chambers V.
Mississippi, , 405 U.S. 1205, 1206 (1972)(Mr. Justice Powell granting $15,000
murder appeal bail based on challenge to use of hearsay rule to exclude defense
witness testimony). There was no physical evidence directly linking Anthony
Bucci to any cocaine, no DEA Agent ever testified that he had been seen with any
drugs and his voice was not recorded on any of the tapes placed in evidence.
Only cooperating witnesses Carlos Ruiz and Jon Minotti testified for rewards
from the government and no unbiased civilian witness testified to any statement
in the conspiracy being made by Anthony Bucci. Other than Minotti and Ruiz the
most prejudicial evidence was the May 19th, 2004 body wire tape exhibit N-24A
which this Court stated should not be considered on the issue with respect to
Anthony Bucci. Under these circumstances the defendant should have at the
very least been allowed to call Ross Minotti, the cooperating witnesses brother,
to explain to the jury Jon Monotti's motive to lie in retaliation for the real estate
deal Minotti felt he had been cheated on, Chia V. Cambra, supra (the Chia
decision was given to Attorney Natola but Natola refused to cite it to Judge
Lindsay as his client had asked him to do).

                With respect to the nine uncalled defense witnesses
[Bucci affidavit paragraph 6] the combined trial record and supplemental
affidavit raise serious questions of law and fact, US EX REL Hampton V. Leibach,

347 F3d 219, 252 (7th Cir 2003); <u>Anderson V. Johnson</u>, 338 F3d 382, 385, 388-

394(5th Cir 2003); <u>Pavel V. Hollins</u>, 261 F3d 210, 219-229 (2nd Cir 2001); <u>Towns V.</u>

<u>Smith</u>, 395 F3d 251 (6th Cir 2005); <u>White V. Roper</u>, 416 F3d 827 (8th Cir 2005).

         With respect to counsel's untimely filing of motions,

<u>United States V. Theodore</u>, 354  F3d 1,4-9 (1st Cir 2003)(noting untimely filings),

particularly the motion to sever Count Five where the defendant would have

testified in a severed trial and not been prejudiced by the May 19th, 2004 body

wire tape, again this presents a substantial question of fact as to whether or not

Attorney Natola's failure to read the case file, <u>Rompilla V. Beard</u>, 125 S.Ct 2456

(2005) was the cause for his not filing timely motions, <u>Kimmelman V. Morrison</u>,

477 U.S. 365, 385-386 (1986), now requiring a new trial motion evidentiary <u>n.2</u>/

hearing, <u>Moran V. Vose</u>, 816 F2d 35, 37 (1st Cir 1987); <u>Phoenix V. Matesanz</u>, 189

F3d 20, 24-25 (1st Cir 1999); <u>Evicci V. Commissioner Of Corrections</u>, , 226 F3d 26,

27 (1st Cir 2000) <u>Gonzales-Soleral V. United States</u>, 244 F3d 273, 277-279 (1st Cir

2001).  Additionally, with respect to the subpoenas Attorney Natola blindly

approved his client paying for service of through co-counsel's process server,

the defendant wanted to explain he had them in his hand trying to give them

to counsel to serve, but without reading them, <u>Rompilla V. Beard</u>, 125 S.Ct 2456

-15-

---

n.2/ The Courthouse public access computer record show that out of 107 clients
Attorney Michael Natola represented, only one went to trial a decade ago and he
has a 99.9 % guilty plea rate for 106 clients, explaining his lack of federal
procedure knowledge and lack of federal trial experience in the case at bar, id.

(2005) Attorney Natola told Anthony Bucci to have them served which makes

Attorney Natola's initial denial of all knowledge in open court questionable. To

the extent the document subpoena for Jon Minotti's and his wife's bank records

as well as the proffer and debriefing note subpoenas and other subpoenas should

have been followed through, new CJA assigned counsel is expected to follow up

on this issue for new trial motion and direct appeal briefing.

III.    THE COURT'S BLANKET RESTRICTION OF CROSS-
        EXAMINATION FOCUSING ON JON MINOTTI'S BELIEF
        OR UNDERSTANDING OF WHETHER HE HAD TO MAKE
        HIS COOPERATION SUBSTANTIAL ENOUGH FOR THE
        GOVERNMENT TO REQUEST A SUBSTANTIAL SENTENCE
        REDUCTION ALSO SUPPORTS CONTINUATION OF BAIL

                        The transcript shall show Attorney Drechsler's well

prepared cross-examination of Jon Minotti for the full day of March 29, 2006

and from 9:15 am to 10:00 am on March 30, 2006.It also shows that between 10:00

and 10:40 am on March 30, 2006, the jury heard an unprepared and lackluster

cross-examination conducted by Attorney Michael Natola who, at times, could

not locate what he was looking for in his notes and, therefore, stated that he was

going on to other subjects or just dropping the line of inquiry altogether n.3/.

                        Within his federal trial inexperienced forty minutes

of practice cross-examination of Jon Minotti, Attorney Natola hit upon one virgin

area of questioning when he asked Minotti if, because of his understanding of

5K1, whether or not Minotti believed or understood that he had to make his

                        -16-

cooperation "substantial" enough for the government to request a "substantial" sentence reduction for him ?

                          Judge Lindsay's mistaken belief that "we've gone over this" as the reason for imposing an unconstitutional blanket exclusion of the line of questioning, Alford V. United States,282 U.S. 687, 692 (1931)(and its progeny) "foreclosing the introduction of any testimony to support (the defendant's) theory of the defense violated (Anthony Bucci's) Sixth Amendment right to confrontation", United States V. Molineli-Navas, 111 F3d 983, 992 (1st Cir 1997) and the government cannot meet its burden of showing the error should be deemed "harmless beyond a reasonable doubt" , Deleware V. Van Arsdall, 475 U.S. 673, 680-684 (1986); United States V. Schoneberg, 388 F3d 1275, 1281 (9th Cir 2004); United States V. Lankford, 955 F2d 1545, 1548-1549 (11th Cir 1992). One of the most important factors in the verdict was the juries, albeit erroneous, choice of Jon Minotti;s credibility over Detective David Jordan's, and the omission of Ross Minotti's testimony. If the jurors had heard that Minotti thought he had to juice up his testimony with the most inculpatory facts and detains to make it "substantial" so the government would recommend a "substantial" sentence reduction in his case. Excluding cross-examination was reversible error.

-17-

n.3/ The pro se defendant most respectfully suggests this court was mistaken with its unbalanced allowance of four times as much cross-examination for Attorney Drechsler was fundamentally unfair and the Court's blanket rulings excluding all questions which could have been asked by Natola that had been previously asked by Attorney Drechsler, shall also be a direct appeal issue, id.

### IV. THE COURT'S FINAL CHARGE WHICH DID NOT INCLUDE A SPECIFIC JURY INSTRUCTIONS NOT TO CONSIDER THE PRE-DECEMBER 24, 2003 CONSPIRACY MEETING EVIDENCE AND STATEMENTS ALLOWED CONSTRUCTIVE AMENDMENT OF THE INDICTMENT AND SUPPORTS BAIL PENDING APPEAL

As set out in paragraph twelve of the affidavit of

Anthony Bucci, one of the two jury instruction requests he gave Attorney Michael

Natola to file was the following request:

"The Fifth and Sixth Amendments to our Constitution guarantee fair notice
of charges as well as consideration of the specific charges set forth in an
indictment and evidence 'reasonably near' the dateor dates set forth theirein.
I am, therefore, instructing you that you may not and should not consider
Mr. Minotti's testimony concerning claimed conspiracy meetings or
statements in the summer of 2003, October or late November  or December
2003, or two weeks, or one week before the beginning of the December 24
2003  first indictment incident date, all of which appear to fall outside the
scope of the government's December 24, 2003 thru May 20, 2004 indictment."
unless you find any such evidence was  sufficiently 'reasonably near' the
December 24, 2003 first date specified in the notice of charges."

Judge Lindsay's final jury charge, however, did not

include this necessary instruction and therefore the Court permitted the jury to

consider and use for conviction the testimony of Jon Minotti concerning

substantive plans to rob Ruiz made in June/July 2003, October, late November

or early December 2003, and two weeks of ten days or one week prior to

the starting December 24, 2003 indictment date for the charged conspiracy. By

allowing jurors to consider multiple conspiracy evidence beyond the limited

scope of the December 24, 2003 thru May 20, 2004 indictment, this Court made

fatal reversible error strongly supporting bail based on grounds of constructive

-18-

amendment of the indictment violating Anthony Bucci's due process and Grand Jury Clause rights guaranteed by the Fifth Amendment to the United States constitution, United States V. Ford, 872 F2d 1232, 1236-1211 (6th Cir 1989)(Constructive amendment occurred when evidence exceeded scope of the indictment dates and jury instructions did  not limit the dates jury could consider); Stirone V. United States, 361 U.S. 212, 215-216 (1960)(Constitutional rights of an accused are violated when trial proof exceeds the scope of the indictment).

"Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused", Cola V. Reardon, 787 F2d 681, 692 (1st Cir 1986)(granting habeas corpus relief) citing Dunn V. United States, 442 US 100,106-113 (1979)(difference between September 30th and October 21st date held to be prejudicial variance akin to constructive amendment). By allowing Jon Minotti's testimony to be considered on pre-December 24, 2003 conspiracy statements this Court permitted the jury to convict the defendant based on conspiracy  planning statements for which he has never been charged. Such fundamental error should have been corrected by the requested jury instruction; and, because it was not, a new trial **must** be granted, United States V. Dwyer, 843 F2d 60, 64-65 (1st Cir 1988)(flaw in multiple conspiracy instruction and two other errors required a new trial).

-19-

## V.     THE COURT'S FINAL CHARGE ON CREDIBILITY, WHICH DID NOT INCLUDE THE OSORIO  FALSUS IN UNO, FALSUS IN OMNIBUS INSTRUCTION, SUPPORTS BAIL PENDING APPEAL

As set out in paragraph twelve of the affidavit of

Anthony Bucci, the second of two jury instruction requests he gave Attorney

Michael Natola to file was from United States V. Osorio, 929 F2d 753, 757 n. 2 (1st

Cir 1991) seeking the substance of the same instruction:

"The testimony of a witness may be impeached or discredited by showing that
he or she has previously made statements that are different from, and
inconsistent with, his or her testimony to you. It is the province of the jury to
determine whether or not the credibility of any particular witness has been so
impeached. I also instruct you that if you find that a witness has knowingly
testified falsely to you concerning any material matter in this case, **you have
a right to distrust and disregard not only that portion of his or her
testimony which you find to be false but <u>you are free to reject all of
his or her testimony</u>**"

Because of Jon Minotti's dozens, if not more than a

hundred, admissions to lies during Attorney Drechsler's cross-examination, and

record evidence showing portions of his directly contradicted trial testimony

could be found by jurors to be false, the defendant's request for the 'falsus in

uno, falsus in omnibus' jury instruction should have been filed by defense

counsel and should have been granted. If defense counsel did not even make

a verbal request for this instruction  or the instruction set out in argument

section four, supra, then this Court may find the question of ineffective

assistance of counsel is substantial enough to warrant bail pending appeal.

-20-

## VI.  IN A PROPER CUMULATIVE ERROR ANALYSIS THE PROSECUTOR'S PREJUDICIAL CLOSING ARGUMENT ALSO SUPPORTS CONTINUING BAIL PENDING APPEAL

The pro se defendant incorporates herein by reference all objections to closing argument, and specifically focuses on two example, the improper substantive use of the May 19th, 2003 body wire tape exhibit N-24A for its full probative value undoing any limiting instructions (as set out in argument section one, supra) and both prosecutor McNeil and prosecutor Merritt arguing facts not in evidence concerning their claim that Anthony Bucci told Brian Raftery to make the calls to Carlos Ruiz, United States V. Hands, 184 F3d 1322, 1332-1335 (11th Cir 1999)(despite eight cooperating witnesses, cumulative error which include the prosecutor arguing what an uncalled prosecution witness would have testified to held to be reversible error).

The First Circuit requires a proper cumulative error analysis and where three trial flaws are combined the cumulative prejudice can require a new trial, United States V. Dwyer, 843 F2d 60, 64-65 (1st Cir 1988). A cumulative error analysis properly considers ineffective assistance of counsel in combination with preserved trial objections to error, Cargle V. Mullin, 317 F3d 1196, 1207 n.11 (10th Cir 2003).Where, as here, the improper closing argument was identical to that requiring a new trial in United States V. Hands,supra, and the pro se defendant has identified six (not merely three) prejudicial errors, this Court has the discretion to continue bail and grant a new trial before sentencing.

-21-

## CONCLUSION

For the foregoing reasons, including but not limited to the defendant's appearance record, spotless pre-trial bail status and the plethora n.4/ of meritorious appellate issues summarized herein which present the foreseeable certainty of a new trial motion being granted [after it is filed within seven days] or the First Circuit reversing the conviction, this Court should grant a stay of sentence and bail pending appeal (subject to whatever stricter conditions it deems appropriate).

RESPECTFULLY SUBMITTED,

April 13, 2006

Anthony Bucci Pro Se
P.O. BOX 100
WALPOLE, MA. 02071

## CERTIFICATE OF SERVICE

I, Anthony Bucci, hereby certify that a copy of this motion has been hand delivered to the Assistant United States Attorney's Office on the Ninth Floor of the Courthouse on the date above at the same time as the motion is filed with the Clerk's Office.

Anthony Bucci

-22-

n.4/ The supporting legal argument and grounds for the Fed. Crim. P. Rule 33 motion for a new trial are expected to be at least double that filed herein and include compelling reasons for Hon. Judge Reginald Lindsay to grant a new trial prior to any sentencing hearing taking place, id.