UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| v. ) | No. 04-cr-10194-RCL |
| ) | |
| ANTHONY BUCCI ) | |

**AFFIDAVIT OF ANTHONY BUCCI IN SUPPORT OF DEFENDANT BUCCI'S MOTION TO CONTINUE BAIL AND NEW TRIAL MOTION**

I, Anthony Bucci, swear under pain and penalty of perjury, that:

1) I was denied access to the discovery material during approximately twenty-one months and one week out of twenty-two months I awaited trial in this case.

2) When I finally was provided with the box of discovery material, which I had to have my mother make two copies of at co-counsel, Anthony Rossi's, office I noticed a number of facts which caused me to have a motion to sever, a supplemental motion to suppress my statements, and other pleadings prepared for, in addition to my recognizing the importance of several alibi witnesses. I also located reports on a UPS drug delivery Jon Minotti set up without his brother Ross Minotti's knowledge.

3) Prior to my reading the discovery Attorney Michael Natola and his defense Investigator repeatedly insisted that there had been no drugs mailed by Jon Minotti to Ross Minotti's address, failed to recognize the significance of DEA Miranda forms signed by Jon Minotti and Francis Muollo and failed to recognize the necessity for severing Count Five, all of which were based

on my previous explanations of facts to Attorney Natola and reports in the box of discovery which he had all along but apparently had not even read.

4) On several occasions in 2005 Attorney Michael Natola asked me to listen to all of the DEA tapes in my case, which he apparently had not even listened to, and he asked me to separately copy sections for defense use. These tapes include the portion filed in support of the 2006 motion to suppress my arrest statements which concerns my post-arrest telephone call about DEA Agents assaulting and battering me during my arrest, my remaining silent and signing a <u>Miranda</u> form (which the motion refers to my belief that I indicated on the form I was asserting my right to counsel, possibly by checking or circling that warning advisement section).

5) I did not personally commit any procedural error and I am not in any way responsible for Attorney Michael Natola's failure to file a timely notice of alibi, or untimely late filing of the motion to sever and motion to suppress my statements which Judge Lindsay denied for being untimely.

6) Well in advance of trial I directed Attorney Michael Natola to prepare and present at least nine defense witnesses testimony at my trial, Ross Minotti, William Mahoney, Carla Cozzi, Lisa Murphy, Wendy Golini, Michael Phair, Stephen DiMeo, Tom Regis, and Attorney Brandon Keltner. Attorney Michael Natola refused to put Stephen DiMeo, my AA sponsor and my accountant, on my witness list, to testify to my prior excessive cocaine use as well as my business background to legitimize and humanize me before the jury. Attorney

Michael Natola refused to call Attorney Keltner to testify to a $272,000.00 Real Estate deal for selling my house in Revere which was already under agreement at the time of the December 24, 2003 drug robbery, which showed that in the beginning of January I was coming into this money. Attorney Natola also refused to introduce my Citizen's and Eastern Bank records showing I had $54.000.00 on December 24, 2003, which Stephen DiMeo also could have testified to. Within a four month period prior to December 24, 2003 I withdrew fifty-five thousand dollars which I would have testified to in a severed trial was primarily used to purchase cocaine. My severed trial testimony would have included the fact that it was not unusual for me to use three to four ounces of cocaine every week to ten days to support my personal use defense to Count Five. I am requesting new assigned CJA counsel to obtain affidavits from potential defense witnesses and file them with an amended motion for a new trial. I am also requesting CJA counsel to obtain affidavits from Attorneys Anthony Rossi and Michael Natola corroborating the facts set out herein and the fact that I asked Natola to question Jon Minotti about his personal knowledge of my excessive cocaine use in 2004 to support a personal use defense for the 91 grams seized during my arrest on May 20, 2004.

7) In addition to having me read the case file to advise him of its contents, and having me listen to the DEA tapes, with respect to the Rule 404(b) issue Attorney Michael Natola had me have the winning prior bad acts motion researched and drafted for him to sign and file. The draft boilerplate

motion using two out of three losing decisions that Attorney Natola had himself prepared was changed to my draft which used dozens of winning decisions.

8) The new trial motion exhibit "Motion In Limine Ten" concerning the May 19th, 2004 body wire tape and the risk that prosecutorial arguments could undo any limiting instructions was given to Attorney Michael Natola by me with my request that he file it, but Attorney Natola refused to file it. Attorney Natola stated that he believed <u>Crawford V. Washington</u> only applied to post-arrest statements and he refused to recognize such decision could apply to all out-of-court statements used "against" a defendant without an opportunity for cross--examination, including pre-arrest questioning by an informant defacto-Agent.

9) During opening arguments and during the break co-counsel, Attorney Anthony Rossi was asked to object or have Attorney Natola object to the the prosecutor arguing portions of the May 19th, 2004 Minotti-Jordan body wire tape substantively against me, to which he responded, "if we object, Judge Lindsay will deny the objection anyway", resulting in neither of my defense counsel objecting at sidebar to the opening statement of the prosecutor as I requested. On Thursday April 6, 2006 Attorneys Rossi and Natola failed to object to the repeated playing of The Minotti-Jordan body wire tape as overkill, nor did they request the court repeat its limiting instruction prior to, during or after the tape being played and during closing argument on April 7, 2006 the government's closing argument used the Minotti-Jordan tape as substantive evidence

against me undoing the effect of any prior limiting instruction, which resulted in my asking counsel to request a final jury charge limiting instruction that was not given to the jury by Judge Lindsay. I was very concerned about the repeated playing of the tape and asked counsel to go to sidebar to request Judge Lindsay to instruct jurors that it could not be used against me, but that was not done. In fact, on the evening the tape was repeatedly played I discussed this issue with Attorney Anthony Rossi and was told it would be done the next day before court and once again it was not addressed. I then asked counsel to make sure this issue would be addressed clearly in the jury instructions and was told by Attorney Natola that "Judge Lindsay refused to address the specific issue to the jury". According to Natola, "Judge Lindsay said, I will only give general instructions to all limiting instructions made during the trial". I wanted a very specific limiting instruction so that during deliberations jurors would have crystal clear language instructing them not to use the May 19th, 2004 body wire tape against me. As a result of my lawyers non-strategic omissions, inaction and insufficient actions, jurors only heard a vague limiting instruction once, long before the tape was repeatedly played as the last evidence they heard, and prosecutor's McNeil and Merritt's closing arguments undid any limiting effect by focusing on the tape substantively as if it were true and capable of being used against me.

10) Prior to and during my co-defendant, David Jordan's, testimony I repeatedly requested both Attorneys Rossi and Natola to question Detective Jordan about

not only the tape, to put it in a more favorable light, or explain why I was not involved, but also to question Jordan about his testimony that the 91 grams of cocaine found during my arrest was consistent with drug trafficking not personal use, to the extent that he would have testified that one of his informants used an ounce of cocaine a night and that 91 grams was also consistent with personal use. Jordan became a witness against me when the prosecutor brought out new facts and had Jordan give an expert law enforcement opinion on the seized 91 grams being for drug trafficking, but Attorney Natola refused to recross-examine him saying that we couldn't do it because the Judge wouldn't let him after he failed to ask Jordan any questions initially.

11) The subpoenas Judge Lindsay mentioned in open court, were served by co-counsel's process server upon my payment after I had them in my hand when I asked Attorney Michael Natola to have them served but he told me to have them served without reading them. I had been shown similar subpoenas and some responses by cooperating witnesses lawyers and I believed and still believe Attorney Michael Natola should have followed up on each and every document subpoena. I did not waive my right to compulsory process with respect to any subpoena.

12) I also gave Attorney Michael Natola, or/and sent him by e-mail, the motions, objections and two jury instruction requests [described in sections four and five of my motion to continue bail pending appeal] which are being filed as exhibits

with my new trial motion on Tuesday April 19, 2006 and I request the new trial motion and its' exhibits also be considered with my bail pending appeal motion, as being incorporated therein by reference. I did not waive my rights with respect to any objection or legal argument contained therein not did I ever agree to waive either jury instruction request. Throughout the trial at most times I would let co-counsel and counsel know I wanted them to object, they did not object and I ask judge Lindsay not to enforce any procedural bar against me for my Federal trial procedure inexperienced lawyers failures to make contemporaneous objections.

13) Because of my inability to retain new trial counsel when the problems with Attorney Michael Natola, prior to trial I was in a "Hobson's choice" position of having to keep Natola even after he was extremely reluctant to prepare for my trial, even after he asked me to do a lot of his work for him, even after his untimely filings of motion was the reason Judge Reginald Lindsay gave for denying them, and even after I learned of Natola's 99.9 % Federal Court client guilty plea record and lack of federal trial experience. I am submitting a copy of Natola's Federal Court representation record as an exhibit attached to my motion for a new trial on or before the seven day Fed. Crim. P. Rule 33 filing deadline of Tuesday April 18, 2005.

14) Throughout my trial whenever I asked Attorney Anthony Rossi to do something he would say "that wouldn't matter anyway" or "the Judge will just deny it anyway" and he would make excuses for everything Attorney Natola failed to

do or refused to do, but neither Attorney was ever able to cite a single federal decision to support their negative positions. At the evidentiary hearing on my new trial motion I am requesting CJA counsel to question both Attorneys as to the state of their knowledge of Federal decisional law at the time of my trial. I also want Michael Phair's reports on interviewing defense witness Brian Raftery {who told Natola it was Jon Minotti, not I, who asked him to call Ruiz), and nine or more defense witnesses, filed as exhibits showing what they can testify to.

15) Because of my living expenses and the strict no work conditions I have been held under awaiting trial, I am unable to retain direct appeal counsel or counsel for my Fed. Crim. P. Rule 33 new trial motion. I, therefore, am requesting this Court to assign CJA post-conviction counsel for any sentencing and all direct appeal and new trial motion proceedings.

RESPECTFULLY SUBMITTED,

April 13, 2006

_____
Anthony Bucci, Pro Se

Copy served by mail at time of filing on Assistant United States
Attorney Generals John McNeil and Theodore Merritt