UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Criminal No.  04-10194-RCL |
| ) | |
| ) | |
| ANTHONY BUCCI   ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Anthony Bucci was convicted after a jury trial before this Court on April 12, 2006 on Counts 1, 2, 3 and 5.  The Indictment charged  Count 1, Conspiracy to Distribute and Possession with Intent to Distribute more than 500 grams of Cocaine, in violation of 21 U.S.C. §846; Count 2, Possession with Intent to Distribute more than 500 grams of Cocaine, in violation of 21 U.S.C. §841; Count 3, Using or Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possession of a Firearm in Furtherance of Drug Trafficking Crime, in violation of 18 U.S.C. §924(C)(1)(A); and Count 5, Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. §841.

**Unresolved Guideline Issues**

As of this writing, the defendant's objections to the Presentence Report remain unresolved.  Notwithstanding the jury's verdict and the defendant's intention to appeal the conviction, the defendant objects to the drug quantity attributable to him.  Specifically, the defendant objects to being held accountable for 3 kilograms of cocaine and a quantity of marijuana.  Defendant Bucci was, at the time he was arrested, heavily addicted to cocaine, using three to four ounces per week (i.e., 85 – 113 grams).  *See* PSR ¶82.  Bucci had a legitimate source of income from which to purchase cocaine on his own.  His uncle, Peter F. DiMeo writes:

1

I have been an Architect for almost fifty years and my architectural firm is located in the town of Stoneham. I have known Anthony all his life…As a result of all the time spent with us, Anthony has excellent concept of the construction industry.
I mention this fact because when Anthony became a developer a few years back, he retained me to design new homes and rehab older homes for his company. He was very successful in these ventures and was making substantial profits. Then there came a time of great loss in his life in a short span of time. First, the only father he really knew for over 36 years passed away and less than six months later his only sister and sibling passed on. He took their loss very hard and became despondent…

I know at this time Anthony became addicted to drugs that really worried my sister. Anthony confided in me and told me when he was arrested that he was not at the Malden Medical Center to rob anyone. He was there to purchase drugs for his use only. I know he didn't need the money because at that time he had a substantial amount of money in the bank and was about to close on a house he had rehabbed.

In further support of Anthony Bucci's claim that he was about to come into a large sum of money through a real estate transaction, the defendant can provide a Settlement Statement dated 1/15/2004. The settlement agreement shows that Anthony Bucci sold property located at 69 Rose Street, Revere, MA 01840 for a sum of $470,000. After paying off the first and second mortgage, the defendant was due to receive and did receive two checks amounting to $235,000. The following is a partial list of other properties the defendant sold (documents can be provided):

| | |
|---|---|
| 14-16 Marie Lane | Settlement Date 12/23/2004 |
| Lawrence, MA 01840 | Cash to Seller $56,517 |
| | |
| 14 Marie Lane | Settlement Date 05/27/05 |
| Unit 6 | |
| Lawrence Ma 01843 | Cash to Seller   $22,926 |

Property the defendant purchased:

| | |
|---|---|
| 106 Winter Street | Settlement Date   7/22/03 |
| Saugus, MA 01906 | Purchase Price $353,500 |
| | Down payment $60,695 |

Anthony Bucci's Real Estate Broker, Jeanne M. Enos of Allstate Mortgage Corporation writes:

> I have been originating loans for Anthony Bucci since 2002 when we first refinanced his Maple Road property. Since that time I continued to work with him on several investment opportunities which required some degree [of] rehabilitation. Anthony certainly had the foresight, the potential was there and he was willing to do the work. It was obvious that he made some excellent decisions and was on his way to a profitable career investing in real estate.
>
> Working with Anthony has been a pleasure, having his loyalty has meant a lot to me especially in this industry. I hope that in the future we will once again work together on reaching his investment goals.

The Maple Road property referenced in the Enos letter was purchased by Anthony Bucci in 1988 and refinanced when he put an addition on the house. The defendant submits this information to the Court to supplement the Employment Section information lacking in the Presentence Report as well as to inform the Court that he had legitimate income.

**Defendant's Role in the Offense**

The PSI has added a two-level enhancement for Bucci's role. The burden of proving an aggravating factor is on the government See *U.S. v Blanco,* 888 F.2d 907, 908-09 (1st Cir. 1989). This enhancement is based solely on the testimony of Minotti. Minotti cooperated with the government and, was obviously motivated to diminish his own more culpable role. He did this by claiming that Anthony Bucci orchestrated the crime. There is no corroborating evidence for this enhancement. To the contrary, even as Minotti was recording a conversation with Jordan and attempting to get Jordan to implicate Bucci, Jordan describes Bucci and Muolo as "weak links." Jordan clearly understood that Minotti conceived of the operation. PSR ¶13 states that Minotti approached Jordan to participate in the scheme. Minotti and Jordan were friends and had smoked marijuana together. Minotti recruited Jordan to execute the scheme, not for the

defendant, but for himself. In spite of Minotti's testimony, the facts of the case point to Minotti as the ringleader. Moreover, a portion of the taped conversation between Minotti and Jordan that was not played at the trial reveals Jordan telling Minotti "You got me into this thing", and Minotti replying to Jordan "I know the whole thing was my idea." That portion of the tape is at 18 minutes and 33 seconds. There is no transcription of that part of the tape. The government should make the tape available to the Court for its inspection.

**The Enhanced Penalty at 18 USC § 924(c)**

With regard to the conviction on Count 3, the jury found the defendant guilty of Using or Carrying a Firearm during and in relation to a drug trafficking crime, Possession of a firearm in furtherance of a drug trafficking crime. The penalty for the offense found by the jury is five years consecutive to any other sentence. The enhancement that elevates the penalty to seven years, that is, if the firearm was brandished, was not addressed by the jury. Again, the only evidence for the enhancement is the word of Carlos Ruiz who was, at the time of his testimony, serving time in jail for another offense. Carlos Ruiz was sentenced to a 97-month sentence for distributing 50 kilograms of cocaine in 2004. His sentence was substantially reduced after his testimony. Ruiz is now due to be released in 2008.

If Jordan were trying to deceive Ruiz into believing that he was discovering a drug transaction, it is highly unlikely he would come upon the suspicious car brandishing his firearm. As a police officer, he is trained only to brandish his firearm in the most exigent circumstances. Criminals like Ruiz know the rules of the playing field. Ruiz would certainly have been suspicious of Jordan approaching the car brandishing a

4

firearm. Trial testimony revealed there were several surveillance teams watching the transaction, yet none of the agents testified that they saw any gun. The penalty for Count 3 should be no more than 5 years.

The defendant's sentence should, in this instance, be controlled by the mandatory minimum ten years with five years consecutive.

**Guideline Departure Issue §5K2.0  Unmentioned Factor**

The defendant wishes the court to consider a departure from the guideline for the defendant's efforts to rehabilitate himself. §5K2.0.  Prior to the Supreme Court decision in *Koon v. United States* 518 U.S. 81, 116 S.Ct. 2035 (1996), a number of courts have held that post-offense rehabilitation may be a basis for departure.[1] See *U.S. v Sklar*, 920 F.2d 107 (1st Cir. 1990); *U.S. v Maier,* 975 F.2d 944, 946 (2d Cir. 1992); *U.S. v Maddalena,* 893, F.2d 815, 817 (6th Cir. 1989); *U.S. v Whitaker,* 152 F.3d 1238(10th cir.1998); *U.S. v Williams,* 948 F2d. 706, 710-11 &n.7(11th Cir. 1991); *U. S. v Harrington,* 947 F.2d 956,962(D.C.Cir. 1991), *on remand,* 808 F.Supp.883(D.D.C. 1992).  Since *Koon*, every court that has considered the issue has held that departures for post-offense rehabilitation are permitted. See e.g*., U.S. v. Newlon,* 212 F.3d 423 (8th Cir. 2000).  Since his arrest in May, 2004, Bucci has made great efforts at rehabilitating himself. During the 20-month period of home detention from 8/26/2004 to 4/12/2006, his daughter, Talena Bucci, writes on behalf of her other two siblings:

> In the almost two years he was under house arrest he was going to meetings regularly, getting counseling and making great strides to conquer his disease.  He has told us how important it is for us to stay in school and try the best we can to get good grades and not get in trouble.

---

[1] The Sentencing Commission promulgated a Policy Statement on November 1, 2000, prohibiting **Post-Sentencing** Rehabilitative Efforts (emphasis supplied).

Bucci's cousin, Stephen DiMeo, is also his Alcoholics Anonymous sponsor. DiMeo writes:

> I have been in recovery for sixteen years and have helped hundreds of people turn their lives around. Anthony was a very active member of Alcoholics Anonymous for several years. He was doing all the things necessary to stay sober including helping others to achieve sobriety…
> Following his arrest and during his period of house arrest while his trial was going on, Anthony again sought the help of Alcoholics Anonymous to regain control of his life. He started going to meetings and getting active in recovery. Anthony is once again doing all the things necessary to stay sober and he has changed a great deal since resuming the AA program...
> It is my humble opinion that Anthony would benefit greatly from extensive treatment, ongoing counseling and a continued commitment to practice of the 12-Step A.A. program.

Also while on Home Detention awaiting the trial, the defendant was seen once a month or sometimes once every two months by Vincent Minichello, a hypnotherapist and ordained minister. These sessions helped to reduce the defendant's anxiety.

**Post-Booker Considerations**

It is now settled law pursuant to *United States v Booker,* 125 S.Ct. 738 (2005), that when imposing sentence the Court must consider the Sentencing Guidelines and policy Statements. *Booker* requires that in addition to considering the final advisory guideline calculation, the sentencing court is mandated to consider the statutory sentencing factors at 18 U.S.C. §3553(a) among which are (a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant.

**Personal Characteristics of the Defendant**

Anthony Bucci, presently 44 years old, was born into a middle class family in Medford MA, the younger of two children. The father worked as an entertainment agent and the mother as a draftswoman in her brother's architectural firm. In spite of the financial security, the parents fought, mostly over the father's drinking and extra-marital affairs. The couple divorced when Anthony was six years old, leaving the mother to care

6

for her two children, virtually on her own.  She did garner emotional support from her brother, Peter DiMeo, for whom she worked and with whom the family lived with for awhile following the divorce.  The mother remarried when the defendant was 9 years old.  The stepfather, George Keefe, proved to be an excellent husband and father.  The defendant grew close to his stepfather and loved him as his own father.

According to his mother, Anthony Bucci had a lot of emotional problems because he saw and heard his father physically abuse her, sometimes at night when he came home drunk. *See* Nov.5, email from Rosemarie Keefe.   To what extent these early images affected Anthony Bucci's behavior is for the psychologists to answer.  But when Anthony Bucci was a young teenager, he began to drink hard liquor and beer.  By the time he was 16 years old, he had graduated to marijuana and moved on to heroin and cocaine.  There were some periods of abstinence.  For example, following his arrest and incarceration in 1997, Anthony Bucci successfully completed the 500-hour drug rehabilitation program while in the custody of the Bureau of Prisons.  He was released in 1999 and was successfully terminated from nearly three years of drug free supervised release.  The Probation Department had enough confidence in the defendant's ability to remain drug free that he was terminated three months early.  More recently, the defendant has sought the help of Dr. Herbert Berger Hershkowitz at Cedar Junction.  Anthony Bucci has been receiving Atavin and Celexa, anti- anxiety drugs for his emotional problems, which include agoraphobia.

Probation's confidence in Anthony Bucci was not ill-founded, but there was no way to predict the emotional challenges he would face in the following year.  His step-father died on July 4, 2003.  His death came during the time that Anthony Bucci's sister, Grace,

was fighting a 3-year long losing battle with ovarian cancer. The father's death precipitated the defendant's return to cocaine. Instead of getting back in contact with the Team Coordinating Agency in Haverhill, he fell back into using drugs. From there, his use escalated almost in direct proportion to his sister's declining condition. She died on February 2, 2004. Anthony Bucci's cousin, Wendy Golini, writes of the devastating effect these two events had on him. "Being Anthony's older sister, Grace was always the voice of reason with Anthony and the woman who always brought out the best in him…Anthony could not listen to reason over the final weeks of Grace's death. His mind was clouded with drugs and wracked with guilt over his addiction and weakness. Grace was the only one Anthony looked up to, besides his stepfather George, and they were both gone…When I visit Anthony every week, I see a man who looks like he just woke up from a bad dream. His eyes are clear and his mind sharp again" Anthony's aunt, Elizabeth Speranza, an Administrative Analyst with the U.S.Department of Transportation, writes that she has known the defendant all of his life. "He was very close to his stepfather, who helped raise Anthony from a very young age. Anthony felt he really was his father." Speranza observes "I have never known him to be violent. On the contrary, he has always had a great sense of humor and gets along with all family members." But his aunt opines "Anthony's biggest problem is that he allowed himself to get addicted to drugs… His addiction started when he was subjected to all the stress and pain of the losses. During the period of time following Anthony's arrest, when he was under house arrest, he was granted permission to attend Alcoholics anonymous meetings, which he did with as much frequency as he was allowed. He is clean and sober today and is committed to staying that way."

As with some drug abusers, Anthony Bucci has been able to function as a husband, father, and breadwinner.  In 1986, the defendant married Maral Bucci.  Three children were born of this union.  Talena, presently age 19 attends University of Massachusetts at Amherst.  She is devoted to her father who has been ever-present in her life.  Talena writes on behalf of herself and her two siblings who attended the entire trial of their father.  They continue to believe he is innocent.  "We love our dad so very much and miss him like crazy.  We ask you to find it in your heart to help our dad…We also ask this on behalf of our half brother Dante who is too little to sign his name but nonetheless experiencing the pain of our dad's absence."  The defendant and Maral divorced in 1999 but continue to remain in touch and maintain amicable relations.  Maral writes:

> My name is Maral Bucci and I was Anthony Bucci's first wife and mother of his three daughters, Talena 19, Tamar 18, and Karissa 15.  I am writing this letter because I wanted to tell the court what I know about Anthony.
> All the while we were married and lived together he was a good provider and devoted father.  He tried to spend as much time as possible with the girls and they loved it when he was home…After we divorced, Anthony and I remained on friendly terms.  We both knew we had to be civil to one another for the sake of our daughters.  He honored his commitment and always gave me the child support money on time.  Until the day he was incarcerated he never failed to support his daughters and provide medical coverage.  He also would take the girls over the week-ends to spend time with him.  We were very flexible with the visitation schedule.  I knew he loved his daughters and I saw no problem with him spending as much time with them as he could….Anthony is an honorable and generous person who took pride in being able to take good care of his children.

The defendant is presently married to Melissa Mancino.  Together they have one child, Dante, age 4.  This marriage is generally good but Melissa will not tolerate Anthony's drug abuse and the couple has separated for several months because of it.  Melissa maintains the couple's tanning parlor, Hollywood Sun.  Melissa writes:

> My husband is not a criminal he was an addict.  We have a 4 year old son Dante…Anthony is a great father to our son, he watches him, plays with him, takes care of him.  Anthony is a family man, he cooks, he cleans, and he provides.

9

>He also has been a great husband…Anthony made our home, things just aren't the same. He made our family whole. My son and I have been thru so much, we need Anthony, My son needs him he is only 4, he has so much to learn. Please I do not want my son to grow up without a father.

The defendant advises that Melissa is working at the Tanning Salon but that business is not good until after Christmas. The Salon is up for sale. After the Salon is sold, Melissa will have to get a job to support herself and Dante while the defendant is incarcerated. The proceeds from the sale of the Salon will help to support the family.

After graduating from Stoneham High School, Anthony attended Norwich University in Vermont. According to his mother "For his first two years in school he ranked in the top third of his class. He probably would have graduated from Norwich if it was not for an unforeseen event. My husband George who was employed by the City of Boston School Dept., suffered a serious heart attack on the job. The doctors told him he could never work again and the City released him on medical disability retirement." Mrs. Keefe relates that Anthony never complained that he had to leave Norwich and a future military career to help his family.

**Sentence**

As Anthony Bucci stands now before the Court, the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in the statute at 18 U.S.C.§3553(a)(2) i.e., (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. (B) to afford adequate deterrence to criminal conduct. (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner.

Finally, the Court is mandated by 18 U.S.C. §3553(a)(6) to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.   Although Minotti is clearly the organizer/leader of this offense, he cooperated with the government, was sentenced by a different judge, and received  a total of 54 months in jail.  Muolo was sentenced to 57 months in jail and Jordan is yet to be sentenced.  The defendant faces a mandatory minimum of 15 years.

Whether the Court arrives at a guideline range that includes a departure for the defendant's post-offense rehabilitation, or relies on the factors at §3553(a),  or a combination of both,  a sentence no greater than 15 years is more than sufficient and greater than necessary in this case, to meet the purposes of sentences.

The defendant also requests the court to recommend to the Bureau of Prisons that he be designated to FCI Otisville.  There he can receive mental health counseling and attend AA and NA meetings.  The defendant is also willing to participate in the 500-hr. drug treatment program even though he may not receive any time off the tail end of his sentence.

    Respectfully submitted,
    By his attorney,

    /s/ Robert Sheketoff
    Robert Sheketoff
    BBO# 457340
    One McKinley Square
    Boston, MA 02119
    (617)-367-3449