UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| UNITED STATES ) | |
| ) | |
| v. ) | |
| ) | No.  1:04-cr-10194 (WGY) |
| ANTHONY BUCCI ) | |
| _____ ) | |

## MOTION FOR RELEASE UNDER 18 U.S.C. §3582(c)(1)(A)(i)

Introduction

      This Court is familiar with this case from its lengthy history and the Defendant's

numerous pro se filings.  Undersigned counsel submits this latest filing, a request for

compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), on a pro bono basis.


Procedural History

      On April 12, 2006, Bucci was convicted of Count 1 (Conspiracy to Distribute Cocaine),

Count 2 (Possession With Intent to Distribute), Count 3 (Using or Carrying a Firearm in

Connection with the crime), and Count 5 (Possession With Intent to Distribute).  Docket Entry

263, Verdict Form (attached).  The case involved a one-time conspiracy to steal three kilos of

cocaine from Carlos Ruiz, an international drug supplier.[1]

---

[1] Carlos Ruiz was indicted separately in 1:04-cr-10175 for 150 kilos of cocaine.  In return for his testimony against Bucci in this case (see attached Docket Entry 70 in 1:04-cr-10175, *Resentencing Memorandum*, Exhibit p. 7-8), Ruiz was rewarded with a sentence of only 62 months.  See attached Docket Entry 69 in, *Judgment*, Exhibit 9-10.

On November 15, 2006 Bucci was sentenced to 252 months in prison, followed by eight years of supervised release.  The 252 months consisted of 168 months on Counts 1, 2 and 5, and 84 months on Count 3 to be served consecutively.  Docket Entry 350, *Judgment*, Exhibit p. 4-6.[2]

On May 14, 2008 the First Circuit Court of Appeals (COA) affirmed the judgment in Docket Number 06-2746, Bucci's direct appeal.  Docket Entry 390, *COA Judgment*, Exhibit p.11.  Bucci's direct appeal had focused on improper remarks made by his counsel and the government during opening and closing arguments, improper joinder, courtroom closure, sufficiency of the evidence, and jury instructions.

On May 12, 2009 Bucci filed a Habeas Petition under 28 U.S.C. §2255 on the basis of improper courtroom closure.  Docket Entry 398, *Motion to Vacate*.  On October 14, 2009 and October 20, 2009 this Court heard evidence on the issue.  Docket Entries 436 and 439, *Transcript of October 14, 2009 and October 20, 2009 Evidentiary Hearings*.  On October 27, 2009 this Court denied Bucci's 2255 Motion.  Docket Entry 444, *Order,* Exhibit p.12.  On October 13, 2012 the First Circuit affirmed the denial of Bucci's 2255 Motion, finding that the claim of courtroom closure was procedurally defaulted because trial counsel had failed to object.  Docket Entry 475, *Judgment*, Exhibit p.13.

On June 18, 2013 Bucci filed a Habeas Petition under 28 U.S.C. §2255(f)(4) on the basis of newly discovered evidence.  Docket Entry 527, *Habeas Petition Pursuant to 28 U.S.C. §2255(f)(4)*.  The newly discovered evidence was that in 2012, long after his trial and direct appeal, Bucci's counsel testified under oath that he (counsel) had, in fact, objected to the courtroom closure.  Thus, the reasoning in the COA denial of his original 2255 was erroneous.

---

[2] On December 12, 2015 the committed portion of Bucci's sentence was reduced under 18 U.S.C. §3582(c)(2) for a retroactive amendment to the Sentencing Guidelines.  Docket Entry 619.  The amended sentence was a term of imprisonment of 219 months, consisting of 135 months on Counts (1), (2), and (5) and a consecutive term of 84 months on Count (3).

This Court, however, treated the 2255 as a F.R.Civ.P. 60(b) motion and denied same without hearing.  Docket Entry 530.  The COA affirmed the ruling.  Docket Entry 620, Exhibit p.13.

On October 28, 2013 Bucci filed another §2255 Petition, also based on newly discovered evidence.  This newly discovered evidence was that his trial counsel had never pursued a plea agreement as Bucci had instructed him.  Docket Entry 539, Motion to Vacate.  Trial counsel had told Bucci that the government would not consider a plea agreement and would seek the high end of the guidelines even on a plea.  Thus, Bucci had little choice but to exercise his right to a jury trial.  In 2012, by fluke, Bucci found out that trial counsel had never pursued plea negotiations as he had been instructed to do.  See attached Affidavit of Attorney Kevin Baird, Exhibit p. 25-26.  On October 29, 2013 this Court denied the 2255 motion sua sponte on the basis that there was no new evidence.  Docket Entry 543.  On appeal of that denial, the COA acknowledged a Sixth Amendment violation as a result of counsel's actions, but affirmed the denial because Bucci did not make a claim of actual innocence.

Finally, on October 2, 2017 Bucci filed a Petition for a Writ of Audita Querela under the All Writs Act.  Docket Entry 646.  This Court treated it as a second or successive 2255 and referred it to the First Circuit Court of Appeals where it remains pending.  Docket Entry 648.

Argument

I.      Federal Courts Have the Jurisdiction and Power to Reduce An Existing Sentence

This Court has the power to adjust Bucci's sentence.  District courts no longer need a motion from the Bureau of Prisons to resentence a federal prisoner under the compassionate release provisions of 18 U.S.C. §3582(c)(1)(A)(i).  A district court may now resentence if the inmate files a motion after exhausting administrative remedies.  The reasons that can justify

resentencing are not limited to medical, age, or family circumstances.  A district court may resentence if the inmate demonstrates extraordinary and compelling reasons for a sentence reduction.  Such reasons are present in this case.

A.  Historical Framework

Congress first enacted the compassionate release provisions in 18 U.S.C. §3582 as part of the Comprehensive Crime Control Act of 1984.  That legislation provided that a district court could modify a final term of imprisonment when extraordinary and compelling reasons warrant such a reduction.  18 U.S.C. §3582(c)(1)(A)(i).  In 1984, this provision was conditioned on the Bureau of Prisons (BOP) filing a motion in the sentencing court.  Absent a motion by the BOP, a sentencing court had no jurisdiction to modify an inmate's sentence.  Congress did not define what constitutes an "extraordinary and compelling reason," but the legislative history recognized that the statute was intended, in part, to abolish and replace federal parole.  Rather than have the parole board review for rehabilitation only, Congress authorized review for changed circumstances:

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances.  These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term on imprisonment.  S. Rep. No. 98-225 at 55-56 (1983).

18 U.S.C. §3582 acts as a "safety valve" for the "modification of sentences" that would previously have been addressed through the former parole system.  *Id*. at 121.  The provision was intended "to assure the availability of specific review and reduction of a term of imprisonment

for extraordinary and compelling reasons and [would allow courts] to respond to changes in the guidelines." *Id*. Thus, sentencing courts have the power to modify sentences for extraordinary and compelling reasons.

B. §3582(c)(1)(A) is Not Limited To Medical, Elderly or Childcare Circumstances

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the United States Sentencing Commission. 28 U.S.C. §994(t) ("The Commission…shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." Congress provided one limitation to that authority: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. §994(t). Rehabilitation could, however, be considered with other reasons to justify a reduction.

In 2007, the Sentencing Commission defined "extraordinary and compelling reasons" as follows:

(A) Extraordinary and Compelling Reasons - Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the following circumstances:

(i)    The defendant is suffering from a terminal illness.
(ii)   The defendant is suffering from a permanent physical or medical condition, or is experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and for which conventional treatment promises no substantial improvement.
(iii)  The death or incapacitation of the defendant's only family member capable of caring for the defendant's minor child or minor children.
(iv)   As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason for purposes of subdivision (1)(A). USSG §1B1.13, Application Note 1.

As we will see, with the passage of The First Step Act, subparagraph (iv) is no longer limited by what the BOP decides is extraordinary and compelling.

Historically, the BOP rarely filed motions under §3582(c)(1)(A), even when the inmates met the objective criteria for modification.  See U.S. Dep't of Justice Office of the Inspector General, *The Federal Bureau of Prisons Compassionate Release Program* (Apr. 2013).  The Office of the Inspector General also found that the BOP failed to provide adequate guidance to staff on the criteria for compassionate release, failed to set time lines for review of compassionate release requests, failed to create formal procedures for informing prisoners about compassionate release, and failed to generate a system for tracking compassionate release requests.  *Id.* at i-iv.

Congress heard those complaints and in late 2018 enacted The First Step Act.

C.  The First Step Act

The First Step Act, P.L. 115-391, 132 Stat. 5194, at (Dec. 21, 2018), among other things, transformed the process for compassionate release.  Id. at  §603.  Now, instead of depending upon the BOP to determine an inmate's eligibility for extraordinary and compelling reasons and the filing of a motion by the BOP, a court can resentence "upon motion of the defendant."  A defendant can file an appropriate motion if the he or she has exhausted all administrative remedies or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. §3582(c)(1)(A).  The purpose and effect of this provision is to give federal courts the ability to hear and resentence a defendant even in the absence of a BOP motion.  Congress labeled this change "Increasing the Use and Transparency of Compassionate Release."  164 Cong. Rec. H10346, H10358 (2018).  Senator Cardin noted in the record that the bill "expands compassionate release under the Second Chance Act and expedites compassionate release applications."  164 Cong. R. 199 at S7774 (Dec. 18, 2018).  In the House, Representative Nadler noted that the First Step Act includes "a number of very

positive changes, such as … improving application of compassionate release, and providing other measures to improve the welfare of federal inmates."  164 Cong. R. H10346-04 (Dec. 20, 2018).

Once an inmate has pursued administrative remedies through the BOP, upon his or her motion, the sentencing court has jurisdiction and the authority to reduce a sentence if it finds "extraordinary and compelling reasons" to warrant a reduction.  Judicial authority is no longer limited to cases that have the approval of the BOP.

D.    Bucci Has Exhausted Administrative Remedies

A motion by an inmate can be filed in the district court after (1) the inmate has made the request to the Warden, and (2) either the request was denied or 30 days have lapsed from the receipt of the request, whichever is sooner.  First Step Act of 2018, section 803(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).  Bucci filed a request for compassionate release to the Warden of his prison on July 2, 2019.  The Warden denied the request on July 30, 2019

II.    Bucci Has Extraordinary and Compelling Reasons For Compassionate Release

The Principles of Compassionate Release Allow for Bucci's early Release.  As discussed above, the principles for release are no longer limited to BOP guidelines; federal courts have the power to determine what constitutes extraordinary and compelling circumstances.

A. Family Circumstances

Bucci's extraordinary and compelling family circumstances allow for compassionate release.  Bucci's mother, Rosemarie Keefe, is 85 years old and has been disabled sine she suffered a debilitating cerebral stroke in February of 2016.  She needs 24-hour care.  See

attached information from Timothy Young, Md (Exhibit p.14) and Aaron Berkowitz, Md. (Exhibit p. 15-17).  Undersigned counsel has personally spoken with Ms. Keefe and confirmed this is the case.  Someone capable of assisting her must be with her every minute of every day and every minute of every night.  Her only living immediate relatives are her son, the inmate, and her 90-year old brother, Peter DiMeo.  The brother is not capable of caring for her.  Since suffering the stroke, Ms. Keefe has had to hire home health aids.  Ms. Keefe is on a fixed income and the financial burden this has caused has been difficult to say the least.  It is simply not sustainable.  She fears she may lose her home.  If released, Bucci would live with his mother and act as primary caretaker.  Bucci would be her overnight caretaker every night, relieving the need for paid home health aides.  Not only that, but he would be able to work during the day and contribute to the household finances and the daytime home health aides his mother needs.  He has a job ready and waiting for him, see the attached letter from Fitzwilliam Granite Company. See Exhibit p. 29-30.  Finding a job, as this Court knows, is not an easy feat for a felon.  This job would give Bucci an incredible head-start in reacclimating to life on the outside and becoming a contributing member of society.  This would also relieve the financial strain the elderly Keefe lives under and greatly improve the quality of her remaining life.

B.  Bucci's Sentence Was Unusually Long and Harsh But
    The Court Was Bound By the Then Mandatory Minimum Sentence

The offense involved a one-time theft of drugs from an international drug dealer.  Bucci's sentence of 21 years (now 18.25) was excessively harsh.[3]  The drug dealer from whom the drugs

---

[3] Bucci's release date will be October 2021 rather than February 2022 after the additional 7 days per year of good time credits authorized by The First Step Act is calculated into his sentence. Counsel understands that the BOP is in the process of crediting qualifying inmates, beginning with those inmates having the earliest release dates.  Bucci's current BOP calculation does not yet reflect the October 2021 release date.

were taken received a sentence of only 62 months.  This disparity in treatment is inherently unfair.  Even the sentencing judge noted this at the time of sentencing.

Additionally, of the participants in the offense, Bucci is the only one still in custody.  Co-defendant David Jordan, the former police officer who actually possessed and brandished the firearm, was released on June 12, 2019.  Co-defendant Francis Muolo was released on March 2, 2010.  Co-defendant Jon Minotti was released on September 8, 2009.


### C.  Bucci Received Additional Time After Trial

The length of Bucci's sentence, in part, was the result of sentencing enhancements found by the sentencing judge after trial.  This Court will recall from previous filings that Bucci did not want to go to trial but did so only because trial counsel told him that the government would not consider a plea deal and was seeking the high end of the guidelines.  This was not true.  See Affidavit of Attorney Kevin Baird (Exhibit p. 25-26).  Because Bucci went to trial, he was subject to six years of sentencing enhancements for conduct not charged in the Indictment.  He received a four-point enhancement for "leadership role" which translated to an additional four years.  He also received an additional two years for "brandishing."  Had there not been a Sixth Amendment violation, Bucci would have pled guilty and would not have been subject to those two enhancements for conduct that was not alleged in in his Indictment.

This Court will also recall that Bucci discovered that trial counsel had falsely told him a plea deal was not possible only after his appeals were final.  Even the COA noted the Sixth Amendment violation but could not provide relief because that 2255 Petition, based on the newly discovered evidence, lacked a claim of actual innocence.

If not for the procedural quagmire occasioned by his late discovery of the Sixth

Amendment violation, Bucci would have been home years ago.


D.  Bucci's Remarkable Rehabilitation

The record in this case reflects the fact that at the time of the offense, Bucci was in a drug

addiction relapse as his sister was dying of cancer.  Bucci was in his early forties at the time.  He

turns 57 years old this coming October.  Throughout the time he has spent in prison, Bucci has

worked long and hard and diligently at his rehabilitation.  For example, while at FCI Loretto,

Bucci volunteered to care for terminally ill inmates.  See letter from FCI Loretto Chaplain Statler

(Exhibit p. 18).  As caregiver, Bucci did the following, and more, for his fellow inmates who

were disabled or terminal: daily dressing and changing, showers, toileting, wheeling them to and

from places.  The physical demands of this role were many, followed closely by the emotional

demands of caring for the dying and trying to make their remaining time as good as possible in a

prison setting.  Bucci has demonstrated great compassion toward others.

A second example of Bucci's commitment to serving others is found in his work with the

NEADS Program while at FMC Devens prison camp.  One of the dogs Bucci helped train,

Gilbert, now works in a courthouse to help relieve the anxiety of young witnesses who must

testify.  Another dog Bucci helped train, Jake, now works in a hospital comforting troubled

young teens between the ages of 10-13.  Taking on the role of a NEADS trainer is both

incredibly consuming and incredibly rewarding.  It takes understanding, patience, love and a

sense of humor to succeed.  It also takes understanding, love and a selfless mindset to give up the

special dog you helped raised to someone you have never met.  The heartbreak of losing two

dogs that he raised and loved was softened only by the knowledge that those dogs would be helping people in need.  The memories of this time are life lessons.

A third example of his commitment to rehabilitation is found in his participation in educational opportunities while in prison.  Bucci has taken over 50 classes.  See FCI Berlin Reentry Plan Program Review Report (Exhibit p. 20-22).

Bucci has also become something of a budding author.  He has written a screenplay, in formal and precise screenplay format.

Bucci turns 57 years old in October of this year. His record of rehabilitation is extraordinary. He has been housed in a minimum-security prison camp for over five years, and there can be no genuine safety concerns on his release.  The BOP Classification Form shows that he is not considered a danger to public safety.  Exhibit p. 19.  His extraordinary rehabilitation shows that he is ready for re-entry.

Recidivism rates are significantly lower for inmates who are 50 years of age and older. Bucci is almost 57 and is a very very low risk for reoffending.

Senator Corey Booker, member of the Senate Judiciary Committee, and Representative Karen Bass, Chair of the Congressional Black Caucus, have introduced legislation called The Second Look Act.  This Act would allow a federal inmate who has served at least ten years in federal prison to petition a court to take a "second look" at his sentence and determine whether he or she is eligible for reduction or release.  The legislation would create a presumption of release for qualifying defendants who are 50 years of age or older, shifting the burden to the government to demonstrate why the inmate should not be released.  Although not yet law, it demonstrates the legitimacy of these considerations

III.    Any Sentencing Factor That Triggers A Mandatory Minimum
        Sentence Must Now Be Found Beyond A Reasonable Doubt By A Jury

18 U.S.C. §924(c)(1)(A)(i)-(ii) increases the mandatory minimum sentence for using or
carrying a firearm during the commission of a drug trafficking crime from five years (60 months)
to seven years (84 months) if the firearm was brandished during the commission of the crime.
The trial judge found that Bucci's co-defendant had brandished a firearm during the crime and
attributed that conduct to Bucci as being reasonably foreseeable.  See Docket Entry 473 COA
Opinion upholding the denial of Bucci's 2255 Motion, at page 40.

Under *United States v. Alleyne*, 133 S.Ct. 2151 (2013) Bucci's two-year enhancement for
"brandishing" would now be illegal.  In *Alleyne*, as in Bucci's case, a jury convicted the
defendant of using or carrying a firearm, but made no finding regarding whether the firearm was
brandished.  Id. at 2156. The District Court in *Alleyne*, as did the District Court in this case,
nevertheless found that the defendant had brandished the firearm, thereby triggering a two-year
mandatory minimum sentence on top of the five-year mandatory minimum for using.
§924(c)(1)(A)(ii).  Had the judge not found the brandishing element, then the defendant would
have been subject only to a five-year mandatory minimum.

The Sixth Amendment requires that the sentencing enhancement for brandishing must be
found by the jury beyond a reasonable doubt.  That was not done in Bucci's case.  We recognize
that *Alleyne* is not retroactive, but it is a factor this Court can consider in deciding whether the
sentence at issue was unreasonable or excessive and whether there are extraordinary and
compelling reasons to reduce his sentence.  Any time he serves after October 2019 will be for
what would now be considered an illegal sentence.

IV.     Recent Example of New Compassionate Release Principle

On June 24, 2019, a Federal Judge in the United States District Court for the Southern District of Texas, Houston Division, entered an order granting defendant Cantu-Rivera's Motion for Modification of his prison term, and modified the sentence from two concurrent terms of life imprisonment to time served, with the ten-year term of probation remaining in place. A copy of this Order attached at Exhibit p. 27-32 for the Court's convenience. Like Bucci, Mr. Rivera had served a considerable amount of time on his sentence. In fact, Bucci has served approximately 86% of his sentence.

Like Bucci, Rivera demonstrated an extraordinary degree of rehabilitation. The Rivera Court found persuasive Rivera's "educational achievements, including his completion of over 4,000 hours of teaching while in federal prison," his service as a "teaching assistant in several prison facilities for high-school equivalency and English-as-a-Second-Language programs," his "service in the BOP's suicide watch program" and his "helping to care for inmates placed in solitary confinement." Bucci's rehabilitation is no less extraordinary: his work in physically and emotionally caring for disabled and terminal patients; his emotional and rewarding work with the NEADS program, his completion of some 50 classes in prison, and his transfer long ago to a minimum-security prison camp. Bucci's work caring for terminally ill inmates will serve him and his elderly mother well if this Court allows him to return home as her primary caretaker.

The Rivera Court also factored in Rivera's favor Rivera's medical issues (arthritis, cataracts, diabetes), which, like Bucci's are not terminal or life threatening.

The Rivera Court also factored in that the original sentence was no longer the law. Rivera had been sentenced to life because at the time of his sentence 21 U.S.C. § 841(b)(1)(A) mandated a life sentence because of his prior convictions. The First Step Act eliminated the

mandatory life sentence for those persons with two prior felony drug convictions, replacing the life mandatory with a 25-year mandatory minimum.  The provision of The First Step Act reducing the mandatory life sentence was not a retroactive provision of the new law.  Still, the Rivera Court took the change in the law as persuasive in reviewing Rivera's original sentence.  So too in Bucci's case, although *Alleyne* is not retroactive, it weighs in favor of this motion because the two additional years under these circumstances would be an illegal sentence today.

Conclusion

This Court has the power to modify Bucci's sentence.  He has already served 163 months, some 86% of his sentence.  His release date will be October 4, 2021 once the additional seven days per year credit are calculated into his sentence.  This Motion thus seeks his release from just the remaining 26 months.

Bucci has demonstrated extraordinary and compelling reasons why this Court should allow this Motion.  He is the only immediate relative capable of taking care of his disabled 85-year old mother.  His role as primary caretaker will assure that she is able to remain in her own home for the time she has left.  He has shown himself to become a compassionate person, having cared for fellow inmates who were disabled or dying, and having opened himself to the love and heartbreak of training service dogs.  He has taken advantage of significant educational opportunities offered while in prison.  He is in his upper 50's and not likely to reoffend.  He has a job waiting for him.  The upcoming last two years of his sentence amount to what would now be an illegal sentence.

In the alternative, this Court could add the unserved term of the original sentence (two years) to the existing eight-year term of supervised release.

Respectfully submitted,
Allison Koury

/s/ Allison Koury

_____
Allison Koury, Esq.
BBO No.  553132
260  Boston Post Road Suite 9
Wayland, MA  01778
August 7, 2019                           Tel:  508.358.0030


CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing Motion using the CM/ECF system, and I understand that the CM/ECF system will send electronic notification to counsel for all parties in this case.

August 7, 2019                           Allison Koury

/s/ Allison Koury

_____
Allison Koury